UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| ELITE PHYSICIAN SERVICES, LLC,                 ) | |
| Plaintiff,    ) | No. 1:06-CV-86 |
| v.    ) | *Mattice/Carter* |
| CITICORP CREDIT SERVICES, INC. (USA),    ) | |
| Defendant.    ) | |

**DEFENDANT'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS OR TRANSFER**

Defendant, Citicorp Credit Services, Inc. (USA) ("CCSI"), pursuant to Federal Rule of

Civil Procedure 12(b)(6), the first-to-file rule, and/or the prohibition against impermissible

claim-splitting, moves this Court for an order either dismissing or transferring this matter. This

lawsuit filed by Plaintiff, Elite Physician Services, Inc. ("Elite"), is nothing more than

impermissible forum and judge shopping. **A case brought by Elite, involving virtually**

**identical claims and substantially similar parties,**[1] **has already been transferred to the**

**United States District Court for the Southern District of New York**. The first-to-file rule and

the doctrine against claim-splitting prohibit this type of duplicative litigation because [1] it

unnecessarily burdens the resources of the federal courts, [2] it multiplies discovery and trial

---

[1]

| Case | Sole Plaintiff | Sole Defendant | Date Filed | Pending Forum |
|---|---|---|---|---|
| Elite I | Elite Physician Services, Inc. | Citicorp Payment Services, Inc. | 12-30-05 | United States District Court for the Southern District of New York |
| Elite II | Elite Physician Services, Inc. | Citicorp Credit Services, Inc. (USA) | 4-07-06 | United States District Court for the Eastern District of Tennessee |

1

costs because both cases will center on the same documents and witnesses, and [3] it opens the door for inconsistent and contradictory findings of fact and rulings of law on the same subject matter. As such, CCSI's motion to dismiss should be granted.

## I.    SUMMARY OF FACTS AND PROCEDURAL HISTORY

### A.    Elite I – State Court Action Against CPSI

On November 10, 2005, Elite filed a complaint against Citicorp Payment Services, Inc. ("CPSI"), an affiliate of CCSI, in the Circuit Court of Hamilton County, Tennessee.[2] (This first lawsuit filed by Elite is referred to herein as "**Elite I**"). A copy of Elite's complaint from the State Court Action is attached hereto as Exhibit A.

Elite asserted a claim under Tennessee Consumer Protection Act.[3] (Exhibit A, ¶¶ 21-23.) The factual basis for Elite's Tennessee Consumer Protection Act claim centered upon a Master Services Agreement (the "Agreement") that Elite had entered into with CPSI on April 9, 2003. (See generally Exhibit A, ¶¶ 9-20.) The Agreement memorialized Elite's and CPSI's rights and obligations related to the financing of medical procedures that were typically not covered by insurance. (Exhibit A, ¶ 9.) Elite alleged that CPSI made promises and warranties to Elite during the negotiation of the Agreement that were not fulfilled; that CPSI attempted to "frustrate the purpose" of the Agreement; that CPSI harbored a "deceptive strategy to take Elite's business without just compensation"; and that CPSI wrongfully terminated Elite from the Agreement. (Exhibit A, ¶¶ 8, 11, 13, 18, 19.)

---

[2] The state court action was styled: Elite Physician Services, LLC v. Citicorp Payment Services, Inc., Docket No. 05C1651 (the "State Court Action").

[3] For apparent tactical reasons, Elite only overtly identified the Tennessee Consumer Protection Act claim; however, on closer inspection of the State Court Complaint, it is clear that Elite alleged the elements of other causes of action including breach of contract and misrepresentation.

C JMP 358124 v1
2782620-000018 9/22/2006

**B.**   **Elite I – Removal to Federal Court**

CPSI removed the State Court Action to the Eastern District of Tennessee on December 9, 2005 pursuant to 28 U.S.C. § 1441. Shortly thereafter, Elite filed its First Amended Complaint against CPSI, attached hereto as Exhibit B, acknowledging that jurisdiction in this Court was proper and repeating its claims that CPSI "frustrated the purpose of the Agreement" and wrongfully terminated Elite from the Agreement. (Exhibit B, ¶¶ 11, 15.)

**C.**   **Elite I – Transfer to the Southern District of New York**

CPSI then promptly filed a Motion to Transfer Elite I, pursuant to 28 U.S.C. § 1404, to the Southern District of New York. The forum selection clause in the Agreement mandated that the Borough of Manhattan, New York was the exclusive forum to litigate any disputes arising from or relating to the Agreement.

Despite Elite's selection of New York as the appropriate forum, CPSI's Motion to Transfer was opposed by Elite. However, after the issues were fully briefed, Judge Collier granted CPSI's Motion to Transfer, and entered an order on March 17, 2006 transferring Elite I to the Southern District of New York pursuant to § 1404, where it is currently pending. Elite has sought an additional amendment, and has provided a Proposed Second Amended Complaint to Defendant's counsel in that matter. A copy of the Proposed Second Amended Complaint is attached as Exhibit C.

**D.**   **Elite II – Parallel Lawsuit Commenced against CCSI**

Almost five months after filing its complaint in Elite I, **but a mere three weeks after Judge Collier's order transferring Elite I to New York,** Elite filed a separate lawsuit alleging nearly identical claims against a substantially similar party. The substantially similar party is CCSI, which is not only an affiliate of CPSI, but performed some of the services under the

3

Agreement. (For example, see ¶ 2 of Elite's Complaint against CCSI, which is attached hereto as <u>Exhibit D</u>, where Elite correctly avers that CCSI maintains a credit-services call center that provided services to Elite; <u>see also</u>, footnote 7, <u>infra</u>.) Despite the fact that Elite's Complaint against CCSI alleged the wrongdoing against **both CCSI *and CPSI*,** Elite brought this duplicative lawsuit in the Eastern District of Tennessee in an attempt to circumvent Judge Collier's order transferring Elite I, the earlier, related case.[4]

Elite <u>did not</u> seek to amend its lawsuit in New York to add CCSI as a party under Rule 20, even though there can be no dispute that the two cases arise out of the same transaction or occurrence, or the same series of transactions or occurrences series, and involve common questions of law and fact. <u>See</u> Rule 20(a) of the <u>Federal Rules of Civil Procedure</u>. Instead, Elite simply disregarded the prior filed New York action, and filed a separate, yet parallel lawsuit concerning the exact same subject matter to impermissibly shop for venue here in Tennessee. For clarification, because this is Elite's second attempt to pursue litigation based upon the same subject matter, the present case before this Court will be referred to as "**Elite II**".

**E.    Proposed Agreed Order to Transfer Elite II to New York**

Having been caught at its forum shopping game, Elite initially agreed to transfer this matter to the Southern District of New York.[5]    A copy of the proposed Agreed Order

---

[4] Elite also failed to comply with the requirement of Local Rule 3.1, which places the following obligation upon a counsel filing a complaint: "<u>If any related case has previously been filed, counsel shall call it to the court's attention in the 'Remarks' portion of the civil cover sheet</u>." (emphasis added)  Despite this requirement, the civil cover sheet submitted by Elite failed to identify any related matter at all.  A copy of the cover sheet is attached hereto as <u>Exhibit E</u>.  By not referencing the earlier case, the purpose of Local Rule 3.2(d)(3) was frustrated and the Magistrate Judge who presided over Elite I was never given the opportunity to determine whether this matter, Elite II, should have been assigned to Judge Collier under Local Rule 3.2(d)(3)(B).  **This omission leads one to conclude that Elite is also attempting to shop among the judges of this District.**

[5] Elite cannot now deny the substantial inter-relatedness of Elite I and Elite II based its representations to this Court through the terms of the proposed <u>agreed order</u> submitted to this Court. (see <u>Exhibit F</u>).

Transferring Case to the United States District Court for the Southern District of New York is attached as Exhibit F.

In the proposed agreed order, Elite represented to the Court that the two cases [1] "involve a congruence of parties and witnesses," [2] that "the interests of justice would be served through [transfer]," [3] that transfer "would result in the substantial saving of judicial resources," and [4] that transfer "would advance the just, efficient and economical conduct of the cases." (Id.)

Elite so anticipated the transfer of Elite II to New York that Elite's counsel requested that CCSI's New York counsel, Bruce H. Schneider, Esq. not delay in responding to the CCSI Complaint, pending the case file arriving in the New York court. (See Affidavit of Bruce Schneider, Esq., ¶ 6, attached hereto as Exhibit G). Elite's counsel further requested that CCSI timely serve its Answer, with a Southern District of New York caption, and not file the Answer until the case arrived in that Court. (Id.) CCSI's New York counsel agreed to Elite's request, and served CCSI's Answer to the Elite II Complaint on counsel for Elite on June 19, 2006. (Id.)

However, based on this Court's denial of the proposed agreed order, CCSI files this 12(b)(6) motion to dismiss and/or transfer based on the first-to-file rule and the prohibition against claim-splitting.

## II.   ELITE'S SUBSEQUENT ACTION AGAINST CCSI IS PROHIBITED UNDER THE FIRST-TO-FILE RULE

Elite's action in filing its Complaint against CCSI is nothing more than an overt attempt to circumvent this Court's previous transfer to the Southern District of New York of Elite's case against CPSI – a case that is virtually identical to the one filed here against CCSI. Just after Judge Collier's order transferring Elite I to New York was entered, Elite immediately took steps to pursue litigation in Tennessee against an affiliate "Citi" entity. Elite filed this case, Elite II,

5

against CCSI in Tennessee despite the fact that CCSI is substantially similar to CPSI and despite the fact that the subject matter of the two cases are the same. To combat such abuses, federal courts have long ago fashioned the first-to-file rule, which not only serves to preserve judicial economy and prohibit opportunistic plaintiffs from engaging in impermissible forum shopping, but also prevents doubling the litigation costs and expenses.

### A.  The First-to-File Rule Applies to this Case

When a suit is filed in a federal court that is duplicative of an action already pending in another federal court, then the second filed suit should be dismissed, transferred, or stayed. Wherry v. All California Funding, 2006 WL 2038495, *2 (N.D. Cal. 2006) ("The first-to-file rule allows a district court to transfer, stay, or dismiss an action when a similar complaint has already been filed in another federal court.") (int. cit. omit.); Strategic Ambulance, Inc. v. Martinez, 2006 WL 462430, *2 (noting that a case may be dismissed or transferred under the first-to-file rule) (S.D. Ohio 2006); Burrows v. Federal Ins. Co., 2005 WL 1705751, *2 (E.D. Ky. 2005) (noting that because plaintiff had previously filed a similar lawsuit in New York district court, then plaintiff's second lawsuit filed in Kentucky district court should be dismissed under the first-to-file rule); Portfolio Technologies, Inc. v. Intellx Inc., 2005 WL 1189604, *3 (W.D. Mich. 2005) (noting that "a first-to-file rule has developed, permitting a district court to transfer, stay, or dismiss a later-filed action when a similar complaint has already been filed in another federal court.") (int. cit. omit.); see also Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assocs., 16 Fed. Appx. 433, 437 (6th Cir. 2001); Fuller v. Abercrombie & Fitch Stores, Inc., 370 F. Supp. 2d 686, 688 (E.D. Tenn. 2005). The first-to-file rule serves the interest of judicial economy as well as operating as a ban against impermissible forum shopping. Zide, 16 Fed. Appx. at 437-38; Fuller 370 F. Supp. at 688. The Sixth Circuit Court of Appeals noted:

6

The first-to-file rule is a well-established doctrine that encourages comity among federal courts of equal rank. The rule provides that when actions involving nearly identical parties and issues have been filed in two different district courts, the court in which the first suit was filed should generally proceed to judgment.

Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assocs., 16 Fed. Appx. 433, 437 (6th Cir. 2001) (int. cit. omit.); see also Plantronics, Inc. v. Clarity, LLC, 2002 WL 32059746, *1 (E.D. Tenn. 2002) ("when two lawsuits involving nearly identical parties and issues have been filed in two different federal district courts, the district court in which the first suit is filed should, as a general rule, proceed to judgment."); Fuller, 370 F. Supp. at 688 ("when duplicative lawsuits are pending in separate federal courts the entire action should be decided by the court in which an action was first filed.") (int. cit. omit.).

In determining whether to apply the first-to-file rule, the Court must examine three factors: [1] the chronology of the pleadings filed in both cases, [2] whether the parties in the two actions are similar or "substantially overlap," and [3] whether the claims asserted in both actions are substantially similar. Fuller, 370 F. Supp. 2d at 688. As demonstrated below, all three factors support the application of the first-to-file rule in this case.

### 1.     **Chronology of Pleadings**

To dismiss Elite II under the first-to-file rule, the Court must confirm that Elite I was filed prior to Elite II. Fuller, 370 F. Supp. 2d at 688. Plaintiff filed Elite I in Tennessee state court on November 10, 2005 and then CPSI removed the case to the Eastern District of Tennessee on December 9, 2005. Plaintiff filed Elite II in the Eastern District of Tennessee on April 7, 2006, just three weeks after Judge Collier granted CPSI's Motion to Transfer Venue to the Southern District of New York.

It is undisputed that Elite I, currently pending in New York, was filed prior to this action. Plantronics, Inc. v. Clarity, LLC, 2002 WL 32059746, *1 (E.D. Tenn. 2002) ("For purposes of

C JMP 358124 v1
2782620-000018 9/22/2006

establishing the relevant chronology of events, we focus on the dates when the parties filed their original complaints."). Therefore, the first prong of the first-to-file rule is met.

### 2.    Similarity of Parties

Courts have almost uniformly held that application of the first-to-file rule is not predicated on a finding that the parties involved in both suits be identical – but rather, all that must be shown is that the parties are substantially similar. See, e.g., Bionix Development Corp. v. Veteran Medical Products, Inc., 2006 WL 2077036, *1 (N.D. Ohio 2006) ("The rule is generally invoked where two suits that involve '*substantially the same* parties and purpose' are filed in concurrent jurisdictions.") (emphasis added); Versus Technology, Inc. v. Hillenbrand Industries, Inc., 2004 WL 3457629, *5 (W.D. Mich. 2004) ("the rule does not require identical parties in both cases").[6] In Versus Technology, the court applied the first-to-file rule where the defendants in the two lawsuits were affiliate corporations. Id. at *8. The court reasoned that those corporations were similar enough to satisfy the requirement that the parties in both cases be similar. Id.

Similarly, this Court recently applied the first-to-file rule where the parties in the two lawsuits were not identical and noted that "[i]mportantly, for the actions to be duplicative, the parties need not be identical; they need only substantially overlap." Fuller v. Abercrombie & Fitch Stores, Inc., 370 F. Supp. 2d 686, 690 (E.D. Tenn. 2005). In Fuller, this Court was faced with two lawsuits filed by different, but substantially similar, plaintiffs. Even though both lawsuits involved different named plaintiffs, this Court found that, because all plaintiffs were formerly employed by the defendant and had claims concerning overtime compensation, the

---

[6] See also General Products Mach. Shop, Inc. v. Systematic, Inc., 2006 WL 2051737, *1 (D. Idaho 2006) ("it is proper for a federal district court to defer to another federal district court where the parties and issues are not exact, but substantially similar."); Wolf Designs, Inc. v. Donald McEvoy Ltd., Inc., 341 F. Supp. 2d 639 (N.D. Tex. 2004) (applying first to file rule even though parties were different).

C JMP 358124 v1
2782620-000018 9/22/2006

plaintiffs were similar enough for application of the first-to-file rule, and the case was subsequently transferred to Ohio. Id. at 689, 690.

        a.    Same Plaintiff filed Elite I and Elite II

The plaintiffs in Elite I and Elite II are identical – Elite is the sole plaintiff in both Elite I and Elite II.

        b.    Defendants CPSI and CCSI are substantially similar affiliates

With regard to the defendants, Citicorp Payment Service, Inc. (Elite I) and Citicorp Credit Services, Inc. (USA) (Elite II), the similarity of those two entities is fully demonstrated by Elite's allegations in its pleadings. In the Elite II Complaint, the first sentence of Elite's "factual background" alleges: "This case involves a course of deceptive and unfair commercial conduct **by CCSI (USA) and CPSI (collectively "Citicorp")** in connection with the offer to provide and the provision of services to Elite in the context of the patient financing services program discussed below." (emphasis added). Elite blurs any distinction between the two entities and then refers to "Citicorp" collectively throughout the remaining twelve pages of the Elite II Complaint. Elite does not particularize the alleged actions taken by or on behalf of CCSI. Thus, there can be no dispute that CPSI and CCSI are substantially related for the purposes of the first-to-file rule.

Elite's own allegations in the Elite II Complaint demonstrate the inter-relatedness of CCSI and CPSI:

- **The following persons relevant to this action are employees of CCSI (USA) who also acted at times as agents of Citicorp Payment Services, Inc. ("CPSI"):** Craig Vallorano, Darin Boddicker, Patrick Shanders, Debra Sexton, and Lori Cavicchioni. (Complaint, ¶ 2.) (emphasis added)

- **Ken Olsen and Alex Bariso also acted as agents on behalf of both CCSI (USA) and CPSI** although, on information and belief, they were not directly employed by either of these entities. (Complaint, ¶ 2.) (emphasis added)

9

- **CCSI (USA) and CPSI agents Ken Olsen ("Mr. Olsen") and Alex Bariso ("Mr. Bariso")** made contact with Elite for this purpose in early 2002. Specifically, these representatives proposed that [CCSI (USA) and CPSI] and Elite cooperate to develop and to promote the sale and distribution of a health-care patient financing program and product eventually known as the "Citi Health Card." (Complaint, ¶ 6.) (emphasis added)

- When the parties discussed this provision, Elite was assured that **[CCSI (USA) and CPSI]** would terminate Elite under the "any reason" provision only if **[CCSI (USA) and CPSI]** decided to leave the patient-financing industry, in which event Elite would retain control over the health-care provider accounts which Elite had generated prior to contracting with CPSI and would be free to compete for accounts generated after contracting. (Complaint, ¶ 8.) (emphasis added)

- [S]uch promises were made to Elite's top management by **[CCSI (USA) and CPSI]** agents Ms. Sexton, Mr. Shanders, Mr. Boddicker, Mr. Olsen and Mr. Bariso at the January 21, 2003 meeting in Chicago. (Complaint, ¶ 16.) (emphasis added)[7]

As affiliate corporations that were both involved in the same program with Elite that gave rise to the complaint filed first and currently pending in New York, CCSI and CPSI meet the substantially similar prong of the first-to-file rule. This result is only reinforced by a reading of Elite's own Complaint filed in this case. Therefore, the second prong of the first-to-file rule is met.

---

[7] In the interests of economy, the full scope of Elite's treatment of CPSI and CCSI as identical or similar entities will not be recited in the body of this pleading. While CCSI certainly denies any allegations of wrongdoing, for further evidence of such alleged similarities, see the following paragraphs in the Elite II Complaint: ¶ 7 (CPSI and CCSI agents' repeated representations to Elite); ¶ 9 (undistinguished representations by CPSI and CCSI to Elite); ¶ 11 (allegation that agents of CPSI and CCSI engaged in an unfair and deceptive course of conduct which frustrated the purpose of the agreement between Elite and CPSI); ¶ 12 (allegation that CPSI and CCSI falsely represented to Elite "its" advertising and marketing capabilities); ¶ 13 (allegation that CPSI and CCSI unfairly and deceptively promised to provide highly trained customer service personnel); ¶ 14 (allegation that CPSI and CCSI provided Elite with a sales brochure with missing information); ¶ 15 (allegation CPSI and CCSI failed to provide electronic point-of-sale terminal to health care providers); ¶ 17 (allegation that CPSI and CCSI were capable of providing Elite with high quality services and products); ¶ 18 (allegations that CPSI and CCSI acknowledged many deficiencies, but that CPSI and CCSI redirected Elite's focus); ¶ 19 (allegation that CPSI and CCSI caused catastrophic financial injury to Elite); ¶ 20 (allegation that CPSI and CCSI maintained the deception long enough to take advantage of Elite); ¶ 21 (allegation Elite did not become aware of CPSI's and CCSI's deception to take Elite's business without just compensation, until after termination of the Master Services Agreement); ¶ 22 (allegation that CPSI and CCSI destroyed Elite as a business entity), ¶ 34 **(allegation that, "Elite was induced to enter into a business relationship with CPSI and CCSI (USA)");** ¶ 36 **(allegation that CCSI and CPSI conspired to defraud Elite);** and ¶ 37 **(allegation that the conspiracy of CCSI and CPSI caused severe harm to Elite).**

C JMP 358124 v1
2782620-000018 9/22/2006

### 3.    Similarity of Claims Asserted

As with the identity of the parties, application of the first-to-file rule does not hinge on a showing that the claims asserted in both cases are identical. Instead, the rule applies if the claims are shown to be similar. Fuller v. Abercrombie & Fitch Stores, Inc., 370 F. Supp. 2d 686, 688 (E.D. Tenn. 2005) (noting that the similarity of issues controls whether the first-to-file rule applies); Versus Technology, Inc. v. Hillenbrand Industries, Inc., 2004 WL 3457629, *5 (W.D. Mich. 2004) ("The claims in the two cases need not be identical; only substantial similarity of issues or substantial overlap in the cases need be shown.").[8] Nor is it required that the *same* claims be brought in both actions, because even when different causes of action are alleged the question still remains whether the claims substantially overlap:

> [Plaintiff] rightly recognizes that he alleges an additional claim not included in the [first] action. However, the issues in the two actions need not be identical; they need only substantially overlap. And the Court finds that, despite this additional claim, the issues in the two actions still substantially overlap.

Fuller, 370 F. Supp. 2d at 690.

####  a.    Plaintiff's allegations in Elite I and Elite II are virtually identical

Plaintiff's allegations in Elite I against CPSI and Plaintiff's allegations in Elite II against CCSI are strikingly similar. An examination of the two complaints reveals that the overwhelming majority of the language contained in the Elite II Complaint filed against CCSI was copied word-for-word from the Elite I Proposed Second Amended Complaint against CPSI.[9] A copy of Elite's Proposed Second Amended Complaint against CPSI is attached as Exhibit C.

---

[8] See also Mach. Shop, Inc. v. Systematic, Inc., 2006 WL 2051737, *2 (D. Idaho 2006) ("[i]n determining whether the cases involve the same issue, it is enough that the overall content of each suit is not very capable of independent development, and will be likely to overlap to a substantial degree.") (int. cit. omit.).

[9] On August 4, 2006, Elite's New York counsel sent a letter to Magistrate Judge Gabriel Gorenstein concerning Elite's motion to amend the complaint in Elite I. Included in the correspondence to Judge Gorenstein was Elite's Proposed Second Amended Complaint. (Affidavit of Bruce Schneider, Esq., ¶ 8, Exhibit G).

11

A redline document comparing the allegations in Elite I Proposed Second Amended Complaint with the allegations in the Elite II Complaint against CCSI is attached hereto as <u>Exhibit H.</u>  After reviewing these two Complaints, it is self-evident that the causes of action in both cases substantially overlap.

          b.     <u>Plaintiff's allegations in Elite II alone establish the substantial similarity of the claims against CPSI and CCSI</u>

The allegations in the Elite II Complaint alone illuminate the similarities and overlap between Elite's claims against CPSI and CCSI – the majority of Elite's allegations are asserted uniformly against both entities.  For example, in the Elite II Complaint, both CCSI and CPSI:

- Engaged in "deceptive and unfair commercial conduct . . . ." (Complaint, ¶ 4.)

- Made "representations concerning the circumstances under which the "any reason" provision would be used" that "were misleading, false, and unfair." (Complaint, ¶ 8.)

- "[E]ngaged in an unfair and deceptive course of conduct which frustrated the purpose of the Agreement . . . ." (Complaint, ¶ 11.)

- "[C]onspired together to take away Elite's business without just compensation." (Complaint, ¶ 11.)[10]

In Elite II, not only does Elite define <u>CCSI and CPSI</u> as "Citicorp", a single entity, but the vast majority of Elite's allegations are directed towards "Citicorp" with absolutely no distinction between CCSI and CPSI.  **In fact, Elite goes so far as to accuse CCSI and CPSI of <u>conspiring to defraud Elite</u>** (See ¶¶ 35 - 39, Count IV – Civil Conspiracy, Elite II Complaint).  Such an allegation demonstrates that Elite's theory of the case is predicated on an argument that CCSI and CPSI together took actions that purportedly harmed Elite.  Moreover, a review of the allegations contained in the Complaint filed in Elite I reveals that the claims against CCSI are

---

[10] In the interests of economy, the full scope of Elite's allegations directed towards *both* CPSI and CCSI will not be recited in this pleading.  For further evidence, <u>see</u> <u>generally</u> Elite II Complaint.

C JMP 358124 v1
2782620-000018 9/22/2006

virtually identical to those filed against CPSI.  To further demonstrate this point, CCSI attaches

Exhibit I, which is a chart comparing [1] Elite's claims asserted against CPSI in the Proposed

Second Amended Complaint in Elite I and [2] Elite's claims asserted against CCSI in this action,

Elite II.  CCSI also attaches Exhibit J, which is a redline comparison of the Elite's claims against

CPSI in the First Amended Complaint in Elite I and asserted against CCSI in this case, Elite II.

Exhibits H, I and J illustrate what is immediately clear – Elite has brought exactly the same case

against CCSI as it did against CPSI, with only minor insignificant differences.

In addition, the failure to include each claim asserted in the first-filed action does not

prevent application of the first-to-file rule – as noted above, courts have uniformly held that the

substance of the two complaints should take precedent over the form.  See, e.g. Fuller, 370 F.

Supp. 2d at 690; Versus Technology, Inc., 2004 WL 3457629, *5.

c.    Elite acknowledged the substantial similarity of the claims between Elite I
       and Elite II in the proposed agreed order

Moreover, Elite itself has acknowledged the similarity between these two causes of

action, as evidenced by its assertions made in the Agreed Order Transferring Case to the United

States District Court for the Southern District of New York.  According to that proposed agreed

order, Elite stated that both cases [1] "involve a congruence of parties and witnesses," [2] that

"the interests of justice would be served through [transfer]," [3] that transfer "would result in the

substantial saving of judicial resources," and [4] that transfer "would advance the just, efficient

and economical conduct of the cases."  Such an acknowledgement should serve to estop Elite

from now contesting that the two cases are not similar, and is clear and convincing evidence that

the first-to-file rule should be applied to this case.  This reason, added to the fact that even a

cursory reading of the two complaints filed by Elite shows that a majority of the claims asserted

against both CPSI and CCSI arise out of the Master Services Agreement and contain virtually

13

identical factual allegations, weigh in favor of finding that the third factor for application of the first-to-file rule is met. Inherent.com v. Martindale-Hubbell, 420 F. Supp. 2d 1093, 1097 (N.D. Cal. 2006) (noting that claims asserted in second case were grounded in contract that was at issue in the first case); Keating Fibre Intern., Inc. v. Weyerhaeuser Co., Inc., 416 F. Supp. 2d 1048, 1054 (E.D. Pa. 2006) (transferring case to first filed court and noting that second case concerned duties and obligations that arose from contract at issue in first filed case).

### B.    **Equity Demands Application of the First-to-File Rule**

Applying the first-to-file rule in the present case will further the equitable interests that prompted courts to adopt the rule. Permitting cases with similar claims and similar parties to proceed on parallel tracks in different federal jurisdictions will force the parties to incur increased litigation costs, will place an undue burden on the federal court system, and will create the risk of conflicting judgments. In re American Medical Systems, Inc., 75 F.3d 1069, 1088 (6th Cir. 1996) ("[t]he waste of judicial resources due to duplicative proceedings is plain.") (int. cit. omit.); Young v. LeFleur Transportation of Tupelo, 2002 WL 31992189, *2 (N.D. Miss.) ("[i]t would constitute an unnecessary interference by this court into a sister court's affairs, as well as an unwise use of judicial resources, for this court and [the first-filed-court] to issue potentially inconsistent rulings . . . ."). As recently noted by this Court:

> [T]he first-to-file rule is designed to avoid the waste of duplication of effort by two co-equal district courts, to avoid rulings by one district court that may interfere with or trench upon the authority of another district court, and to avoid inconsistent or piecemeal resolution of legal issues that call for a uniform result.

Plantronics, Inc. v. Clarity, LLC, 2002 WL 32059746, *2 (E.D. Tenn. 2002).

Plaintiff's allegations in Elite I and Elite II arise out of and relate to the same Master Services Agreement entered into by CPSI and Elite. Elite I and Elite II will require presentation of virtually the same evidence. The same witnesses will be deposed twice about the same

14

subject matter. The same witnesses will have to testify in New York in Elite I, and then testify in Tennessee in Elite II. In Elite I, Elite alleges that Craig Vallorano, Darin Boddicker, Patrick Shanders, Debra Sexton, Lori Cavicchioni, Ken Olsen, and Alex Bariso were agents of CPSI during these individuals' interaction with Elite representatives. In Elite II, Elite alleges that those exact same individuals were agents of CCSI during these individuals' interaction with the same Elite representatives.[11] (Complaint, ¶ 2; Exhibit A, ¶ 2.) Not only is this an unnecessary waste of the courts' judicial resources and a burden upon the witnesses, but CPSI and CCSI, as sister corporations, will incur twice the expense to properly defend the claims asserted against them. It is also entirely possible that the findings of fact and rulings of law in Elite I and Elite II would be inconsistent and contradictory in whole or in part.

Portfolio Technologies, Inc. v. Intellx, Inc., 2005 WL 1189604 (W.D. Mich.) is particularly instructive. The plaintiff, Portfolio, sued the manufacturer of a product in a New Jersey district court on claims of patent infringement. Id. *1. Portfolio then filed a second suit against the distributor of the same product in a Michigan district court. Id. Despite the fact that the similarities between the manufacturer and distributor arose solely out of their involvement with product at issue, the court in Portfolio Technologies ultimately held that application of the first-to-file rule was appropriate. Id. at *5. **Grounding its ruling on equitable concerns**, the court noted that Portfolio seemed to be forum shopping because it feared an unfavorable ruling in the New Jersey forum. Id. (noting that "the resulting risk of both duplication of effort and inconsistency of result."). According to the Portfolio court, "[w]hat is clear is that Portfolio, which chose the New Jersey forum for the first-filed case, is in no position to complain of

---

[11] The overlap of witnesses in the two cases is even more egregious with regard to Elite's witnesses. Because Elite is the sole Plaintiff in both actions, and because the complaints filed by Elite in both actions reference the same employees and principals of Elite as having relevant information, litigation of both cases would require an almost exact duplication of depositions and testimony at trial. (See, e.g., Complaint, ¶ 7; Exhibit A, ¶ 7.)

C JMP 358124 v1
2782620-000018 9/22/2006

prejudice or tactical advantage from merely being obliged to conclude what it began in [the first-filed forum of New Jersey] before involving another federal court in a dispute involving the same patent and product, if not the same parties." Id.

The resemblance between this case and Portfolio is striking. Elite previously filed an action against CPSI (Elite I), arising out of the allegation that a Citi entity, "engaged in a series of unfair and deceptive acts affecting trade and commerce with the undisclosed purpose and effect of taking Elite's business enterprise for its own benefit without just compensation." (See respective ¶ 4 in each of the following: Elite I Complaint, Elite I First Amended Complaint, and Elite I Proposed Second Amended Complaint).

Three weeks after Judge Collier granted CPSI's Motion to Transfer Venue to the Southern District of New York, Elite then sued CCSI (Elite II) in this Court, arising out of the allegation that a Citi entity, "engaged in a series of unfair and deceptive acts affecting trade and commerce with the undisclosed purpose and effect of taking Elite's business enterprise for its own benefit without just compensation." (See ¶ 4, Elite II Complaint.) Unlike the defendants in Portfolio, CCSI and CPSI have even more in common than simply the involvement in the same subject matter – they are affiliate corporations. The harm that would result from simultaneously litigating Elite I and Elite II in separate forums and the waste of judicial resources is unquestionable.

Elite cannot, with any credibility, reverse its position from the proposed agreed order previously submitted to this Court, and attached hereto as Exhibit F. Elite represented to this Court that the similarities between the two cases and the potential waste of judicial resources that would result from simultaneous litigation of the cases in different forums necessitated the transfer of this case not just to New York, but to District Judge Barbara Jones who is assigned to

16

Elite I. For these reasons, equity demands the application of the first-to-file rule so that this action, Elite II, should be dismissed.

### C.    Elite II Should be Dismissed Pursuant to the First-to-File Rule

Once this Court finds that the first-to-file rule is applicable, then in no event should the second filed action be permitted to proceed. See, e.g. Wynne v. Commemorative Air Force, 2006 WL 2486562, *2 (S.D. Ohio 2006) ("in all but one case, the second-filed court either dismissed or stayed the case before it giving deference to the first-filed case."); AluChem, Inc. v. Sherwin Alumina L.P., 2006 WL 1281887, *1-2 (S.D. Ohio 2006) ("[t]his Court holds that . . . it is important to maintain a bright-line rule that the first-filed court should determine whether an exception applies and which action should proceed. . . . As such, this Court may dismiss this case, stay the case pending the outcome of the first-filed suit, or transfer the case to the Texas court.").

The appropriate course of action is for this Court to dismiss this proceeding, which leaves Elite free to move to amend its Second Amended Complaint in Elite I in the Southern District of New York to assert its claims against CCSI.[12]    Aluminum Banking Co., Inc. v. Callery/Conway/Mars HV, Inc., 2006 WL 2193007 (E.D. Mich. 2006) (dismissing second filed suit and noting that parties should litigate the issue of proper forum before the court in which the

---

[12] For purposes of this cause of action, CCSI waives any objection, to the extent available, that it may have to personal jurisdiction and venue for the United States District Court for the Southern District of New York. This waiver is made in the interests of equity, as courts have previously held that application of the first-to-file rule is appropriate **even if personal jurisdiction does not exist in the first-filed forum for a party to the second action**. See, e.g., Wolf Designs, Inc. v. Donald McEvoy Ltd., Inc., 341 F. Supp. 2d 639, 646 (N.D. Tex. 2004) (applied the first-to-file rule even though the defendants in the two actions were different and even though the defendant in Wolf had successfully challenged jurisdiction in forum where the first-filed action was pending). Id. at 646; Ed Tobergte Associates, Inc. v. Zide Sport Shop of Ohio, Inc., 83 F. Supp. 2d 1197, 1199 (D. Kan. 1999) ("[t]he mere fact that a court may find jurisdiction lacking does not change the first-to-file rule."). Such admissions by the party seeking dismissal or transfer of a case have been found sufficient to permit courts to apply the first-to-file rule. See, e.g., St. Helena Wine Co., Inc. v. Allied Management, Inc., 1998 WL 480190, *2 (N.D. Cal. 1998) ("[Defendants] have made a number of representations to this Court that estop [the defendant] from contesting personal jurisdiction and venue of a [the first-filed] forum.").

first filed action is pending).  By dismissing the present action, the inequitable result of duplicitous litigation and the burden of an increased cost of defense for CCSI and CPSI would be avoided.

**D.**     **In the Alternative, the Present Case Should be Transferred to the District Court For the Southern District of New York Pursuant to the First-to-File Rule**

Under the first-to-file rule, a court has the "inherent authority" to transfer the second filed case to the forum in which the first-filed action is currently pending. Fuller v. Abercrombie & Fitch Stores, Inc., 370 F. Supp. 2d 686, 688 (E.D. Tenn. 2005) ("this case is being transferred pursuant to the Court's inherent authority under the first-to-file rule."); Plantronics, Inc. v. Clarity, LLC, 2002 WL 32059746, *1 (E.D. Tenn. 2002) ("[t]he first-to-file rule allows this Court, in its discretion to transfer this second-filed action . . . ."); see also Smithers-Oasis Co. v. Clifford Sales & Marketing, 194 F. Supp. 2d 685 (N.D. Ohio 2002) (transferring action to district court in Missouri under inherent power to transfer pursuant to first-to-file rule); Plating Resources, Inc. v. UTI Corp., 47 F. Supp. 2d 899, 905-06 (N.D. Ohio 1999) (transferring case to district court sitting in Pennsylvania under first-to-file rule).[13]

This inherent authority is in addition to, and separate and apart from, the Court's statutory authority to transfer a case under 28 U.S.C. § 1404(a); therefore, the elements for transfer under § 1404(a) are not applicable. Fuller, 370 F. Supp. 2d at 690-91 ("It is important to clarify that [plaintiff's] action is not being transferred under 28 U.S.C. § 1404(a).  Rather, this case is being transferred pursuant to the Court's inherent authority under the first-to-file rule.  Because

---

[13] See also Alltrade, Inc. v. Uniweld Products, Inc., 946 F.2d 622, 623 (9th Cir. 1991) (noting that the first-to-file rule "allows a district court to transfer, stay, or dismiss an action when a similar complaint has already been filed in another federal court"); Cadle Co. v. Whataburger of Alice, Inc., 174 F.3d 599, 606 (5th Cir. Tex. 1999) (exercising inherent authority to transfer case under first-to-file rule); Save Power Ltd. v. Syntek Finance Corp., 121 F.3d 947 (5th Cir. 1997) (utilizing inherent power to transfer provided by first-to-file rule); Dean Foods Co. v. White Wave, Inc., 2001 WL 877540, *1 (N.D. Ill. 2001) ("This court has the inherent power and discretion to defer to another federal proceeding the same parties and issues to avoid duplicative litigation").

C JMP 358124 v1
2782620-000018 9/22/2006

[plaintiff's] action will be transferred under the first-to-file rule, the Court does not address, and expresses no opinion on whether a transfer pursuant to § 1404(a) would be proper.") (int. cit. omit.); Plantronics, 2002 WL 32059746, *1 (same).  Because CCSI has readily established that the first-to-file rule applies in this case, and because it would be improper to permit both cases to proceed on parallel tracks, this Court should dismiss this action or, in the alternative, exercise this Court's inherent authority and transfer this case to the Southern District of New York.

## III.  ELITE'S ACTION IS BARRED BY THE DOCTRINE PROHIBITING SPLITTING CAUSES OF ACTION

Federal courts have long recognized a prohibition against a party splitting its causes of action, so as to bring those causes of action at different times in different proceedings. See, e.g., Hutcherson v. Lauderdale County, Tennessee, 326 F.3d 747, 758-59 (6th Cir. 2003); Hadley v. Inmon, 2006 WL 141750, *3 (E.D. Tenn.); Niemi v. NHK Spring Co., Ltd., 2006 WL 1156555, *5 (E.D. Mich.) ("the Sixth Circuit generally disfavors claim-splitting").

Such a prohibition is seen most often when a plaintiff receives an unfavorable ruling in one forum and subsequently seeks to recover in another forum on a related cause of action. Hadley, 2006 WL 141750 at *3; Shelar v. Shelar, 910 F. Supp. 1307, 1316 (N.D. Ohio 1995). Florida v. Knapp King-Size Corp., 1992 WL 420893, *4 (W.D. Mich.) ("a plaintiff who has his opportunity to present his case in court and seek relief for a perceived wrong may not later reargue his case or create different theories of relief for the same wrong if unsuccessful in the first action."). In these situations, the prohibition against splitting causes of actions is accompanied by the doctrines of claim preclusion and res judicata. Hutcherson, 326 F.3d at 758-59.

C JMP 358124 v1
2782620-000018 9/22/2006

### A.     **Elite Cannot Split its Causes of Action**

A number of courts have recognized that the prohibition against claim splitting applies equally to cases where the plaintiff has concurrent, similar causes of action pending in a different forum. See, e.g., Beedle v. Wilson, 2006 WL 1702502, *3 (W.D. Okla.) (noting that concurrent actions instigated by plaintiff are barred by claim splitting doctrine); CIVIX-DDI, LLC v. Expedia, Inc., 2005 WL 1126906, *4 (N.D. Ill.) ("district courts have applied the doctrine of claim splitting when the first action was still pending."); Oxbow Energy, Inc. v. Koch Industries, Inc., 686 F. Supp. 278, 282 (D. Kan. 1988) (finding "persuasive authority that even absent a final judgment, a party may not split his causes of action. **Instead, all claims arising out of a single wrong must be prosecuted in one action**.") (emphasis added). Independent of the first-to-file rule, Elite II should be dismissed based on the application of the doctrine prohibiting claim splitting.

Under Tennessee law, claim splitting is prohibited when claims are later brought against either the parties to a prior action *or against parties with an "identity of interest."* Hutcherson v. Lauderdale County, Tennessee, 326 F.3d 747, 759 (6th Cir. 2003). (emphasis added). In determining whether an identity of interest exists, the Sixth Circuit has noted that privity "relates to the subject matter of the litigation, not simply to the relationship between the parties themselves." Id. (citing Cantrell v. Burnett & Henderson Co., 216 S.W.2d 307, 309-10 (Tenn. 1948)). As discussed extensively in Section II. A, *supra*, **the subject matter of Elite I and Elite II arise out the identical theory that a Citi entity, "engaged in a series of unfair and deceptive acts affecting trade and commerce with the undisclosed purpose and effect of taking Elite's business enterprise for its own benefit without just compensation."**

C JMP 358124 v1
2782620-000018 9/22/2006

The allegations directed toward CPSI in Elite I in the New York action and those directed toward CCSI in Elite II in the Tennessee action are virtually identical, and relate to the alleged fraud, negligence, and other acts of wrongdoing in the negotiation, execution, and performance of the Master Services Agreement.  (See Section II.A.2, 3, *supra*.)  Thus, the subject matter in both cases is the same.  Further, CCSI is an affiliate of CPSI, which is sufficient to render any claims against CCSI waived if not asserted in the original action against CPSI.  Supremacy Capital Co. v. Tri-Med Finance Co., 165 F. Supp. 2d 679, 683-84 (S.D. Ohio 2001) (noting that when one corporation was sued previously, second related corporation could not be later sued for the same claims arising from same set of facts).[14]  The damages claimed in CPSI and CCSI are the same.  If Elite prevailed in New York and Tennessee, Elite could not be compensated twice for the same loss of the Elite business.  Allowing both cases to proceed creates the very real risk of a double recovery.

Elite has also alleged that CCSI and CPSI are co-conspirators to defraud Elite. (Complaint, ¶ 11 and ¶¶ 35 - 39.)  Elite alleges the same civil conspiracy between CCSI and CPSI in Elite I and Elite II, and alleges the exact same resulting damages in Elite I and Elite II. Adjudicating the same civil conspiracy allegation in two forums simultaneously (New York and Tennessee) is the very definition of splitting a cause of action – it makes no sense.  Because CCSI and CPSI have an "identity of interest," and because Elite has previously chosen to instigate part of its claims against CPSI in the action currently pending in New York, this Court should find that, pursuant to the ban on claim splitting, Elite's claims against CCSI must be brought in the New York action.  Niemi v. NHK Spring Co., Ltd., 2006 WL 1156555, *5 (E.D.

---

[14] The factors for application of *res judicata* in the Sixth Circuit are: "(1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their 'privies'; (3) an issue in the subsequent action which was or which should have been litigated in the prior action; and (4) an identity of the causes of action." Supremacy Capital Co. v. Tri-Med Finance Co., 165 F. Supp. 2d 679, 683-84 (S.D. Ohio 2001).

C JMP 358124 v1
2782620-000018 9/22/2006

Mich.) (enforcing ban on claim splitting "when [second] action certainly could-and should-have been brought when the [first] action was originally filed or, at the latest, when Plaintiffs sought to amend their complaint the first time.").

## IV.    CONCLUSION

This case should be dismissed or transferred to the Southern District of New York based on the first-to-file rule and/or the prohibition against impermissible claim-splitting. Elite already has pending in New York a case involving virtually identical claims and substantially similar parties. Elite has always had the right to move in the New York case for the addition of CCSI as a party and to assert its virtually identical claims against CCSI.

Allowing Elite to proceed simultaneously in New York and Tennessee in two separate cases that involve the same witnesses, same causes of action, and substantially the same parties [1] is a waste of judicial resources, [2] unnecessarily escalates the parties' litigation costs, and [3] creates the potential for inconsistent and contradictory findings of fact and rulings of law. To prevent such inequities, this Court should either dismiss this case or transfer this matter to New York under the first-to-file rule and/or the doctrine prohibiting claim splitting.

22

Respectfully Submitted,

BAKER, DONELSON, BEARMAN,
  CALDWELL & BERKOWITZ, P.C.


By:  _s/ Joshua A. Powers_____
    Joshua A. Powers (BPR # 15639)
    John M. Phillips (BPR #21639)
1800 Republic Centre
633 Chestnut Street
Chattanooga, TN 37450-1800

*Attorneys for Defendant, Citicorp Credit Services,*
*Inc. (USA)*


## CERTIFICATE OF SERVICE

    I hereby certify that on September 22, 2006, a copy of the foregoing Motion to Dismiss or Transfer was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail and Certified Mail, Return Receipt Requested. Parties may access this filing through the Court's electronic filing system.

    Donald J. Aho, Esq.
    Robert F. Parsley, Esq.
    Miller & Martin PLLC
    1000 Volunteer Building
    832 Georgia Avenue
    Chattanooga, TN 37402


    _s/ Joshua A. Powers_____

23