UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | | |
|---|---|---|
| ELITE PHYSICIAN SERVICES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:06-CV-86 |
| | ) | |
| v. | ) | *Mattice/Carter* |
| | ) | |
| CITICORP CREDIT SERVICES, INC. (USA), | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS OR TRANSFER**

# Defendant's Exhibit G

## (Affidavit of Bruce H. Schneider, Esq.)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| ELITE PHYSICIAN SERVICES, LLC, )<br><br>Plaintiff, )<br><br>v. )<br><br>CITICORP CREDIT SERVICES, INC. (USA), )<br><br>Defendant. ) | No. 1:06-CV-86<br><br>*Mattice/Carter* |

## AFFIDAVIT OF BRUCE H. SCHNEIDER, ESQ.

STATE OF NEW YORK:

COUNTY OF NEW YORK:

I, Bruce H. Schneider, Esq., having been first duly sworn, depose and say:

1.    I am over eighteen (18) years of age and am competent to make this affidavit.  I have personal knowledge of the facts set forth in my affidavit.

2.    I have been continuously licensed to practice law in the State of New York since 1975.

3.    I am a partner at the law firm of Stroock & Stroock & Lavan, LLP, 180 Maiden Lane, New York, New York, 10038-4982.

4.    I am counsel of record for Citicorp Payment Services, Inc. in the lawsuit styled: Elite Physician Services, LLC v. Citicorp Payment Services, Inc., 1:06-cv-02447-BSJ-GWG, in the United States District Court for the Southern District of New York **("Elite I")**.

5.    On March 17, 2006, the venue of Elite I was transferred to the Southern District of New York from the Eastern District of Tennessee, pursuant to the order of Chief Judge Curtis L. Collier.

1

6.      Because counsel for both parties had agreed to transfer the present action, <u>Elite Physician</u> <u>Services, LLC v. Citicorp Credit Services, Inc. (USA)</u>, 1:06-cv-86 (**"Elite II"**), from the United States District Court for the Eastern District of Tennessee to the Southern District of New York, Elite's Tennessee counsel requested that I, as counsel for Citicorp Credit Services, Inc. (USA) (hereafter "CCSI"), not delay in responding to the CCSI Complaint in Elite II, pending the case file arriving in the New York court. Elite's counsel further requested that I go ahead and timely serve CCSI's Answer, with a Southern District of New York caption, even though the case file would not arrive in New York for a few weeks. I agreed to Elite's request, and served CCSI's Answer to the Complaint on Elite's counsel on June 19, 2006. A copy of CCSI's Answer with a Southern District of New York caption, served at the request of Elite's counsel, and my cover letter of June 19, 2006 are attached hereto as collective <u>Exhibit 1</u>.

7.      Philip R. Schatz, Esq. of the law firm of Wrobel & Schatz LLP, 11th Floor 1040 Avenue of the Americas, New York, New York 10018-3703 is counsel of record for Elite Physician Services, LLC in Elite I, which is pending in the Southern District of New York.

8.      On August 4, 2006 I received a copy of a letter from Elite's attorney, Philip Schatz, by hand delivery at my offices. The August 4, 2006 correspondence was addressed to Magistrate Judge Gabriel W. Gorenstein, and related to Elite Physician Services, LLC's motion to amend the Complaint in Elite I. Specifically, attorney Schatz enclosed in the August 4, 2006 correspondence a Proposed Second Amended Complaint in Elite I. The August 4, 2006 letter and the Proposed Second Amended Complaint are attached hereto as collective <u>Exhibit 2</u>. The Proposed Second Amended Complaint included within <u>Exhibit 2</u> is the "Proposed Second Amended Complaint" referred to within the Memorandum of Law in Support of Citicorp Credit Services, Inc. (USA)'s Motion to Dismiss or Transfer.

2

FURTHER AFFIANT SAITH NAUGHT.

Bruce H. Schneider, Esq.

Sworn to and subscribed before me,
this 20TH day of SEPTEMBER, 2006.

Notary Public
My Commission Expires: 2|11|2010

KIM M. RANCOURT
Notary Public, State of New York
No. 01RA6069832
Qualified in Kings County
Commission Expires Feb. 11, 2010

3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

ELITE PHYSICIAN SERVICES, LLC,      )
                                    )
              Plaintiff,            )       No. 1:06-CV-86
                                    )
v.                                  )       *Mattice/Carter*
                                    )
CITICORP CREDIT SERVICES, INC. (USA),   )
                                    )
              Defendant.            )

**AFFIDAVIT OF BRUCE H. SCHNEIDER, ESQ.**

# Collective Exhibit 1

## (Letter to Don Aho and Answer of CCSI with S.D.N.Y. Caption)

# STROOCK

June 19, 2006

Bruce H. Schneider
Direct Dial 212-806-5636
Direct Fax 212-806-2636
BSchneider@stroock.com

Don Aho, Esq.
Miller & Martin PLLC
1000 Volunteer Building
832 Georgia Avenue
Chattanooga, TN 3740

Philip R. Schatz, Esq.
Wrobel & Schatz LLP
1040 Avenue of the Americas, 11th Floor
New York, NY 10018-3703

Re:   Elite Physician Services LLC v. Citicorp Payment Services Inc.

Dear Don and Phil:

Enclosed please find a copy of the Answer of Citicorp Credit Services, INC. (USA).
Per our agreement, the Answer is being served today but will be filed when this case is
transferred and received by the Clerk of the United States District Court for the
Southern District of New York

Best regards

Sincerely,

Bruce H. Schneider

Enclosure

SSL-DOCS2 70285914v1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - -x

ELITE PHYSICIAN SERVICES, LLC,                    :

                              Plaintiff,          :       No. 06 Civ. 02447 (BSJ)

                -against-                          :

CITICORP CREDIT SERVICES, INC. (USA),             :       **ANSWER OF CITICORP CREDIT
                                                          SERVICES, INC. (USA)**

                              Defendant.          :

- - - - - - - - - - - - - - - - - - - - - - - - - - -x

        Defendant, Citicorp Credit Services, Inc. (USA) ("CCSI"), by and through its attorneys, Stroock & Stroock & Lavan LLP for its Answer to the Complaint, responds and alleges as follows:

      1.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first sentence of paragraph 1 of the Complaint. Avers that the second sentence of paragraph 1 of the Complaint calls for a legal conclusion to which no response is required; however to the extent that it may contain factual assertions, denies knowledge or information sufficient to form a belief as to the truth of those allegations.

      2.     Admits the first sentence of paragraph 2 of the Complaint. Admits that it operates a call center in Gray Tennessee, but otherwise denies the second and third sentences of paragraph 2 of the Complaint. Admits that Craig Vallorano, Darin Boddicker, Patrick Shanders, Debra Sexton and Lori Cavicchioni were employees of CCSI and that Ken Olsen and Alex Bariso were employees of Citicorp Credit Services Inc., but otherwise denies the last sentence of paragraph 2.

SSL-DOCS2 70284081v4

3.    Denies that the United States District Court for the Eastern District of Tennessee is the proper venue for this action; admits that the United States District Court for the Southern District of New York has subject matter jurisdiction and is the proper venue for this action and denies that Elite has suffered injuries as a result of any of the matters alleged in the Complaint and denies that Tennessee has an interest in the issues and conduct alleged or that its law is the governing law.

4.    Denies the allegations contained in paragraph 4 of the Complaint.

5.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first sentence of paragraph 5 of the Complaint except admits that prior to and during 2003 Elite was engaged in aspects of the healthcare financing business. With respect to the remaining allegations of paragraph 5 of the Complaint, denies knowledge or information sufficient to form a belief as to those allegations except admits that Elite previously provided marketing services for a healthcare financing program offered by MBNA and that, pursuant to that program, MBNA financed certain cosmetic surgery procedures.

6.    Denies the allegations contained in paragraph 6 of the Complaint except admits that in 2002 Elite and Citicorp Payment Services, Inc. ("CPSI") engaged in certain discussions and that in 2003 they entered into the Master Services Agreement ("MSA") and refers to the MSA for its contents.

7.    Denies the allegations contained in first sentence of paragraph 7 of the Complaint except admits that Elite and CPSI engaged in certain discussions and thereafter entered into the MSA, and refers to the MSA for its contents, and avers that the MSA superseded all prior agreements and understandings between them. Admits that certain written materials were

2

prepared and certain meetings were held, but that such documents and minutes of such meetings speak for themselves; further, all statements made in such documents and meetings that predate the MSA are superseded by the MSA and otherwise denies the allegations contained in the second and third sentences of paragraph 7 of the Complaint. Denies the allegations contained in the fourth and fifth sentences of paragraph 7 of the Complaint except admits that the parties engaged in certain discussions and thereafter entered into the MSA, and refers to the MSA for its contents, and avers that the MSA superseded all prior agreements and understandings between the parties. With respect to the sixth sentence of paragraph 7 of the Complaint, denies knowledge or information sufficient to form a belief as to what Elite relied upon but denies that reliance on any discussions or purported representations that are not reflected in the MSA would be justifiable. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in the seventh sentence of paragraph 7 of the Complaint but denies that reliance on any discussions or purported representations that are not reflected in the MSA would be justifiable. Denies the allegations contained in the eighth sentence of paragraph 7.

8.    Denies the allegations contained in paragraph 8 of the Complaint and avers that the parties entered into the MSA, refers to the MSA for its contents and that the MSA supersedes prior discussions and alleged representations between the parties.

9.    With respect to the first sentence contained in paragraph 9 of the Complaint, admits that the parties entered into the MSA and refers to the MSA for its contents and avers that the MSA supersedes prior discussions and alleged representations between the parties. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in the second sentence of paragraph 9 of the Complaint. With respect to the remaining allegations contained in paragraph 9 of the Complaint, admits that the parties entered into the MSA and

3

refers to the MSA for its contents and avers that the MSA supersedes prior discussions and alleged representations between the parties.

10.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 10 of the Complaint.

11.    Denies the allegations contained in paragraph 11 of the Complaint.

12.    Denies the allegations contained in paragraph 12 of the Complaint.

13.    Admits that certain meetings were held but avers that the MSA supersedes prior discussions and alleged representations between the parties and otherwise denies the allegations contained in paragraph 13 of the Complaint.

14.    Denies the allegations contained in paragraph 14 of the Complaint, except admits that a brochure was prepared for use by healthcare providers in face-to face discussions with customers and refers to that brochure for its contents and avers that the brochure was not intended for telephone sales.

15.    Denies the allegations contained in paragraph 15 of the Complaint.

16.    Admits that certain meetings were held but avers that the MSA supersedes prior discussions and alleged representations between the parties and otherwise denies the allegations contained in paragraph 16 of the Complaint.

17.    Admits that certain meetings were held but avers that the MSA supersedes prior discussions and alleged representations between the parties and otherwise denies the allegations contained in paragraph 17 of the Complaint.

4

18.    Denies the allegations contained in paragraph 18 of the Complaint.

19.    Denies the allegations contained in paragraph 19 of the Complaint.

20.    Denies the allegations contained in paragraph 20 of the Complaint except refers to the MSA for its provisions on termination and admits that since it terminated its relationship with Elite, Citicorp has continued to offer the Citi Health Card.

21.    Denies the allegations contained in paragraph 21 of the Complaint.

22.    Denies the allegations contained in paragraph 22 of the Complaint.

23.    Repeats and realleges its responses to paragraph 1 through 22 of the Complaint.

24.    Paragraph 24 of the Complaint states a legal conclusion as to which no response is required.

25.    Paragraph 25 of the Complaint states a legal conclusion as to which no response is required except denies that CCSI engages in any unfair and deceptive acts and practices or otherwise violated any law.

26.    Paragraph 26 of the Complaint states a legal conclusion as to which no response is required except denies that it engaged in any unfair and deceptive acts and practices or caused Elite any damages.

27.    Repeats and realleges its responses to paragraph 1 through 26 of the Complaint.

28.    Denies the allegations contained in paragraph 28 of the Complaint.

5

29.   With respect to paragraph 29 of the Complaint, denies knowledge or information sufficient to form a belief as to the allegations contained therein, but denies that reliance on any discussions or purported representations that are not reflected in the MSA would be justifiable.

30.   Denies the allegations contained in paragraph 30 of the Complaint.

31.   Repeats and realleges its responses to paragraph 1 through 30 of the Complaint.

32.   Denies the allegations contained in paragraph 32 of the Complaint.

33.   With respect to paragraph 33 of the Complaint, denies knowledge or information sufficient to form a belief as to the allegations contained therein, but denies that reliance on any discussions or purported representations that are not reflected in the MSA would be justifiable.

34.   Denies the allegations contained in paragraph 34 of the Complaint.

35.   Repeats and realleges its responses to paragraph 1 through 35 of the Complaint.

36.   Denies the allegations contained in paragraph 36 of the Complaint.

37.   Denies the allegations contained in paragraph 37 of the Complaint.

38.   With respect to paragraph 38 of the Complaint, admits that Elite demands a jury trial but denies that it is entitled to one.

39.   With respect to paragraph 39 of the Complaint, admits that Elite purports to reserve certain rights and avers that Elite has such rights as are conferred by the Federal Rules of Civil Procedures.

6

## FIRST AFFIRMATIVE DEFENSE

40.   The Complaint fails to state a claim upon which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

41.   The Complaint fails to plead with particularity as required by Rule 9 of the *Federal Rules of Civil Procedure*.

## THIRD AFFIRMATIVE DEFENSE

42.   Plaintiff has failed to mitigate its damages, if any.

## FOURTH AFFIRMATIVE DEFENSE

43.   Plaintiff has waived its right to a jury trial.

## FIFTH AFFIRMATIVE DEFENSE

44.   Pursuant to Section 10.09 of the MSA, New York law governs this dispute.

## SIXTH AFFIRMATIVE DEFENSE

45.   To the extent that the Tennessee Consumer Protection Act applies to this matter, which Citicorp denies, Citicorp raises all of its rights, immunities and defenses contained in the Tennessee Consumer Protection Act.

## SEVENTH AFFIRMATIVE DEFENSE

46.   To the extent that the Uniform Commercial Code applies to this matter, Citicorp raises all of its rights, immunities and defenses contained in the Uniform Commercial Code.

## EIGHTH AFFIRMATIVE DEFENSE

47.   To avoid waiver, and pending further investigation and discovery, Citicorp pleads the affirmative defense of statute of limitations.

7

## NINTH AFFIRMATIVE DEFENSE

48.    Plaintiff's claims are barred under principles of waiver, unclean hands, ratification, estoppel and laches.

## TENTH AFFIRMATIVE DEFENSE

49.    Plaintiff's claims are barred by the statute of frauds.

## ELEVENTH AFFIRMATIVE DEFENSE

50.    The MSA provides in relevant part that it superseded all prior agreements and undertakings, both written and oral, between the parties.

## TWELFTH AFFIRMATIVE DEFENSE

51.    Any claimed reliance by Elite on statements made by Citicorp or persons acting on Citicorp's behalf was not justified, particularly given the merger clause included in the MSA.

## THIRTEENTH AFFIRMATIVE DEFENSE

52.    With respect to the matters alleged in the Complaint, Citicorp at all times acted in good faith and in accordance with reasonable commercial standards, thus precluding any recovery by Plaintiff.

8

Dated: New York, New York
      June 19, 2006

STROOCK & STROOCK & LAVAN LLP

By: _____

      Bruce H. Schneider (BHS 7808)
      Attorneys for Defendant
      180 Maiden Lane
      New York, New York 10038
      Tel: (212) 806-5400

9

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | | |
|---|---|---|
| ELITE PHYSICIAN SERVICES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:06-CV-86 |
| | ) | |
| v. | ) | *Mattice/Carter* |
| | ) | |
| CITICORP CREDIT SERVICES, INC. (USA), | ) | |
| | ) | |
| Defendant. | ) | |

**AFFIDAVIT OF BRUCE H. SCHNEIDER, ESQ.**

# <u>Collective Exhibit 2</u>

# (Letter to Magistrate Judge Gorenstein And CPSI Proposed Second Amended Complaint)

# WROBEL & SCHATZ LLP

PHILIP R. SCHATZ
DAVID C. WROBEL, P.C.

STEVEN I. FOX

OF COUNSEL
CHRISTOPHER T. LAMAL

ATTORNEYS AT LAW
11TH FLOOR
1040 AVENUE OF THE AMERICAS
NEW YORK, NY 10018-3703

TELEPHONE: (212) 421-8100
FAX: (212) 421-8170
Web: www.wandslaw.com

Friday, August 04, 2006

*By Hand*
The Honorable Gabriel W. Gorenstein
United States Magistrate Judge
The Daniel P. Moynihan United States Courthouse
500 Pearl Street, Room 510
New York, New York 10007-1312

Ref.:  Elite Physician Services LLC v. Citicorp Payment Services, Inc.,
       1:06-cv-02447-BSJ-GWG

Dear Judge Gorenstein:

I am local counsel to plaintiff Elite Physician Services LLC. Your pretrial order dated
June 22, 2006 provides, in pertinent part, that the parties may move to amend the
pleadings no later than August 6, 2006. Elite has prepared a proposed second amended
complaint and memorandum of law in support of its notice of motion to file that
complaint. I am advised that such a motion requires a pre-motion conference pursuant to
Rule 2A of your Individual Practices governing motions other than discovery motions.
The shortness in time prior to the deadline for the motion is my fault; I had mistakenly
read the pretrial order to imply that a motion to amend was necessary and that permission
to file such a motion had already been granted.

The basis for the motion to amend is that plaintiff seeks to supplement and expand its
allegations, before discovery, to comport with its current state of knowledge concerning
the facts, that Rule 15 provides that leave to amend shall be freely given, and that
defendant is not prejudiced by an amended complaint at this early procedural stage of the
litigation. A copy of the proposed second amended complaint is attached. Your office
advised me today that this letter would constitute compliance with the deadline in the
pretrial order.

Very respectfully,

Philip R. Schatz

WROBEL & SCHATZ LLP

The Honorable Gabriel W. Gorenstein
August 4, 2006
Page 2 of 2/

Cc:    *By Hand*
        Bruce H. Schneider
        Stroock & Stroock & Lavan LLP
        180 Maiden Lane
        New York, NY 10038
        (212) 806-5400
        Attorneys for defendant Citicorp Payment Services, Inc.

Philip R. Schatz (PS 6158)
Wrobel & Schatz LLP
1040 Avenue of the Americas, Suite 1101
New York, NY 10018-3703
(212) 421-8100

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

ELITE PHYSICIAN SERVICES, LLC,                         No. 1:06-cv-02447-BSJ

                Plaintiff,                    **[Proposed]**
                                                       **SECOND AMENDED**
   -against-                                         **COMPLAINT**

CITICORP PAYMENT SERVICES, INC.,

              Defendant.

-------------------------------------------------------------------x

The Plaintiff, Elite Physician Services, LLC ("Elite"), states as follows as its Second Amended Complaint against the Defendant Citicorp Payment Services, Inc. ("CPSI"):

## PARTIES

1.     Elite is a Tennessee limited liability corporation with its principal place of business in Chattanooga, Tennessee.  Elite is also a "legitimate business enterprise" and a "person" as defined and described in the Tennessee Consumer Protection Act ("T.C.P.A."), Tenn. Code Ann. ("T.C.A.") §§ 47-18-102 and 47-18-103(9).

2.     CPSI is a Delaware corporation with its principal place of business located in Deerfield, Illinois and no significant connection with this judicial district.  As further described below, Citicorp is a corporation engaged in the sale and distribution of products and services of the nature provided to Elite in connection with its commercial relationship with Elite.  The following persons relevant to this action are employees of Citicorp Credit Services, Inc. (USA)

("CCSI (USA)")[1] who also acted as agents of CPSI: Craig Vallorano, Darin Boddicker, Patrick Shanders, Debra Sexton, and Lori Cavicchioni. Ken Olsen and Alex Bariso also acted as agents on behalf of both CCSI (USA) and CPSI although, on information and belief, they were not directly employed by either of these entities.

## JURISDICTION, VENUE AND GOVERNING LAW

3.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332. This action was transferred to this Court from the United States District Court for the Eastern District of Tennessee pursuant to 28 U.S.C. § 1404(a). A substantial majority of the relevant conduct at issue and all of the injuries to Elite occurred in Tennessee. Tennessee has the greatest interest in resolving the particular issues and regulating the conduct involved in this action. As such, Elite's claims are governed by Tennessee law.

## FACTUAL BACKGROUND

4.     This case involves a course of deceptive and unfair commercial conduct by CPSI and CCSI (USA) in connection with the offer to provide and the provision of services to Elite in the context of the patient financing services program discussed below. Before and after contracting with Elite, CPSI engaged in a series of unfair and deceptive acts affecting trade and commerce with the undisclosed purpose and effect of taking Elite's business enterprise for its own benefit without just compensation. This deceptive and unfair commercial conduct includes, but is not limited to, false representations to Elite which were made by CPSI to induce Elite to enter into and to maintain a business relationship with CPSI and CCSI (USA). The deceptive

---

[1] CCSI (USA) is a Delaware corporation with its principal place of business in Jacksonville, Florida, and is engaged in the sale and distribution of products and services which were provided to Elite in connection with its contractual relationship with CPSI. CCSI (USA) maintains a credit-services call center in Gray, Tennessee, which provided services to Elite. Elite filed a Complaint against CCSI (USA) in a separate action in the Eastern District of Tennessee, No. 1:06-CV-86. Elite reserves the right to seek transfer of this action to the Eastern District of Tennessee and to seek to consolidate this action with the pending Tennessee action.

2

and unfair acts affecting trade or commerce of which Elite complains involved the sale and distribution of services, products, and other property to Elite in violation of the T.C.P.A., T.C.A. §§ 47-18-101, et seq. The acts complained of occurred and/or caused injury to Elite in Tennessee.

5.   Prior to and during 2003, Elite built a successful business in the health-care-services patient financing industry. As a health-care-services patient financing company, Elite offered credit services to health-care providers which enabled consumers to finance certain health-care procedures that were not covered by insurance. For example, Elite's programs allowed consumers to finance certain hearing-related and cosmetic surgery procedures as well as other health-care procedures. In developing this business, Elite forged numerous valuable relationships with health-care organizations and health-care providers who benefited from the financing program and promoted it to patients. By 2003, Elite had built its enterprise to the point where it had over $20 million in annual sales.

6.   In 2002, Elite was approached by CCSI (USA) and CPSI (collectively "Citicorp") with a business opportunity relating to the sale and distribution of patient financing services and products. Representatives of Citicorp asked Elite to enter into a long-term, exclusive relationship in which Elite would continue to sell and distribute products and services in the patient financing industry in conjunction with these entities. For example, Ken Olsen ("Mr. Olsen") and Alex Bariso ("Mr. Bariso") made contact with Elite in Tennessee for this purpose in early 2002. Specifically, these representatives proposed that Citicorp and Elite cooperate to develop and to promote the sale and distribution of a health-care patient financing program and product eventually known as the "Citi Health Card." As part of its regular business activities, Citicorp enters into agreements and commercial relationships with companies like Elite for the

3

purpose of engaging them to promote Citicorp's products and services. As proposed by Citicorp, the Citi Health Card program would combine the globally recognized "Citi" name and Citicorp's mammoth financing resources with Elite's experience in new account acquisition and support in health-care financing to allow them to dominate the health-care patient financing industry.

7.    In discussions with Elite's representatives, CPSI's and CCSI (USA)'s agents repeatedly represented to Elite in Tennessee that, to execute the proposed plan, Citicorp was capable of providing and would provide to Elite the highest quality advertising, marketing, and transaction-processing support and services available in the industry. For example, such representations were made in written materials dated October 22, 2002 which were prepared by Patrick Shanders ("Mr. Shanders") and Darin Boddicker (Mr. Boddicker") and provided to Dr. Keith Dressler ("Dr. Dressler") and other Elite representatives on or about October 23, 2003 in Gray, Tennessee. In a conference that took place in Chicago, Illinois on or about January 21, 2003, Ms. Cavicchioni, Debra Sexton ("Ms. Sexton"), and Messrs. Shanders, Boddicker, Olsen and Bariso described in detail to Elite's top management Dr. Dressler, Mike Salisbury ("Mr. Salisbury"), and Stephen Tees ("Mr. Tees"), as well as to Elite representative Gina Glass ("Ms. Glass"), how Citicorp's vast resources and newly developed telephone information processing capabilities would enable Citicorp and Elite to overwhelm the competition in the developing health-care patient financing industry. Citicorp represented that through combining Elite's business model and contacts with Citicorp's "world class" capabilities, the companies would increase sales to over $1.4 billion within five years. Further such representations were made to Dr. Dressler by Messrs. Olsen, Boddicker and Shanders in meetings which took place in Chattanooga, Tennessee on or about July 25-26, 2002 and again by Mr. Boddicker in meetings with Elite representatives which occurred in Chattanooga on or about February 10-12, 2003.

4

Elite fully and justifiably relied on these representations. For example, based on its reliance on Citicorp's representations, Elite bypassed other business opportunities which would have allowed Elite to expand its business through relationships with other parties. The health-care patient financing services market was a nascent and growing market when Elite and Citicorp began their relationship, and the market has continued to grow dramatically.

8.     As part of their discussions, representatives of Citicorp and Elite engaged in negotiations that contemplated a services agreement under which they were to provide services to one another in order to promote the Citi Health Card program. As further part of these discussions, Mr. Boddicker and Mr. Olsen represented that Citicorp wanted to be free to exit the patient-financing business if and when it chose to do so. Mr. Boddicker and Mr. Olsen made numerous such representations in conversations with Dr. Dressler and/or Mr. Salisbury which occurred from November 2002 to April 2003. For example and in particular, such representations were made at meetings between Mr. Boddicker, Mr. Olsen, Mr. Salisbury and Dr. Dressler which occurred in Chattanooga, Tennessee on or about November 17, 2002 and in Chicago on or about January 20, 2003. As negotiations proceeded, Citicorp submitted a draft agreement it had prepared which contained a provision purporting to allow Citicorp to terminate the agreement "at any time and for any reason not otherwise included" in the agreement. When the parties discussed this provision, Elite was assured that Citicorp would terminate Elite under the "any reason" provision only if Citicorp decided to leave the patient-financing industry, in which event Elite would retain control over the health-care provider accounts which Elite had generated prior to contracting with CPSI and would be free to compete for accounts generated after contracting. For example, Mr. Boddicker made such representations to Mr. Salisbury in several conversations which occurred in March and April 2003. Mr. Olsen confirmed that this

5

was Citicorp's position in a telephone conversation with Dr. Dressler which occurred on or about October 31, 2005. Unbeknownst to Elite's principals, Citicorp's representations concerning the circumstances under which the "any reason" provision would be used were misleading, false, and unfair. Elite relied upon such representations and was induced into entering the relationship with Citicorp by many of these and other false representations to Elite which Citicorp made concerning its provision of advertising, marketing and transaction-processing support services to Elite.

9.      Relying on representations by Citicorp, Elite entered with CPSI into a Master Services Agreement (the "Agreement") dated April 9, 2003, under which Elite and CPSI agreed to develop and promote the Citi Health Card program. The program was intended to enable a large volume of consumers to easily and quickly finance various health-care procedures not typically covered by insurance, including but not limited to dental, orthodontic, vision, and hearing-related procedures. Under the Agreement, both Elite and CPSI agreed to assume certain rights and obligations and to provide certain services to one another. In particular, CPSI agreed to provide Elite with the services and products necessary to implement the Citi Health Card program, including, but not limited to, marketing support and access to Citicorp's vast strategic resources. The Agreement thus contemplated that certain services would be provided to Elite by CCSI (USA).

10.     Elite at all times performed its obligations under the Agreement in good faith.

11.     Despite Elite's performance of its obligations under the Agreement, agents of Citicorp engaged in an unfair and deceptive course of conduct which frustrated the purpose of the Agreement by failing to provide the services Citicorp agreed to provide to Elite. In so doing, Citicorp thwarted Elite's performance while taking the opportunity to learn the industry and to

use Elite's business model to introduce the Citi Health Card. CPSI and CCSI (USA) conspired together to take away Elite's business without just compensation.

12.     After entering into the Agreement, Citicorp continued to falsely represent and promise to Elite that it would provide Elite with particular high-quality advertising, marketing, and transaction-processing products and services. Promises to correct deficiencies in Citicorp's provision of services were made to Dr. Dressler, Mr. Tees, and other Elite representatives by Craig Vallorano ("Mr. Vallorano"), Mr. Shanders, Mr. Boddicker, Ms. Sexton and other Citicorp agents at a meeting which took place in Chattanooga, Tennessee in late August 2003 and again by Lori Cavicchioni ("Ms. Cavicchioni") during a February 2, 2004 telephone conference. Despite these promises and representations, Citicorp deceptively and unfairly provided products and services to Elite which were of a substantially inferior quality or failed to provide any products or services at all. In particular, at all times relevant, Citicorp falsely promised to Elite's top management, Dr. Dressler, Mr. Salisbury, and Mr. Tees, that as part of the marketing support services provided to Elite Citicorp would implement a world-class, difference-making, automated telephone processing system ("Phone Terminal") that would be used by Elite to train and support health-care provider personnel. These services to be provided by Citicorp were at all times a relevant part of the strategic resources and marketing support services to be provided to Elite by Citicorp. Elite justifiably relied on these promises in its effort to promote and distribute the Citi Health Card. Instead, Citicorp implemented an inadequately tested, unreliable, unstable, and difficult-to-use telephone processing system that failed to perform as promised.

13.     Another element of the marketing support services which Citicorp unfairly and deceptively promised to provide to Elite to enable it to market the Citi Health Card was "highly trained" CCSI (USA) customer service personnel located in Gray, Tennessee. For example, at a

tour of CCSI (USA)'s Gray facility which took place on or about October 23, 2002, Citicorp agents Ms. Sexton and Messrs. Shanders, Boddicker, Olsen and Bariso described in detail to Dr. Dressler, Mr. Tees, and Mr. Salisbury the top-quality services which the Gray facility could and would provide to Elite. Similarly, Citicorp agents Ms. Cavicchioni, Ms. Sexton, Mr. Shanders, Mr. Boddicker, Mr. Olsen and Mr. Bariso represented to Elite's top management at the January 21, 2003 meeting in Chicago that the Gray, Tennessee facility would provide the highest-quality call-processing services available in the industry. Contrary to Citicorp's representations, such support service was inadequately provided. Failures of the Phone Terminal caused many calls to be transferred to customer service representatives of CCSI (USA) who were either unaware of the Citi Health Card program or inadequately trained to provide a reasonable level of service. Such poor service caused dissatisfaction among health-care providers and caused a great many of them to discontinue their participation in the program. Despite the system's failure, Citicorp unfairly neglected or refused to take the steps necessary to correct the problems it had created and falsely represented that the system was working properly.

14.    Additionally, as part of its market support services Citicorp provided Elite with a brochure for distribution to patients/consumers by health-care providers but failed to include on the brochure the toll-free telephone number for credit applications even though telephone applications made directly by consumers was a planned method for sales. The failure to include the telephone number rendered the brochure virtually useless to potential telephone applicants.

15.    Another marketing support service that Citicorp falsely promised and represented that it would provide to Elite to enable it to promote patient financing services was an electronic point-of-sale terminal designed to allow health-care providers to efficiently process sales. Although Citicorp orally represented and agreed in negotiations before execution of the

8

Agreement that it would provide this marketing support service by August 1, 2004, Citicorp failed to do so. At a September 26, 2003 meeting with Dr. Dressler, Mr. Boddicker reiterated Citicorp's commitment to provide point-of-sale terminals by August 1, 2004. In fact, Citicorp withheld and never provided Elite with this important marketing support service prior to its wrongful termination of Elite.

16.    In addition, after Elite entered into the Agreement with CPSI and as part of the marketing support services Citicorp was to render to Elite, Citicorp falsely promised to provide Elite with marketing support materials such as processing manuals for Citicorp's Phone Terminal. For example, such promises were made to Elite's top management by Citicorp agents Ms. Sexton, Mr. Shanders, Mr. Boddicker, Mr. Olsen and Mr. Bariso at the January 21, 2003 meeting in Chicago. Elite was to use these manuals to train health-care providers in using Citicorp's Phone Terminal. However, Citicorp unfairly failed to provide manuals that addressed certain critical procedures.

17.    Elite asserts that Citicorp was capable of providing Elite with the high-quality services and products which Citicorp represented it would provide to Elite and which were essential to the success of the program. Citicorp representatives Ms. Cavicchioni and Messrs. Shanders, Boddicker, Olsen and Bariso made numerous representations to Elite concerning Citicorp's vast capabilities, for example at the Chicago conference which occurred on or about January 21, 2003. Yet Citicorp unfairly and deceptively failed to provide the promised products and services.

18.    Elite repeatedly requested Citicorp to provide it with the services and products which conformed to Citicorp's representations, promises, and obligations. Citicorp acknowledged many deficiencies in its performance; yet instead of timely correcting identified

deficiencies, Citicorp redirected Elite to focus its efforts on "new initiatives" and falsely and unfairly promised it would provide other services which would carry out the purposes of the Agreement. Such representations were made by Mr. Vallorano to Dr. Dressler and Mr. Salisbury in conversations which occurred on or about August 11, 2004 and again in late January 2005. Elite relied on these representations which fraudulently concealed Citicorp's unfair and deceptive course of conduct. Notwithstanding its representations, Citicorp never adequately corrected the deficiencies in its performance or provided other promised services.

19.    By thus unfairly and deceptively failing to provide the services it said it would provide and frustrating the purpose of the Agreement with CPSI while Elite continued to perform, Citicorp not only caused catastrophic financial injury to Elite but also caused Elite's reputation within the health-care-services patient financing industry to be irreparably damaged.

20.    Citicorp maintained its unfair and deceptive conduct long enough to enable Citicorp to take unfair advantage of Elite's good faith performance. On or about May 10, 2005, and contrary to its representations, CPSI abruptly and unfairly informed Elite that it was terminating its relationship with Elite. The mechanism by which CPSI terminated its relationship with Elite was the termination for "any reason" provision referred to above which purportedly allowed CPSI to terminate the Agreement "at any time and for any reason not otherwise included" in the Agreement. CCSI (USA) participated in causing this termination. However, as set forth above, in circumstances extraneous to the Agreement, Citicorp falsely represented to and agreed with Elite both before and after execution of the Agreement that this open-ended termination provision was to be used only in the event that Citicorp chose to discontinue its participation in the patient financing industry. As part of its unfair and deceptive conduct, Citicorp has invoked this termination provision even though it has not discontinued its

participation in the industry. Since terminating its relationship with Elite, Citicorp has continued to market the Citi Health Card.

21.    It was only upon this termination of the relationship that Elite became aware of Citicorp's deceptive and unfair strategy to take Elite's business without just compensation. Due to Citicorp's concealment of its intent to act in a manner contrary to the representations which Elite had justifiably relied upon to enter into and maintain its relationship with Citicorp, Elite could not and did not discover Citicorp's unlawful acts and practices until it was terminated by Citicorp.

22.    Citicorp unfairly and deceptively used its relationship with Elite to introduce the Citi Health Card into the patient financing industry and to gain unjust benefit of Elite's industry presence and expertise in health-care patient financing sales and support. CPSI and CCSI (USA) were aware that by terminating Elite without justification they would destroy Elite as a business entity and take the business it had taken Elite years to build without compensating Elite. By acting in the unlawful manner in which they did, CPSI and CCSI (USA) did, in fact, destroy Elite as a business entity and misappropriate the business Elite had built without providing just compensation to Elite. Elite has thus suffered special harm of a nature which is not recoverable as contract damages.

## COUNT I
## VIOLATION OF TENNESSEE CONSUMER PROTECTION ACT

23.    Elite repeats the allegations set forth above.

24.    Elite is a Tennessee person and legitimate business enterprise as defined and described in the T.C.P.A. See T.C.A. §§ 47-18-102(2) and 103(9).

25.    CPSI has engaged in unfair and deceptive acts and practices affecting the conduct of trade and commerce in violation of the T.C.P.A., including but not limited to, violations of

T.C.A. §§ 47-18-102 and 47-18-104(b)(27). Furthermore, CPSI has represented to Elite that goods or services have characteristics, uses, or benefits which they did not have in violation of T.C.A. § 47-18-104(b)(5) and has represented that goods or services are of a particular standard, quality, or grade when they were of another in violation of T.C.A. § 47-18-104(b)(7).

26. Elite has suffered ascertainable losses in Tennessee as a proximate result of CPSI's unfair and deceptive acts and practices in and affecting commerce and trade, including, but not limited to, the value of Elite's business. See T.C.A. §§ 47-18-103(9), 47-18-103(11), and 47-18-109(a)(1). Elite is therefore entitled to recover actual damages from CPSI as compensation for those losses as well as treble damages and Elite's reasonable attorneys' fees and costs. See T.C.A. §§ 47-18-109(a)(1), 47-18-109(a)(3)-(4), and 47-18-109(e)(1).

## COUNT II
## INTENTIONAL MISREPRESENTATION

27. Elite repeats the allegations set forth above.

28. CPSI intentionally and knowingly misrepresented material facts to Elite, made promises to Elite with no present intent to perform, and intentionally and knowingly failed to disclose material facts to Elite which CPSI had a duty to disclose. These misrepresentations and nondisclosures were collateral to the Agreement which Elite had with CPSI and were performed with the intent to induce Elite to rely upon them.

29. Without knowledge of the falsity of the representations, Elite justifiably relied on CPSI and on its misrepresentations and false promises.

30. As a result of Elite's justifiable reliance upon CPSI and its misrepresentations and false promises, Elite suffered in Tennessee severe pecuniary and other harm of a special kind which is not recoverable as contract damages—including, but not limited to, the loss and unjust taking of Elite's business.

## COUNT III
## FRAUDULENT INDUCEMENT

31.    Elite repeats the allegations set forth above.

32.    CPSI knowingly, recklessly, or negligently made false representations of material fact which were intended to induce Elite to enter into a contractual relationship with CPSI and into business relationships with CPSI and CCSI (USA).

33.    Under the circumstances, Elite justifiably relied on the misrepresentations made by CPSI.

34.    As a result of Elite's justifiable reliance upon these misrepresentations, Elite was induced to enter into a contractual relationship with CPSI and business relationships with CPSI and CCSI (USA).   Elite consequently gave up other business opportunities and suffered in Tennessee severe pecuniary and other harm of a special kind which is not recoverable as contract damages—including, but not limited to, the loss and unjust taking of Elite's business.   Further, and in the alternative, Elite asserts that the wrongful acts of CPSI, invalidated the Agreement and entitles Elite, at its election, to recession of the Agreement.

## COUNT IV
## CIVIL CONSPIRACY

35.    Elite repeats the allegations set forth above.

36.    CPSI and CCSI (USA) acted in concert with a common design to induce Elite to enter into a contractual relationship with CPSI and business relationships with CPSI and CCSI (USA), to defraud Elite and through unfair or deceptive acts or practices to take away Elite's business without just compensation.   CPSI performed overt acts in furtherance of this conspiracy.  This conspiracy renders CPSI and CCSI (USA) mutually liable to Elite for the unlawful actions of either party.

13

37.    As a result of the conspiracy of CPSI and CCSI (USA), Elite has suffered in Tennessee severe pecuniary and other harm of a special kind which is not recoverable as contract damages—in particular, the loss and unjust taking of Elite's business.

## COUNT V
## UNJUST ENRICHMENT

38.    Elite repeats the allegation set forth above.  Elite has conferred and CPSI has received a benefit at Elite's expense.

39.    CPSI has been unjustly enriched at Elite's expense.

40.    Under the circumstances presented, it is unjust and inequitable for CPSI to retain the benefit conferred upon it by Elite without making just compensation to Elite.

41.    Under Rule 38 of the Federal Rules of Civil Procedure, Elite demands a trial by jury of its claims stated herein and in any amendment to this Second Amended Complaint.

42.    Elite reserves the right to further amend its Complaint to assert additional claims against CPSI and any other person or entity that has unlawfully caused it damage.

WHEREFORE, Elite respectfully requests that this Court enter a judgment against CPSI awarding Elite: (1) compensatory damages in an amount to be proved at trial; (2) treble damages pursuant to T.C.A. § 47-18-109; (3) Elite's reasonable attorneys' fees and costs pursuant to T.C.A. § 47-18-109; (4) prejudgment and post-judgment interest at Elite's election, recession of the Agreement; (5) punitive damages; and (6) such other and further relief as the Court deems necessary and proper.

Respectfully submitted,

WROBEL & SCHATZ LLP

By: _____

Philip R. Schatz (PS 6158)
1040 Avenue of the Americas, 11th Floor
New York, NY 10018-3703
Tel: (212) 421-8100
*Local counsel for Elite Physician
Services, LLC*

MILLER & MARTIN PLLC

Donald J. Aho (BPR # 011975)
Robert F. Parsley (BPR#023819)
Suite 1000 Volunteer Building
832 Georgia Avenue
Chattanooga, Tennessee  37402
(423) 756-6600 (tel)
(423) 785-8480 (fax)

*Counsel for Elite Physician Services, LLC*