UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | | |
|---|---|---|
| ELITE PHYSICIAN SERVICES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:06-CV-86 |
| | ) | |
| v. | ) | *Mattice/Carter* |
| | ) | |
| CITICORP CREDIT SERVICES, INC. (USA), | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS OR TRANSFER**

# Defendant's Exhibit H

## (Redline between CPSI Proposed Second Amended Complaint and CCSI Complaint)

Comparison of CPSI 2nd Amended Complaint to CCSI Complaint

~~Philip R. Schatz (PS 6158)~~
~~Wrobel & Schatz LLP~~
~~1040 Avenue of the Americas, Suite 1101~~
~~New York, NY 10018-3703~~

UNITED STATES DISTRICT COURT
~~FOR THE SOUTHERN DISTRICT OF NEW YORK~~

~~ELITE PHYSICIAN SERVICES, LLC,~~   ~~No. 1:06-cv-02447-BSJ~~

~~Plaintiff,~~   ~~[Proposed]~~
EASTERN DISTRICT OF TENNESSEE
At Chattanooga

~~against~~   ~~SECOND AMENDED~~

ELITE PHYSICIAN SERVICES, LLC,

Plaintiff,   No. 1:06-CV-86

vs.   Jury Trial Demanded

CITICORP CREDIT SERVICES, INC.
(USA)

Defendant,

**COMPLAINT**

~~CITICORP PAYMENT SERVICES, INC.,~~
~~Defendant.~~

The Plaintiff, Elite Physician Services, LLC ("Elite"), states as follows as its ~~Second Amended~~ Complaint against the Defendant Citicorp ~~Payment~~Credit Services, Inc. ("~~CPSI~~USA) ("CCSI (USA)"):

**PARTIES**

1. Elite is a Tennessee limited liability corporation with its principal place of business in Chattanooga, Tennessee. Elite is also a "legitimate business enterprise" and a

1

"person" as defined and described in the Tennessee Consumer Protection Act ("T.C.P.A."), Tenn. Code Ann. ("T.C.A.") §§ 47-18-102 and ~~47-18-~~103(9).

2. ~~CPSI~~CCSI (USA) is a Delaware corporation with its principal place of business ~~located in Deerfield, Illinois and no significant connection with this judicial district~~in Jacksonville, Florida. As further described below, ~~Citicorp~~CCSI (USA) is a corporation engaged in the sale and distribution of products and services of the nature provided to Elite in connection with its commercial relationship with Elite. CCSI (USA) maintains a credit-services call center in Gray, Tennessee, which provided services to Elite. The following persons relevant to this action are employees of ~~Citicorp Credit Services, Inc. (USA) ("CCSI (USA)")~~CCSI (USA) who also acted at times as agents of ~~CPSI~~Citicorp Payment Services, Inc. ("CPSI"): Craig Vallorano, Darin Boddicker, Patrick Shanders, Debra Sexton, and Lori Cavicchioni. Ken Olsen and Alex Bariso also acted as agents on behalf of both CCSI (USA) and ~~CPSI~~CPSI although, on information and belief, they were not directly employed by either of these entities.

## JURISDICTION, VENUE AND GOVERNING LAW

3. This Court has subject matter jurisdiction over this action under 28 U.S.C. ~~§§ 1332. This action was transferred to this Court from the United States District Court for the Eastern District of Tennessee pursuant to 28 U.S.C. § 1404(a).~~§1332. Venue is properly laid in this judicial district under 28 U.S.C. § 1391 and T.C.A. §§ 47-18-109(a)(2) and 47-18-113. A substantial majority of the relevant conduct at issue and all of the injuries to Elite occurred in Tennessee. Tennessee has the greatest connection to and interest in ~~resolving~~ the particular issues

---

[1] ~~CCSI (USA) is a Delaware corporation with its principal place of business in Jacksonville, Florida, and is engaged in the sale and distribution of products and services which were provided to Elite in connection with its contractual relationship with CPSI. CCSI (USA) maintains a credit-services call center in Gray, Tennessee, which provided services to Elite. Elite filed a Complaint against CCSI (USA) in a separate action in the Eastern District of Tennessee, No. 1:06 CV 86. Elite reserves the right to seek transfer of this action to the Eastern District of Tennessee and to seek to consolidate this action with the pending Tennessee action.~~

and ~~regulating the~~ conduct involved in this action. As such, Elite's claims are governed by Tennessee law.

## FACTUAL BACKGROUND

4. This case involves a course of deceptive and unfair commercial conduct by ~~CPSI and~~ CCSI (USA) and CPSI (collectively "Citicorp") in connection with the offer to provide and the provision of services to Elite in the context of the patient financing services program discussed below. ~~Before and after contracting with Elite, CPSI~~ CCSI (USA) engaged in a series of unfair and deceptive acts affecting trade and commerce with the undisclosed purpose and effect of taking Elite's business enterprise for its own benefit without just compensation. This deceptive and unfair commercial conduct includes, but is not limited to, false representations to Elite which were made by both CPSI and CCSI (USA) representatives to induce Elite to enter into and to maintain a business relationship with ~~CPSI and CCSI (USA)~~Citicorp. The deceptive and unfair acts affecting trade or commerce of which Elite complains involved the sale and distribution of services, products, and other property to Elite in violation of the T.C.P.A., T.C.A. §§ 47-18-101, et seq. The acts complained of occurred and/or caused injury to Elite in Tennessee.

5. Prior to and during 2003, Elite built a successful business in the health-care-services patient financing industry. As a health-care-services patient financing company, Elite offered credit services to health-care providers which enabled consumers to finance certain health-care procedures that were not covered by insurance. For example, Elite's programs allowed consumers to finance certain hearing-related and cosmetic surgery procedures as well as other health-care procedures. In developing this business, Elite forged numerous valuable relationships with health-care organizations and health-care providers who benefited from the

financing program and promoted it to patients. By 2003, Elite had built its enterprise to the point where it had over $20 million in annual sales.

  6.  In 2002, Elite was approached by ~~CCSI (USA) and CPSI (collectively "~~agents of Citicorp~~")~~ with a business opportunity relating to the sale and distribution of patient financing services and products. ~~Representatives of~~ Citicorp asked Elite to enter into a long-term, exclusive relationship in which Elite would continue to sell and distribute products and services in the patient financing industry in conjunction with ~~these entities~~Citicorp. For example, CCSI (USA) and CPSI agents Ken Olsen (~~"~~Mr. ~~Olsen"~~Olserf") and Alex Bariso ("Mr. Bariso") made contact with Elite ~~in Tennessee~~ for this purpose in early 2002. Specifically, these representatives proposed that Citicorp and Elite cooperate to develop and to promote the sale and distribution of a health-care patient financing program and product eventually known as the "Citi Health Card." As part of its regular business activities, Citicorp enters into agreements and commercial relationships with companies like Elite for the purpose of engaging them to promote Citicorp's products and services. As proposed by Citicorp, the Citi Health Card program would combine the globally recognized "Citi" name and Citicorp's mammoth financing resources with Elite's experience in new account acquisition and support in health-care financing to allow them to dominate the health-care patient financing industry.

  7.  In discussions with Elite's representatives, CCSI (USA)'s and CPSI's ~~and CCSI (USA)'s~~ agents repeatedly represented ~~to Elite in Tennessee~~ that, to execute the proposed plan, Citicorp was capable of providing and would provide to Elite the highest quality advertising, marketing, and transaction-processing support and services available in the industry. For example, such representations were made in ~~writt:en~~written materials dated October 22, 2002 which were prepared by CCSI (USA) representatives Patrick Shanders ("Mr. Shanders") and

4

Comparison of CPSI 2nd Amended Complaint to CCSI Complaint

Darin Boddicker ("Mr. Boddicker") and provided to Dr. Keith ~~Dressler~~Dressier ("Dr. Dressler~~"~~") and other Elite representatives on or about October 23, 2003 in Gray, Tennessee. In a conference that took place in Chicago, Illinois on or about January 21, 2003, CCSI (USA) agents Ms. Cavicchioni, Debra Sexton ("Ms. Sexton"), and Messrs. Shanders, Boddicker, Olsen and Bariso described in detail to Elite's top management Dr. Dressler, Mike Salisbury ("Mr. Salisbury"), and Stephen Tees ("Mr. Tees"), as well as to Elite representative Gina Glass ("Ms. Glass"), how Citicorp's vast resources and newly developed telephone information processing capabilities would enable Citicorp and Elite to overwhelm the competition in the developing health-care patient financing industry. Citicorp represented that through combining Elite's business model and contacts with Citicorp's "world class" capabilities, the companies would increase sales to over $1.4 billion within five years. Further such representations were made to Dr. Dressier by Messrs. Olsen, Boddicker and Shanders in meetings which took place in Chattanooga~~, Tennessee~~ on or about July 25-~~26,2~~ 6, 2002 and again by Mr. Boddicker in meetings with Elite representatives which occurred in Chattanooga on or about February 10-12, 2003. Elite fully and justifiably relied on these representations. For example, based on its reliance on Citicorp's representations, Elite bypassed other business opportunities which would have allowed Elite to expand its business through relationships with other parties. The health-care patient financing services market was a nascent and growing market when Elite and Citicorp began their relationship, and the market has continued to grow dramatically.

8.   As part of their discussions, representatives of Citicorp and Elite engaged in negotiations that contemplated a services agreement under which they were to provide services to one another in order to promote the Citi Health Card program. As further part of these discussions, ~~Mr~~Mr. Boddicker and Mr. Olsen represented that Citicorp wanted to be free to exit

the patient-financing business if and when it chose to do so. Mr. Boddicker and Mr. Olsen made numerous such representations in conversations with Dr. ~~Dressler~~Dressier and/or Mr. Salisbury which occurred from November 2002 to April 2003. For example and in particular, such representations were made at meetings between Mr. Boddicker, Mr. Olsen, Mr. Salisbury and Dr. ~~Dressler~~Dressier which occurred in Chattanooga~~, Tennessee~~ on or about November 17, 2002 and in Chicago on or about January 20, 2003. ~~As~~ M negotiations proceeded, Citicorp submitted a draft agreement it ~~had~~bad prepared which contained a provision purporting to allow Citicorp to terminate the agreement "at any time and for any reason not otherwise included" in the agreement. When the parties discussed this provision, Elite was assured that Citicorp would terminate Elite under the "any reason" provision only if Citicorp decided to leave the patient-financing industry, in which event Elite would retain control over the health-care provider accounts which Elite had generated prior to contracting with CPSI and would be free to compete for accounts generated after ~~contracting. For~~contractiflg4FOr example, Mr. Boddicker made such representations to Mr. Salisbury in several conversations which occurred in March and April 2003. Mr. Olsen confirmed that this was Citicorp's position in a telephone conversation with Dr. ~~Dressler~~Dressier which occurred on or about October 31, 2005. Unbeknownst to Elite's principals, Citicorp's representations concerning the circumstances under which the "any reason" provision would be used were misleading, false, and unfair. Elite relied upon such representations and was induced into entering the relationship with Citicorp by ~~many of~~ these and other false representations ~~to Elite which~~ Citicorp made concerning its provision of advertising, marketing and transaction-processing support services to Elite.

    9.  Relying on representations by Citicorp, Elite entered with CPSI into a Master Services Agreement (the "Agreement") dated April 9, 2003, under which Elite and CPSI agreed

to develop and promote the Citi ~~I Health~~Health Card program. During negotiation of the Agreement, Elite representatives understood that they were dealing with CCSI (USA) and related affiliates doing business as Citi Commerce Solutions, and it was not until about April 2003 that Elite became specifically aware of CPSI, with whom Elite contracted to promote the Citi Health Card program. The program was intended to enable a large volume of consumers to easily and quickly finance various health-care procedures not typically covered by insurance, including but not limited to dental, orthodontic, vision, and hearing-related procedures. Under the Agreement, both Elite and CPSI agreed to assume certain rights and obligations and to provide certain services to one another. In particular, CPSI agreed to provide Elite with the services and products necessary to implement the Citi Health Card program, including, but not limited to, marketing support and access to Citicorp's vast strategic resources. The Agreement thus contemplated that certain services would be provided to Elite by CCSI (USA).

10. Elite at all times performed its obligations under the Agreement in good faith.

11. Despite Elite's performance of its obligations under the Agreement, agents of Citicorp engaged in an unfair and deceptive course of conduct which frustrated the purpose of the Agreement by failing to provide the services Citicorp agreed to provide to Elite. In so doing, Citicorp thwarted Elite's performance while taking the opportunity to learn the industry and to use Elite's business model to introduce the Citi Health Card. ~~CPSI and~~ CCSI (USA) and CPSI conspired together to take away Elite's business without just compensation.

12. After entering into the Agreement, Citicorp continued to falsely represent and promise to Elite that it would provide Elite with particular high-quality advertising, marketing, and transaction-processing products and services~~,~~. Promises to correct deficiencies in Citicorp's provision of services were made to Dr. Dressier, Mr. Tees, and other Elite representatives by

CCSI (USA) employees Craig Vallorano ("Mr. Vallorano"), Mr. Shanders, Mr. Boddicker, Ms. Sexton and ~~other Citicorp agents~~others at a meeting which took place in Chattanooga, ~~Tennessee~~ in late August 2003 and again by CCSI (USA) employee Lori Cavicchioni ("Ms. ~~Cavicchioni~~Cavicchioni") during a February 2, 2004 telephone conference. Despite these promises and representations, Citicorp deceptively and unfairly provided products and services to Elite which were of a substantially inferior quality or failed to provide any products or services at all. In particular, at all times relevant, Citicorp falsely promised to Elite's top management, Dr. Dressier, Mr. Salisbury, and Mr. Tees, that as part of the marketing support services provided to Elite Citicorp would implement a world-class, difference-making, automated telephone processing system ("Phone Terminal") that would be used by Elite to train and support health-care provider personnel. These services to be provided by Citicorp were at all times a relevant part of the strategic resources and marketing support services to be provided to Elite by Citicorp. Elite justifiably relied on these promises in its effort to promote and distribute the Citi Health Card. Instead, Citicorp implemented an inadequately tested, unreliable, unstable, and difficult-to-use telephone processing system that failed to perform as promised.

13. Another element of the marketing support services which Citicorp unfairly and deceptively promised to provide to Elite to enable it to market the Citi Health Card was "highly trained" CCSI (USA) customer service personnel located in Gray, Tennessee. For example, at a tour of CCSI (USA)'s Gray facility which took place on or about October 23, 2002, Citicorp agents Ms. Sexton and Messrs. Shanders, Boddicker, Olsen and Bariso described in detail to Dr. ~~Dressler~~Dressier, Mr. Tees, and Mr. Salisbury the top-quality services which the Gray facility could and would provide to Elite. Similarly, ~~Citicorp agents~~ Ms. Cavicchioni, Ms. Sexton, Mr. Shanders, Mr. Boddicker, Mr. Olsen and Mr. Bariso represented to Elite's top management at the

Comparison of CPSI 2nd Amended Complaint to CCSI Complaint

January ~~21, 2003~~ 21, 2003 meeting in Chicago that the Gray~~, Tennessee~~ facility would provide the highest-quality call-processing services available in the industry. Contrary to Citicorp's representations, such support service was inadequately provided. Failures of the Phone Terminal caused many calls to be transferred to customer service representatives of CCSI (USA) who were either unaware of the Citi Health Card program or inadequately trained to provide a reasonable level of service. Such poor service caused dissatisfaction among health-care providers and caused a great many of them to discontinue their participation in the program. Despite the system's failure, Citicorp unfairly neglected or refused to take the steps necessary to correct the problems it had created and falsely represented that the system was working properly.

14.     Additionally, as part of its market support services Citicorp provided Elite with a brochure for distribution to patients/consumers by health-care providers but failed to include on the brochure the toll-free telephone number for credit applications even though telephone applications made directly by consumers was a planned method for sales. The failure to include the telephone number rendered the brochure virtually useless to potential telephone applicants.

15.     Another marketing support service that Citicorp falsely promised and represented that it would provide to Elite to enable it to promote patient financing services was an electronic point-of-sale terminal designed to allow health-care providers to efficiently process sales. Although Citicorp orally represented and agreed in negotiations before execution of the Agreement that it would provide this marketing support service by August 1, 2004, Citicorp failed to do so. At a September 26, 2003 meeting with Dr. Dressler, Mr. Boddicker reiterated Citicorp's commitment to provide point-of-sale terminals by August 1, 2004. In fact, Citicorp withheld and never provided Elite with this important marketing support service prior to its wrongful termination of Elite.

9

Comparison of CPSI 2nd Amended Complaint to CCSI Complaint

16. In addition, after Elite entered into the Agreement with CPSI and as part of the marketing support services Citicorp was to render to Elite, Citicorp falsely promised to provide Elite with marketing support materials such as processing manuals for Citicorp's Phone Terminal. For example, such promises were made to Elite's top management by Citicorp agents Ms. Sexton, Mr. Shanders, Mr. Boddicker, Mr. Olsen and Mr. Bariso at the January 21, 2003 meeting in Chicago. Elite was to use these manuals to train health-care providers in using Citicorp's Phone Terminal. However, Citicorp unfairly failed to provide manuals that addressed certain critical procedures.

17. Elite asserts that Citicorp was capable of providing Elite with the high-quality services and products which Citicorp represented it would provide to Elite and which were essential to the success of the program. Citicorp representatives Ms. Cavicchioni and Messrs. Shanders, Boddicker, Olsen and Bariso made numerous representations to Elite concerning Citicorp's vast capabilities, for example at the Chicago conference which occurred on or about January 21, 2003. Yet Citicorp unfairly and deceptively failed to provide the promised products and services.

18. Elite repeatedly requested Citicorp to provide it with the services and products which conformed to Citicorp's representations, promises, and obligations. Citicorp acknowledged many deficiencies in its performance; yet instead of timely correcting identified deficiencies, Citicorp redirected Elite to focus its efforts on "new initiatives" and falsely and unfairly promised it would provide other services which would carry out the purposes of the Agreement. Such representations were made by CCSI (LISA) employee Mr. Vallorano to Dr. ~~Dressler~~Dressler and Mr. Salisbury in conversations which occurred on or about August 11, 2004 and again in late January 2005. Elite relied on these representations which fraudulently

10

concealed Citicorp's unfair and deceptive course of conduct. Notwithstanding its representations, Citicorp never adequately corrected the deficiencies in its performance or provided other promised services.

19.     By thus unfairly and deceptively failing to provide the services it said it would provide and frustrating the purpose of the Agreement with CPSI while Elite continued to perform, Citicorp not only caused catastrophic financial injury to Elite but also caused Elite's reputation within the health-care-services patient financing industry to be irreparably damaged.

20.     Citicorp maintained its unfair and deceptive conduct long enough to enable Citicorp to take unfair advantage of Elite's good faith performance. On or about May 10, 2005, and contrary to its representations, CPSI abruptly and unfairly informed Elite that it was terminating its relationship with Elite. The mechanism by which CPSI terminated its relationship with Elite was the termination for "any reason" provision referred to above which purportedly allowed CPSI to terminate the Agreement "at any time and for any reason not otherwise included" in the Agreement. CCSI (USA) participated in causing this termination. However, as set forth above, in circumstances extraneous to the Agreement, Citicorp falsely represented to and agreed with Elite both before and after execution of the Agreement that this open-ended termination provision was to be used only in the event that Citicorp chose to discontinue its participation in the patient financing industry. As part of its unfair and deceptive conduct, Citicorp has invoked this termination provision even though it has not discontinued its participation in the industry. Since terminating its relationship with Elite, Citicorp has continued to market the Citi Health Card.

21.     It was only upon this termination of the relationship that Elite became aware of Citicorp's deceptive and unfair strategy to take Elite's business without just compensation. Due

to Citicorp's concealment of ~~its~~the intent to act in a manner contrary to the representations which Elite had justifiably relied upon to enter into and maintain its relationship with Citicorp, Elite could not and did not discover Citicorp's unlawful acts and practices until it was terminated by Citicorp.

22. Citicorp unfairly and deceptively used its relationship with Elite to introduce the Citi Health Card into the patient financing industry and to gain unjust benefit of Elite's industry presence and expertise in health-care patient financing sales and support. ~~CPSI and CCSI (USA) were~~Citicorp was aware that by terminating Elite without justification ~~they~~it would destroy Elite as a business entity and take the business it had taken Elite years to build without compensating Elite. By acting in the unlawful manner in which ~~they~~it did, ~~CPSI and CCSI (USA)~~Citicorp did, in fact, destroy Elite as a business entity and misappropriate the business Elite had built without providing just compensation to Elite. ~~Elite~~ Elite has thus suffered special harm of a nature which is not recoverable as contract damages.

## COUNT I
## VIOLATION OF TENNESSEE CONSUMER PROTECTION ACT

23. Elite repeats the allegations set forth above.

24. Elite is a Tennessee person and legitimate business enterprise as defined and described in the T.C.P.A. See ~~T.C.A.~~ T.C.A. §§ 47-18-102(2) and 103(9).

25. ~~CPSI has~~CCSI (USA as engaged in unfair and deceptive acts and practices affecting the conduct of trade and commerce in violation of the T.C.P.A., including but not limited to, violations of T.C.A. ~~§§~~§ 47-18-102 and 47-~~18~~18-104(b)(27). Furthermore, ~~CPSI~~(USA) has represented to Elite that goods or services have characteristics, uses, or benefits which they did not have in violation of T.C.A. § 47-18-~~1 04(b)X~~104(b)(5) and ~~has~~have

12

represented that goods or services are of a particular standard, quality, or grade when they were of another in violation of T.C.A. § 47-18-104(b)(7).

26. Elite has suffered ascertainable losses ~~in Tennessee~~ as a proximate result of ~~CPSI~~CCSI (USA)'s unfair and deceptive acts and practices in and affecting commerce and trade, including, but not limited to, the value of Elite's business. See T.C.A. §§ 47-18-103(9), ~~47-18-~~103(11), and 47-18-~~1~~109(a)(~~1~~1). Elite is therefore entitled to recover actual damages from ~~CPSI~~CCSI (USA) as compensation for those losses as well as treble damages and Elite's reasonable attorneys' fees and costs. See ~~T.C.A.~~ T.C.A. §§ 47-18-~~109~~109(a)(~~1~~1), 47-18-109(a)(3)-(4), and 47-18-109(e)(1).

## COUNT ~~II~~ 11 — INTENTIONAL MISREPRESENTATION

27. Elite repeats the allegations set forth above.

28. ~~CPSI~~CCSI (USA) intentionally and knowingly misrepresented material facts to Elite, made promises to Elite with no present intent to perform, and intentionally and knowingly failed to disclose material facts to Elite which ~~CPSI~~CCSI (USA) had a duty to disclose. These misrepresentations and nondisclosures were collateral to the Agreement which Elite had with CPSI and were performed with the intent to induce Elite to rely upon them.

29. Without knowledge of the falsity of the representations, Elite justifiably relied on ~~CPSI~~CCSI (USA) and on its misrepresentations and false promises.

30. As a result of Elite's justifiable reliance upon ~~CPSI~~CCSI (USA) and its misrepresentations and false promises, Elite suffered ~~in Tennessee~~ severe pecuniary and other harm of a special kind which is not recoverable as contract damage~~s including, but not limited to, the loss and~~in particular, the destruction of Elite as a business entity and the unjust taking of Elite's business.

13

## COUNT ~~III~~
## ~~III~~ FRAUDULENT INDUCEMENT

31. Elite repeats the allegations set forth above.

32. ~~CPSI~~CCSI (USA) knowingly, or recklessly, ~~or negligently~~ made false representations of material fact which were intended to induce Elite to enter into ~~a contractual~~and maintain a business relationship with CPSI and ~~into business relationships with CPSI and~~ CCSI (USA).

~~33~~33. Under the circumstances, Elite justifiably relied on the misrepresentations made by ~~CPSI~~CCSI (USA).

34. As a result of Elite's justifiable reliance upon these misrepresentations, Elite was induced to enter into a ~~contractual~~business relationship with CPSI and ~~business relationships with CPSI and~~ CCSI (USA). Elite consequently gave up other business opportunities and suffered ~~in Tennessee~~ severe pecuniary and other harm of a special kind which is not recoverable as contract damages—~~including, but not limited to~~in particular, the loss and unjust taking of Elite's business. ~~Further, and in the alternative, Elite asserts that the wrongful acts of CPST, invalidated the Agreement and entitles Elite, at its election, to recession of the Agreement.~~

## COUNT IV
## CIVIL CONSPIRACY

35. Elite repeats the allegations set forth above.

36. ~~CPSI and~~ CCSI (USA) and CPSI acted in concert in an illegal manner and with a common design to ~~induce Elite to enter into a contractual relationship with CPSI and business relationships with CPSI and CCSI (USA), to defraud Elite and through unfair or deceptive acts or practices to take away Elite's business without just compensation. CPSI~~defraud Elite and to violate the T.C.P.A. CCSI (USA) performed overt acts in furtherance of ~~this~~the conspiracy. This

14

conspiracy thus renders CPSI and CCSI (USA) mutually liable to Elite for the unlawful actions of either party.

37.  As a result of the conspiracy of CPSI and CCSI (USA), Elite has suffered ~~in Tennessee~~ severe pecuniary and ~~other~~other harm of a special kind which is not recoverable as contract damages—in particular, the destruction of Elite as a business entity and the loss ~~and unjust taking~~ of Elite's business.

### ~~COUNT V~~
### ~~UNJUST ENRICHMENT~~

38.  ~~Elite repeats the allegation set forth above. Elite has conferred and CPSI has received a benefit at Elite's expense.~~

~~39.   CPSI has been unjustly enriched at Elite's expense.~~

~~40.   Under the circumstances presented, it is unjust and inequitable for CPSI to retain the benefit conferred upon it by Elite without making just compensation to Elite.41.~~   Under Rule 38 of the Federal Rules of Civil Procedure, Elite demands a trial by jury of its claims stated herein and in any amendment to thi~~s Second Amended~~ Complaint.

~~42.~~ 39. Elite reserves the right to ~~further~~ amend its Complaint to assert additional claims against ~~CPSI~~CCSI (USA) and any other person or entity that has unlawfully caused it damage.

WHEREFORE, Elite respectfully requests that this Court enter a judgment against ~~CPSI~~CCSI (USA) awarding Elite: (1) compensatory damages in an amount to be proved at trial; (2) treble damages pursuant to T.C.A. § 47-18-109; (3) Elite's reasonable attorneys' fees and costs pursuant to T.C.A. § 47-18-109; (4) prejudgment and post-judgment interest ~~at Elite's election, recession of the Agreement~~; (5) punitive damages; and (6) such other and further relief as the Court deems necessary and proper.

Comparison of CPSI 2nd Amended Complaint to CCSI Complaint

Respectfully submitted,

~~WROBEL & SGFJATZ LLP~~

~~By:~~
~~Philip R. Schatz (PS 6158)~~
~~1040 Avenue of the Americas, 11th Floor~~
~~New York, NY 10018-3703~~
~~Tel: (212) 421-8100~~
~~Local counsel for Elite Physician Services, LLC~~

~~MILLER & MARTIN PLLC~~

By: _____
Donald J. Aho (BPR ~~# 011975~~ No./)1 1975)
Robert F. Parsley (BPR ~~#023819~~ -o. 023819)
~~Suite~~ 1000 Volunteer Building
832 Georgia Avenue
Chattanooga, Tennessee 37402
(423) 756-6600 ~~(tel)~~ — Telephone
(423) 785-8480 ~~(fax)~~ — Facsimile

*Counsel for Elite Physician Services, LLC*

16

Comparison of CPS1 2nd Amended Complaint to CCSI Complaint

15
17

Comparison of CPSI 2nd Amended Complaint to CCSI Complaint

Document comparison done by DeltaView on Wednesday, September 13, 2006 4:40:56 PM

| Input: | |
|---|---|
| Document 1 | PowerDocs://CHATDOCS/357426/1 |
| Document 2 | PowerDocs://CHATDOCS/357425/1 |
| Rendering set | BDBCB Standard |

| Legend: |
|---|
| Insertion |
| Deletion |
| Moved from |
| Moved to |
| Style change |
| Format change |
| Moved deletion |
| Inserted cell |
| Deleted cell |
| Moved cell |
| Split/Merged cell |
| Padding cell |

| Statistics: | Count |
|---|---:|
| Insertions | 111 |
| Deletions | 142 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 253 |