UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| ELITE PHYSICIAN SERVICES, LLC, | ) |
| Plaintiff, | ) No. 1:06-CV-86 |
| v. | ) *Mattice/Carter* |
| CITICORP CREDIT SERVICES, INC. (USA), | ) |
| Defendant. | ) |

**DEFENDANT'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS OR TRANSFER**

# Defendant's Exhibit J

(Redline between CPSI First Amended Complaint and CPSI Proposed Second Amended Complaint)

Comparison of CPSI 1st Amended Complaint to CPSI 2nd Amended Complaint

Philip R. Schatz (PS 6158)
Wrobel & Schatz LLP
1040 Avenue of the Americas, Suite 1101
New York, NY 10018-3703

UNITED STATES DISTRICT COURT
~~EASTERN~~ FOR THE SOUTHERN DISTRICT OF ~~TENNESSEE~~ NEW YORK ~~at CHATTANOOGA~~

------------------------------------------------------------x

ELITE PHYSICIAN SERVICES, LLC,    ) No. 1:06-cv-02447-BSJ
    )
    Plaintiff,    ) [Proposed]
    ) ~~No. 1:05-CV-344~~
~~vs.~~    )
    )
    ) ~~Chief Judge Cohen~~
    )
    -against-    SECOND AMENDED
    COMPLAINT

CITICORP PAYMENT SERVICES, INC., ) ~~Magistrate Judge Carter~~
    )
    Defendant.    )

~~FIRST AMENDED COMPLAINT~~

------------------------------------------------------------x

The Plaintiff, Elite Physician Services, LLC ("Elite"), states as follows as its ~~first amended complaint~~ Second Amended Complaint against the Defendant Citicorp Payment Services, Inc. ("~~Citicorp~~ CPSI"):

**PARTIES**

1.    Elite is a Tennessee limited liability corporation with its principal place of business in Chattanooga, Tennessee. Elite is also a "legitimate business enterprise" and a "person" as defined and described in the Tennessee Consumer Protection Act ("T.C.P.A."), Tenn. Code Ann. ("T.C.A.") §§47-18-102 and 47-18-103(9).

Comparison of CPSI 1st Amended Complaint to CPSI 2nd Amended Complaint

2. ~~Citicorp~~CPSI is a Delaware corporation with its principal place of business located in Deerfield, Illinois <u>and no significant connection with this judicial district</u>. As further described below, Citicorp is a corporation engaged in the sale and distribution of products and services of the nature provided to Elite in connection with its commercial relationship with Elite. <u>The following persons relevant to this action are employees of Citicorp Credit Services, Inc. (USA) ("CCSI (USA)")[1] who also acted as agents of CPSI: Craig Vallorano, Darin Boddicker, Patrick Shanders, Debra Sexton, and Lori Cavicchioni. Ken Olsen and Alex Bariso also acted as agents on behalf of both CCSI (USA) and CPSI although, on information and belief, they were not directly employed by either of these entities.</u>

## JURISDICTION ~~AND~~, VENUE <u>AND GOVERNING LAW</u>

3. This Court has subject matter jurisdiction over this action under 28 U.S.C. ~~§ 1332. Venue is properly laid in this judicial district under 28 U.S.C. § 1391 and T.C.A. §§ 47-18-109(a)(2) and 113.~~<u>§§ 1332. This action was transferred to this Court from the United States District Court for the Eastern District of Tennessee pursuant to 28 U.S.C. § 1404(a). A substantial majority of the relevant conduct at issue and all of the injuries to Elite occurred in Tennessee. Tennessee has the greatest interest in resolving the particular issues and regulating the conduct involved in this action. As such, Elite's claims are governed by Tennessee law.</u>

## FACTUAL BACKGROUND

4. This case involves a course of deceptive and unfair commercial conduct by ~~Citicorp~~<u>CPSI and CCSI (USA)</u> in connection with ~~its~~<u>the</u> offer to provide and ~~its~~<u>the</u> provision of

---

[1] <u>CCSI (USA) is a Delaware corporation with its principal place of business in Jacksonville, Florida, and is engaged in the sale and distribution of products and services which were provided to Elite in connection with its contractual relationship with CPSI. CCSI (USA) maintains a credit-services call center in Gray, Tennessee, which provided services to Elite. Elite filed a Complaint against CCSI (USA) in a separate action in the Eastern District of Tennessee, No. 1:06-CV-86. Elite reserves the right to seek transfer of this action to the Eastern District of Tennessee and to seek to consolidate this action with the pending Tennessee action.</u>

Comparison of CPSI 1st Amended Complaint to CPSI 2nd Amended Complaint

services to Elite in the context of the patient financing services program discussed below. ~~&~~Before and after contracting with Elite, ~~Citicorp~~CPSI engaged in a series of unfair and deceptive acts affecting trade and commerce with the undisclosed purpose and effect of taking Elite's business enterprise for its own benefit without just compensation. This deceptive and unfair commercial conduct includes, but is not limited to, false representations to Elite which were made by ~~Citicorp representatives~~CPSI to induce Elite to enter into and to maintain a business relationship with ~~Citicorp. The~~CPSI and CCSI (USA). The deceptive and unfair acts affecting trade or commerce of which Elite complains involved the sale and distribution of services, products, and other property to Elite in violation of the T.C.P.A., T.C.A. ~~§~~§§ 47-18-101, et seq. ~~Many of the~~ The acts complained of occurred ~~in Tennessee. Citicorp's wrongful commercial conduct~~and/or caused injury to Elite in Tennessee.

5. Prior to and during 2003, Elite built a successful business in the health-care-services patient financing industry. As a health-care-services patient financing company, Elite offered credit services to health-care providers which enabled consumers to finance certain health-care procedures that were not covered by insurance. For example, Elite's programs allowed consumers to finance certain hearing-related and cosmetic surgery procedures as well as other health-care procedures. In developing this business, Elite forged numerous valuable relationships with health-care organizations and health-care providers who benefited from the financing program and promoted it to patients. By 2003, Elite had built its enterprise to the point where it had over $20 million in annual sales.

6. In 2002, Elite was approached by CCSI (USA) and CPSI (collectively "Citicorp") with a business opportunity relating to the sale and distribution of patient financing services and products. Representatives of Citicorp asked Elite to enter into a long-term, exclusive

Comparison of CPSI 1st Amended Complaint to CPSI 2nd Amended Complaint

relationship in which Elite would continue to sell and distribute products and services in the patient financing industry in conjunction with ~~Citicorp. ecifically, Citicorp~~these entities. For example, Ken Olsen ("Mr. Olsen") and Alex Bariso ("Mr. Bariso") made contact with Elite in Tennessee for this purpose in early 2002. Specifically, these representatives proposed that Citicorp and Elite cooperate to develop and to promote the sale and distribution of a health-care patient financing program and product eventually known as the "Citi Health Card." ~~Xs~~As part of its regular business activities, Citicorp enters into agreements and commercial relationships with companies like Elite for the purpose of engaging them to promote Citicorp's products and services. ~~-~~As proposed by Citicorp, the Citi Health Card program would combine the globally recognized "Citi" name and Citicorp's mammoth financing resources with Elite's experience in new account acquisition and support in health-care financing to allow them to dominate the health-care patient financing industry.

7.  In discussions with Elite's representatives, ~~Citicorp~~CPSI's and CCSI (USA)'s agents repeatedly represented to Elite in Tennessee that, to execute the proposed plan, Citicorp was capable of providing and would provide to Elite the highest quality advertising, marketing, and transaction-processing support and services available in the industry. ~~Citicorp representatives described in detail~~For example, such representations were made in written materials dated October 22, 2002 which were prepared by Patrick Shanders ("Mr. Shanders" and Darin Boddicker (Mr. Boddicker") and provided to Dr. Keith Dressler ("Dr. Dressler") and other Elite representatives on or about October 23, 2003 in Gray, Tennessee. In a conference that took place in Chicago, Illinois on or about January 21, 2003, Ms. Cavicchioni, Debra Sexton ("Ms. Sexton"), and Messrs. Shanders, Boddicker, Olsen and Bariso described in detail to Elite's top management Dr. Dressler, Mike Salisbury ("Mr. Salisbury"), and Stephen Tees ("Mr. Tees"), as

Comparison of CPSI 1st Amended Complaint to CPSI 2nd Amended Complaint

well as to Elite representative Gina Glass ("Ms. Glass"), how Citicorp's vast resources and newly developed telephone information processing capabilities would enable Citicorp and Elite to overwhelm the competition in the developing health-care patient financing industry. Citicorp represented that through combining Elite's business model and contacts with Citicorp's "world class" capabilities, the companies would increase sales to over $1.4 billion within five years. Further such representations were made to Dr. Dressler by Messrs. Olsen, Boddicker and Shanders in meetings which took place in Chattanooga, Tennessee on or about July 25-26, 2002 and again by Mr. Boddicker in meetings with Elite representatives which occurred in Chattanooga on or about February 10-12, 2003. Elite fully and justifiably relied on these representations. For example, based on its reliance on Citicorp's representations, Elite bypassed other business opportunities which would have allowed Elite to expand its business through relationships with other parties. The health-care patient financing services market was a nascent and growing market when Elite and Citicorp began their relationship, and the market has continued to grow dramatically.

8. As part of their discussions, representatives of Citicorp and Elite engaged in negotiations that contemplated a services agreement under which they were to provide services to one another in order to promote the Citi Health Card program. As further part of these discussions, Mr. Boddicker and Mr. Olsen represented that Citicorp wanted to be free to exit the patient-financing business if and when it chose to do so. Mr. Boddicker and Mr. Olsen made numerous such representations in conversations with Dr. Dressler and/or Mr. Salisbury which occurred from November 2002 to April 2003. For example and in particular, such representations were made at meetings between Mr. Boddicker, Mr. Olsen, Mr. Salisbury and Dr. Dressler which occurred in Chattanooga, Tennessee on or about November 17, 2002 and in

Comparison of CPSI 1st Amended Complaint to CPSI 2nd Amended Complaint

Chicago on or about January 20, 2003. As negotiations proceeded, Citicorp submitted a draft agreement it had prepared which contained a provision purporting to allow Citicorp to terminate the agreement "at any time and for any reason not otherwise included" in the agreement. When ~~Elite's representatives, Dr. Keith Dressler and Mr. Mike Salisbury,~~ the parties discussed this provision ~~with Citicorp's representatives, they were~~, Elite was assured that Citicorp would terminate Elite under the "any reason" provision only if Citicorp decided to leave the patient ~~financing industry.~~ financing industry, in which event Elite would retain control over the health-care provider accounts which Elite had generated prior to contracting with CPSI and would be free to compete for accounts generated after contracting. For example, Mr. Boddicker made such representations to Mr. Salisbury in several conversations which occurred in March and April 2003. Mr. Olsen confirmed that this was Citicorp's position in a telephone conversation with Dr. Dressler which occurred on or about October 31, 2005. Unbeknownst to Elite's principals, Citicorp's representations concerning the circumstances under which the "any reason" provision would be used were misleading, false, and unfair. Elite relied upon ~~these~~ such representations and was induced into entering the relationship with Citicorp by many of these and other false representations to Elite which Citicorp made concerning its provision of advertising, marketing and transaction-processing support services to Elite.

        9.      Relying on ~~the foregoing~~ representations by Citicorp, Elite entered with ~~Citicorp~~CPSI into a Master Services Agreement (the "Agreement") dated April 9, 2003, under which Elite and ~~Citicorp~~CPSI agreed to develop and promote the Citi ~~Health~~I-Eealth Card program. The program was intended to enable a large volume of consumers to easily and quickly finance various health-care procedures not typically covered by insurance, including but not limited to dental, orthodontic, vision, and hearing-related procedures. Under the Agreement, both

Comparison of CPSI 1st Amended Complaint to CPSI 2nd Amended Complaint

Elite and ~~Citicorp~~CPSI agreed to assume certain rights and obligations and to provide certain services to one another. In particular, ~~Citicorp~~CPSI agreed to provide Elite with the services and products necessary to implement the Citi Health Card program, including, but not limited to, marketing support and access to Citicorp's vast strategic resources. The Agreement thus contemplated that certain services would be provided to Elite by CCSI (USA).

10.  Elite at all times performed its obligations under the Agreement in good faith.

11.  Despite Elite's performance of its obligations under the Agreement, agents of Citicorp engaged in an unfair and deceptive course of conduct which frustrated the purpose of the Agreement by failing to provide the services Citicorp agreed to provide to Elite. In so doing, Citicorp thwarted Elite's performance while taking the opportunity to learn the industry and to use Elite's business model to introduce the Citi Health Card. CPSI and CCSI (USA) conspired together to take away Elite's business without just compensation.

12.  After entering into the Agreement, Citicorp continued to falsely represent and promise to Elite that it would provide Elite with particular high-quality advertising, marketing, and transaction-processing products and services. Promises to correct deficiencies in Citicorp's provision of services were made to Dr. Dressler, Mr. Tees, and other Elite representatives by Craig Vallorano ("Mr. Vallorano"), Mr. Shanders, Mr. Boddicker, Ms. Sexton and other Citicorp agents at a meeting which took place in Chattanooga, Tennessee in late August 2003 and again by Lori Cavicchioni ("Ms. Cavicchioni") during a February 2, 2004 telephone conference. Despite these promises and representations, Citicorp deceptively and unfairly provided products and services to Elite which were of a substantially inferior quality or failed to provide any products or services at all. In particular, at all times relevant, Citicorp falsely promised to Elite's top management, Dr. ~~Keith Dressler~~Dressier, Mr. ~~Michael~~ Salisbury, and Mr. ~~Stephen~~ Tees, that

Comparison of CPSI 1st Amended Complaint to CPSI 2nd Amended Complaint

as part of the marketing support services provided to Elite Citicorp would implement a world-class, difference-making, automated telephone processing system ("Phone Terminal") that would be used by Elite to train and support ~~healthcare~~health-care provider personnel. These services to be provided by Citicorp were at all times a relevant part of the strategic resources and marketing support services to be provided to Elite by Citicorp. Elite justifiably relied on these promises in its effort to promote and distribute the Citi Health Card. Instead, Citicorp implemented an inadequately tested, unreliable, unstable, and difficult-to-use telephone processing system that failed to perform as promised.

13. Another element of the marketing support services which Citicorp unfairly and deceptively promised to provide to Elite to enable it to market the Citi Health Card was "highly trained" ~~Citicorp~~CCSI (USA) customer service personnel located in Gray, Tennessee. For example, at a tour of CCSI (USA)'s Gray facility which took place on or about October 23, 2002, Citicorp agents Ms. Sexton and Messrs. Shanders, Boddicker, Olsen and Bariso described in detail to Dr. Dressler, Mr. Tees, and Mr. Salisbury the top-quality services which the Gray facility could and would provide to Elite. Similarly, Citicorp agents Ms. Cavicchioni, Ms. Sexton, Mr. Shanders, Mr. Boddicker, Mr. Olsen and Mr. Bariso represented to Elite's top management at the January 21, 2003 meeting in Chicago that the Gray, Tennessee facility would provide the highest-quality call-processing services available in the industry. Contrary to Citicorp's representations, such support service was inadequately provided. Failures of the Phone Terminal caused many calls to be transferred to customer service representatives of ~~Citicorp~~CCSI (USA) who were either unaware of the Citi Health Card program or inadequately trained to provide a reasonable level of service. Such poor service caused dissatisfaction among health-care providers and caused a great many of them to discontinue their participation in the

Comparison of CPSI 1st Amended Complaint to CPSI 2nd Amended Complaint

program. Despite the system's failure, Citicorp unfairly neglected or refused to take the steps necessary to correct the problems it had created and falsely represented that the system was working properly.

14. Additionally, as part of its market support services Citicorp provided Elite with a brochure for distribution to patients/consumers by health-care providers but failed to include on the brochure the toll-free telephone number for credit applications even though telephone applications made directly by consumers was a planned method for sales. The failure to include the telephone number rendered the brochure virtually useless to potential telephone applicants.

15. Another marketing support service that Citicorp falsely promised and represented that it would provide to Elite to enable it to promote patient financing services was an electronic point-of-sale terminal designed to allow health-care providers to efficiently process sales. Although Citicorp orally represented and agreed in negotiations before execution of the Agreement that it would provide this marketing support service by August 1, 2004, Citicorp failed to do so. At a September 26, 2003 meeting with Dr. Dressler, Mr. Boddicker reiterated Citicorp's commitment to provide point-of-sale terminals by August 1, 2004. In fact, Citicorp withheld and never provided Elite with this important marketing support service prior to its wrongful termination of Elite.

16. In addition, after ~~entering~~ Elite entered into the Agreement with CPSI and as part of the marketing support services Citicorp was to render to Elite, Citicorp falsely promised to provide Elite with marketing support materials such as processing manuals for Citicorp's Phone Terminal. For example, such promises were made to Elite's top management by Citicorp agents Ms. Sexton, Mr. Shanders, Mr. Boddicker, Mr. Olsen and Mr. Bariso at the January 21, 2003 meeting in Chicago. Elite was to use these manuals to train health-care providers in using

Comparison of CPSI 1st Amended Complaint to CPSI 2nd Amended Complaint

Citicorp's Phone Terminal. However, Citicorp unfairly failed to provide manuals that addressed certain critical procedures.

17. Elite asserts that Citicorp was capable of providing Elite with the high-quality services and products which Citicorp represented it would provide to Elite and which were essential to the success of the program~~, yet~~. <ins>Citicorp representatives Ms. Cavicchioni and Messrs. Shanders, Boddicker, Olsen and Bariso made numerous representations to Elite concerning Citicorp's vast capabilities, for example at the Chicago conference which occurred on or about January 21, 2003. Yet</ins> Citicorp unfairly and deceptively failed to ~~do so~~<ins>provide the promised products and services</ins>.

18. Elite repeatedly requested Citicorp to provide it with the services and products which conformed to Citicorp's representations, promises, and obligations. Citicorp acknowledged many deficiencies in its performance; yet instead of timely correcting identified deficiencies, Citicorp redirected Elite to focus its efforts on "new initiatives" and falsely and unfairly promised it would provide other services which would carry out the purposes of the Agreement. <ins>Such representations were made by Mr. Vallorano to Dr. Dressier and Mr. Salisbury in conversations which occurred on or about August 11, 2004 and again in late January 2005.</ins> Elite relied on these representations which fraudulently concealed Citicorp's unfair and deceptive course of conduct. Notwithstanding its representations, Citicorp never adequately corrected the deficiencies in its performance or provided other promised services.

19. By thus unfairly and deceptively failing to provide the services it said it would provide and frustrating the purpose of the Agreement <ins>with CPSI</ins> while Elite continued to perform, Citicorp not only caused catastrophic financial injury to Elite but also caused Elite's reputation within the health-care-services patient financing industry to be irreparably damaged.

Comparison of CPSI 1st Amended Complaint to CPSI 2nd Amended Complaint

20.     Citicorp maintained its unfair and deceptive conduct long enough to enable Citicorp to take unfair advantage of Elite's good faith performance. On or about May 10, 2005, and contrary to its representations, ~~Citicorp~~CPSI abruptly and unfairly informed Elite that it was terminating its relationship with Elite. The mechanism by which CPSI terminated its relationship with Elite was the termination for "any reason" provision referred to above which purportedly allowed CPSI to terminate the Agreement "at any time and for any reason not otherwise included" in the Agreement. CCSI (USA) participated in causing this termination. However, as set forth above, in circumstances extraneous to the Agreement, Citicorp falsely represented to and agreed with Elite both before and after execution of the Agreement that this open-ended termination provision was to be used only in the event that Citicorp chose to discontinue its participation in the patient financing industry. As part of its unfair and deceptive conduct, Citicorp has invoked this termination provision even though it has not discontinued its participation in the industry. Since terminating its relationship with Elite, Citicorp has continued to market the Citi Health Card.

21.     It was only upon this termination of the relationship that Elite became aware of Citicorp's deceptive and unfair strategy to take Elite's business without just compensation. Due to Citicorp's concealment of its intent to act in a manner contrary to the representations which Elite had justifiably relied upon to enter into and maintain its relationship with Citicorp, Elite could not and did not discover Citicorp's unlawful acts and practices until it was terminated by Citicorp.

22.     Citicorp unfairly and deceptively used its relationship with Elite to introduce the Citi Health Card into the patient financing industry and to gain unjust benefit of Elite's industry presence and expertise in health-care patient financing sales and support. CPSI and CCSI (USA)

Comparison of CPSI 1st Amended Complaint to CPSI 2nd Amended Complaint

were aware that by terminating Elite without justification they would destroy Elite as a business entity and take the business it had taken Elite years to build without compensating Elite. By acting in the unlawful manner in which they did, CPSI and CCSI (USA) did, in fact, destroy Elite as a business entity and misappropriate the business Elite had built without providing just compensation to Elite. Elite has thus suffered special harm of a nature which is not recoverable as contract damages.

## COUNT I
## VIOLATION OF TENNESSEE CONSUMER PROTECTION ACT

23. Elite repeats the allegations ~~contained in Paragraphs 1 through 22~~ set forth above.

24. Elite is a Tennessee person and legitimate business enterprise as defined and described in the T.C.P.A. See T.C.A. §§ 47-18-102(2) and 103(9).

25. ~~Citicorp~~CPSI has engaged in unfair and deceptive acts and practices affecting the conduct of trade and commerce in violation of the T.C.P.A., including but not limited to, violations of T.C.A. §§ 47-~~1-8~~18-102 and 47-18-104(b)(27). Furthermore, ~~Citicorp~~CPSI has represented to Elite that goods or services have characteristics, uses, or benefits which they did not have in violation of T.C.A. § 47-18-~~1~~1 04(~~(b)(b)~~X5) and has represented that goods or services are of a particular standard, quality, or grade when they were of another in violation of T.C.A. § 47-18-~~104~~104(b)(7).

26. Elite has suffered ascertainable losses in Tennessee as a proximate result of ~~Citicorp~~CPSI's unfair and deceptive acts and practices in and affecting commerce and trade, including, but not limited to, the value of Elite's business. See ~~T.C.A.~~ T.C.A. §§ 47-18-103(9), 47-18-103(11), and 47-18-~~109~~109(a)(1). Elite is therefore entitled to recover actual damages from ~~Citicorp~~CPSI as compensation for those losses as well as treble damages and Elite's reasonable attorneys' fees and costs. See ~~T.C.A. §§ 47-1-8-1-09(a)(1), 47-1-8-1-09~~T.C.A. §§ 47-

~~2~~12

Comparison of CPSI 1st Amended Complaint to CPSI 2nd Amended Complaint

18-1C9(a)(l), 47-18-109(a)(3)-(4), and 47-18-~~1 09~~109(e)(~~1~~]).

## COUNT II
## INTENTIONAL MISREPRESENTATION

27. Elite repeats the allegations set forth above.

28. CPSI intentionally and knowingly misrepresented material facts to Elite, made promises to Elite with no present intent to perform, and intentionally and knowingly failed to disclose material facts to Elite which CPSI had a duty to disclose. These misrepresentations and nondisclosures were collateral to the Agreement which Elite had with CPSI and were performed with the intent to induce Elite to rely upon them.

29. Without knowledge of the falsity of the representations, Elite justifiably relied on CPSI and on its misrepresentations and false promises.

30. As a result of Elite's justifiable reliance upon CPSI and its misrepresentations and false promises, Elite suffered in Tennessee severe pecuniary and other harm of a special kind which is not recoverable as contract damages—including, but not limited to, the loss and unjust taking of Elite's business.

## COUNT III
## FRAUDULENT INDUCEMENT

31. Elite repeats the allegations set forth above.

32. CPSI knowingly, recklessly, or negligently made false representations of material fact which were intended to induce Elite to enter into a contractual relationship with CPSI and into business relationships with CPSI and CCSI (USA).

33. Under the circumstances, Elite justifiably relied on the misrepresentations made by CPSI.

Comparison of CPSI 1st Amended Complaint to CPSI 2nd Amended Complaint

34. As a result of Elite's justifiable reliance upon these misrepresentations, Elite was induced to enter into a contractual relationship with CPSI and business relationships with CPSI and CCSI (USA). Elite consequently gave up other business opportunities and suffered in Tennessee severe pecuniary and other harm of a special kind which is not recoverable as contract damages—including, but not limited to, the loss and unjust taking of Elite's business. Further, and in the alternative, Elite asserts that the wrongful acts of CPST, invalidated the Agreement and entitles Elite, at its election, to recession of the Agreement.

## COUNT IV
## CIVIL CONSPIRACY

35. Elite repeats the allegations set forth above.

36. CPSI and CCSI (USA) acted in concert with a common design to induce Elite to enter into a contractual relationship with CPSI and business relationships with CPSI and CCSI (USA), to defraud Elite and through unfair or deceptive acts or practices to take away Elite's business without just compensation. CPSI performed overt acts in furtherance of this conspiracy. This conspiracy renders CPSI and CCSI (USA) mutually liable to Elite for the unlawful actions of either party.

37. As a result of the conspiracy of CPSI and CCSI (USA), Elite has suffered in Tennessee severe pecuniary and other harm of a special kind which is not recoverable as contract damages—in particular, the loss and unjust taking of Elite's business.

## COUNT V
## UNJUST ENRICHMENT

38. Elite repeats the allegation set forth above. Elite has conferred and CPSI has received a benefit at Elite's expense.

39. CPSI has been unjustly enriched at Elite's expense.

14

Comparison of CPSI 1st Amended Complaint to CPSI 2nd Amended Complaint

40.  Under the circumstances presented, it is unjust and inequitable for CPSI to retain the benefit conferred upon it by Elite without making just compensation to Elite.

41.  Under Rule 38 of the Federal Rules of Civil Procedure, Elite demands a trial by jury of its claims stated herein ~~and~~and in any amendment to this ~~First~~Second Amended Complaint.

~~28.~~ 42. Elite reserves the right to further amend its Complaint to assert additional claims against ~~Citicorp~~CPSI and any other person or entity that has unlawfully caused it damage.

WHEREFORE, Elite respectfully requests that this Court enter a judgment against ~~Citicorp~~CPSI awarding Elite: (1) compensatory damages in an amount to be proved at trial; (2) treble damages pursuant to T.C.A. § 47-18-109; (3) Elite's reasonable attorneys' fees and costs pursuant to T.C.A. § 47-18-109; (4) prejudgment and post-judgment interest at Elite's election, recession of the Agreement; ~~and~~ (5) punitive damages; and (6) such other and further relief as the Court deems necessary and proper. ~~see T.C.A. § 47-18-109(a)(3).~~

Respectfully submitted,

WROBEL & SCHATZ LLP

By: _____
    Philip R. Schatz (PS 6158)
    1040 Avenue of the Americas, 11th Floor

Comparison of CPSI 1st Amended Complaint to CPSI 2nd Amended Complaint

> New York, NY 10018-3703
> Tel: (212) 421-8100
> *Local counsel for Elite Physician Services, LLC*

MILLER & MARTIN PLLC

~~By:~~ s/Donald J. Aho (**BPR** ~~No.~~ **# 011975**)
Robert F. Parsley (BPR#023819)
Suite 1000 Volunteer Building
832 Georgia Avenue
Chattanooga, Tennessee 37402
(423) 756-6600 ~~Telephone~~(tel)
(423) 785-8480 ~~Facsimile~~(fax)

*Counsel for Elite Physician Services, LLC*

~~**CERTIFICATE OF SERVICE**~~

~~I hereby certify that a copy of the foregoing pleading was filed electronically on the 30th day of December, 2005. Notice of this filing will be send by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.~~

~~s/Donald J. Aho~~

~~3~~16

Comparison of CPSI 1st Amended Complaint to CPSI 2nd Amended Complaint

~~(BPR No. 011975)~~
~~1000 Volunteer Building~~
~~832 Georgia Avenue~~
~~Chattanooga, Tennessee 37402~~
~~(423) 756-6600 — Telephone~~
~~(423) 785-8480 — Facsimile~~

<u>15</u>

Comparison of CPSI 1st Amended Complaint to CPSI 2nd Amended Complaint

Document comparison done by DeltaView on Wednesday, September 13, 2006 5:00:48 PM

| Input: | |
|---|---|
| Document 1 | PowerDocs://CHATDOCS/357424/1 |
| Document 2 | PowerDocs://CHATDOCS/357426/1 |
| Rendering set | BDBCB Standard |

| Legend: |
|---|
| Insertion |
| Deletion |
| Moved from |
| Moved to |
| Style change |
| Format change |
| Moved deletion |
| Inserted cell |
| Deleted cell |
| Moved cell |
| Split/Merged cell |
| Padding cell |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 142 |
| Deletions | 90 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 232 |