UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | | |
|---|---|---|
| ELITE PHYSICIAN SERVICES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:06-CV-86 |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | Judge Mattice |
| | ) | Magistrate Judge Carter |
| CITICORP CREDIT SERVICES, | ) | |
| INC. (USA) | ) | ORAL ARGUMENT REQUESTED |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MEMORANDUM IN RESPONSE TO DEFENDANT'S MOTION TO DISMISS OR TRANSFER AND IN SUPPORT OF PLAINTIFF'S MOTION TO STAY**

Plaintiff Elite Physician Services, LLC ("Elite") responds to the Motion to Dismiss or Transfer filed by defendant Citicorp Credit Services, Inc. (USA) ("CCSI (USA)") and supports Elite's Motion to Stay as follows.

## I. Preliminary Statement

CCSI (USA)'s motion to dismiss or transfer the current action under the first-to-file rule is based on two pending actions: (1) the instant action; and (2) a previously filed action, currently pending in the United States District Court for the Southern District of New York, in which Elite has sued Citicorp Payment Services, Inc. ("CPSI"). Having determined that CPSI is a mere hollow entity foisted upon Elite as a contracting party in a corporate shell game, Elite has filed a motion to voluntarily dismiss without prejudice its action against CPSI. Because the grant of Elite's motion to dismiss its action against CPSI would render CCSI (USA)'s current motion moot, it would be premature for this Court to decide whether to transfer or dismiss the instant action while Elite's motion to dismiss its action against CPSI is pending. For this reason, Elite

3321474_1.DOC

1

respectfully moves the Court pursuant to Fed. R. Civ. Proc. 7 and its inherent authority to enter an order staying consideration of CCSI (USA)'s motion to dismiss or transfer until Elite's motion to voluntarily dismiss its action in the Southern District of New York has been decided.

In the alternative, the Court should deny CCSI (USA)'s motion to dismiss or transfer. Elite questions whether the first-to-file rule invoked by CCSI (USA) even applies to the current situation. Regardless, the first-to-file rule is a doctrine of equity and sound discretion on the basis of which this Court should deny CCSI (USA)'s motion. Elite contends that transfer of the instant action to the Southern District of New York would be inequitable and contrary to established law and policy. CCSI (USA) characterizes as forum-shopping Elite's right as plaintiff to choose its forum while CCSI (USA) simultaneously asks this Court to transfer this action to a forum with which Elite, CCSI (USA) and this action have no material connection whatsoever. Common-sense analysis of the equities shows that CCSI (USA) is exercising a litigation strategy designed to maximize the burden, cost and unfairness of litigating by stripping from Elite its chosen forum and forcing it to litigate in an inconvenient forum. The Court should thus deny CCSI (USA)'s motion to transfer. For the same reasons, and because dismissal could cause avoidable prejudice to Elite, the Court should also deny CCSI (USA)'s motion in the alternative to dismiss. Further, CCSI (USA)'s motion to dismiss should also be denied because the doctrine of claim splitting is inapplicable to the instant action insofar as the parties and courts in the two actions differ and no judgment in either case has been obtained.

## II.  Factual and Procedural Background

On November 10, 2005, Elite filed a Complaint in Tennessee state court against CPSI. See Exhibit A, Complaint, Elite Physician Services, LLC vs. Citicorp Payment Services, Inc.,

Circuit Court of Hamilton County, Tenn., Case No. 05C1651 ("Complaint Against CPSI").[1]  On December 9, 2005, CPSI removed the action to the United States District Court for the Eastern District of Tennessee.  See Exhibit B, Notice of Removal, Elite Physician Services, LLC vs. Citicorp Payment Services, Inc., U.S. Dist. Court for the E. Dist. of Tenn., Case No. 1:05-CV-344.  Elite filed an amended complaint in the Eastern District on December 30, 2005.  See Exhibit C, First Amended Complaint ("First Amended Complaint Against CPSI").  On January 17, 2006, CPSI moved to transfer the action to the Southern District of New York.  See Exhibit D, Motion to Transfer Venue.  On or about March 1, 2006, the parties exchanged initial disclosures.  See Exhibit E, Defendant's Initial Disclosures ("CPSI's Initial Disclosures").  On March 17, 2006 the Eastern District Court ordered that Elite's action against CPSI be transferred to United States District Court for the Southern District of New York, see Exhibit F, Order; Exhibit G, Memorandum Opinion, where the case was assigned to the Honorable Barbara S. Jones.[2]

Elite had entered into a Master Services Agreement with CPSI on or about April 9, 2003, under which Elite and CPSI were to cooperate to develop and to promote the Citi Health Card program; the purpose of the program was to provide patient financing for certain health-care procedures.  See Exhibit C, First Amended Complaint Against CPSI, at ¶¶ 5–9.  Elite brought a single claim under the Tennessee Consumer Protection Act against CPSI, claiming that CPSI had engaged in unfair and deceptive acts and practices by which CPSI misappropriated business developed by Elite and which resulted in the destruction of Elite as a functioning business entity.  See id. at ¶¶ 4, 22–26.

---

[1] The exhibits to this brief are authenticated via the contemporaneously filed Declaration of Robert  F. Parsley.
[2] Pleadings in the action against CPSI are thus also found in Elite Physician Services, LLC vs. Citicorp Payment Services, Inc., U.S. Dist. Court for the S. Dist. of N.Y., Case No. 1:06-cv-02447-BSJ.

In both its original Complaint Against CPSI and its First Amended Complaint Against CPSI, Elite considered CPSI to be the party defendant in interest with respect to its claims for relief; however, CPSI's Initial Disclosures and Elite's continuing investigation revealed that a second entity, CCSI (USA), was heavily involved in the transactions underlying Elite's claims. With respect to identifying individuals likely to have discoverable information, CPSI's Initial Disclosures listed twelve employees or former employees of CCSI (USA) but did not name a single individual affiliated with CPSI.  See Exhibit E, CPSI's Initial Disclosures, at pp. 2–4. Further, the address for several of these named CCSI (USA) employees is Gray, Tennessee, where CCSI (USA) operates a processing center for Citi Health Card accounts in connection with Elite.

Elite thus determined that CCSI (USA) should be named as a defendant.  On April 7, 2006, Elite filed the instant action.  See Complaint, Case File No. 1.[3]  Because CCSI (USA) is a Delaware corporation with its principal place of business in Jacksonville, Florida and CCSI (USA) lacks any apparent connection to New York, out of an abundance of caution Elite filed its complaint in the Eastern District of Tennessee where the exercise of jurisdiction over CCSI (USA) and the venue of the action are clearly proper.  See id. at ¶¶ 2–3.

After Elite's action against CPSI was transferred to the Southern District of New York, Elite agreed with counsel for CPSI and CCSI (USA) to jointly move that Elite's action against CCSI (USA) be transferred from the Eastern District of Tennessee to the Southern District of New York and that the case be assigned to the Honorable Barbara S. Jones.  Elite agreed to join such a motion solely in the interest of economy.  On July 6, 2006, a proposed agreed order

---

[3] CCSI (USA) contends that Elite, in the interest of judge-shopping, intentionally misled the Eastern District by failing to list its action against CPSI in its civil cover sheet for its complaint against CCSI (USA).  See Brief of CCSI (USA), Case File No. 6, at p. 4 n.4.  Elite strongly denies this accusation and invites this Court and the Eastern District to reassign this action to any other judge should it be deemed appropriate.

transferring the case was submitted to this Court.  See Proposed Agreed Order, Case File No. 3.

However, in an order dated July 12, 2006, this Court denied the joint motion to transfer.  See

Order, Case File No. 4.  Specifically, this Court stated that

> [t]ransfer of venue under § 1404(a) requires the Court to undertake
> a substantive two-part analysis; mere stipulation as to transfer is
> insufficient.  First, the movant must identity an alternate forum in
> which venue is proper.  Next, the movant must show that the
> convenience of the parties and witnesses, and the interest of
> justice, warrant transfer.
>
> The parties have not provided the Court with sufficient
> information to perform the analysis required by § 1404(a).

Id. at p.1.  The Court invited the parties to "resubmit a motion for change of venue which

addresses the substantive requirements of § 1404(a)."  Id. at p.2.  However, as explained in

greater detail below, the instant action's lack of connection with New York and the fact that the

convenience of the parties and witnesses and the interests of justice could not warrant transfer

under § 1404(a) renders such resubmittal unfeasible.

Numerous facts underlying the action against CCSI (USA) indicate a practically

complete lack of connection with New York and intimate, substantive connections with eastern

Tennessee.  As stated above, CCSI (USA) is a Delaware corporation with its principal place of

business in Jacksonville, Florida.  See Complaint, Case File No. 1, at ¶¶ 2.  The transactions

underlying the relationship between Elite and CCSI (USA) were centered in and almost

exclusively confined to Tennessee and Illinois, and no meetings were ever held in New York.

See Exhibit H, Declaration of Keith B. Dressler & Exhibits 1–7 (filed in support of Elite's

response to CPSI's Motion to Transfer Venue, Elite Physician Services, LLC vs. Citicorp

Payment Services, Inc., E. Dist. of Tenn., Case No. 1:05-CV-344) ("Dressler Decl."), at ¶¶ 4–5,

10–11, 21.  Few if any key party or non-party witnesses relative to the actions against CPSI or

CCSI (USA) are located in New York, while numerous key party and non-party witnesses,

including many employees of CCSI (USA), are located in eastern Tennessee. See id. at ¶¶ 13–16; Exhibit E, CPSI's Initial Disclosures, at pp. 2–4. Further, CCSI (USA) was not a party to the Master Services Agreement which included the forum-selection clause to which CPSI was a party and on which the court for the Eastern District of Tennessee based its decision to transfer Elite's action against CPSI to the Southern District of New York. See Affirmation of Keith B. Dressler in Support of Motion to Voluntarily Dismiss (Elite Physician Services, LLC vs. Citicorp Payment Services, Inc., S. Dist. of N.Y., Case No. 1:06-cv-02447-BSJ) ("Dressler Affirm."), at ¶ 5; Exhibit G, Memorandum Opinion, at pp. 7–9.

In light of the foregoing, the Southern District of New York is not a venue which bears any material connection to Elite's action against CCSI (USA) and thus is not a venue in which an action against CCSI (USA) "could have been brought." See 28 U.S.C. § 1404(a). Consequently, any attempt to substantively justify to this Court why transfer is appropriate under 28 U.S.C. § 1404(a) would be futile.

Meanwhile, as Elite's factual investigation continued to progress, Elite was led to surmise that CPSI is merely a hollow entity foisted upon Elite as part of a shell game by subsidiaries of Citigroup, Inc., one of the world's largest conglomerates. Information gathered from and about CPSI confirms Elite's understanding that the negotiations preceding execution of the Master Services Agreement in April 2003 were conducted with individuals employed by CCSI (USA) or Citicorp Credit Services, Inc. (a third entity separate from both CCSI (USA) and CPSI). During preliminary negotiations, it was represented to Elite that Elite was dealing with agents of "Citi Commerce Solutions" or "Citi Cards." See Exhibit I, Dressler Affirm., at ¶¶ 2–3. For example, preliminary drafts of contracts with Elite dating from mid-March 2003 provided that the parties to the agreement were to be Elite and "Citicorp Commerce Solutions, Inc." or "Citicorp Credit

Services, Inc. (USA), d.b.a. Citi Commerce Solutions." <u>See</u> <u>id.</u> at ¶ 3.  However, when the final form of the contract was provided to Elite for execution, the entity with whom Elite was contracting had been changed to CPSI.  <u>Id.</u>

Significantly, Elite had never even heard of CPSI as an entity or business name until that time, shortly before the Master Services Agreement was executed.  <u>See</u> <u>id.</u>  Even Julie Pukas, who executed the Master Services Agreement as "president" of CPSI, is listed in CPSI's Initial Disclosures as an employee of yet another Citigroup, Inc. affiliate, Citicorp Credit Services, Inc. <u>See</u> Exhibit E, CPSI's Initial Disclosures, at p. 2.  Dr. Keith Dressler, a principal of Elite, affirms not only that he has never met Ms. Pukas but also that, to his knowledge, he has never dealt with representatives of CPSI who were not also employees of or primarily affiliated with the business entities CCSI (USA) or Citicorp Credit Services, Inc. or the trade names Citi Commerce Solutions or Citi Cards.  <u>See</u> Exhibit I, Dressler Affirm., at ¶ 4.

In light of Elite's concern that CPSI is a mere shell entity used by other Citigroup, Inc. affiliates to shield themselves from suit, Elite began to consider voluntarily dismissing its action against CPSI.  On or about September 7, 2006, a teleconference was held in which counsel for Elite informed Mr. Josh Powers, counsel for CCSI (USA) and CPSI, that Elite believes CPSI to be a mere shell entity and that Elite was considering voluntarily dismissing its action against CPSI without prejudice.  <u>See</u> Exhibit J, Affirmation of Robert F. Parsley in Support of Motion to Voluntarily Dismiss (<u>Elite Physician Services, LLC vs. Citicorp Payment Services, Inc.</u>, S. Dist. of N.Y., Case No. 1:06-cv-02447-BSJ) ("Parsley Affirm."), at ¶ 2.

On September 13, 2006, a follow-up teleconference was held in which counsel for Elite informed Mr. Bruce Schneider, counsel for CCSI (USA) and CPSI, that Elite was considering voluntarily dismissing its action against CPSI without prejudice.  Mr. Schneider intimated that

CPSI would likely be disinclined to stipulate to such dismissal, and he would not answer the question whether CPSI is merely a shell entity without current operations and substantial assets. He further stated that CPSI unless Elite finds some way to transfer its action against CCSI (USA) to the Southern District of New York, CPSI would not produce documents relative to CCSI (USA),[4] and he added that CPSI had provided no substantive answers to Elite's initial interrogatories for similar reasons. See Exhibit J, Parsley Affirm., at ¶ 3. Elite filed its motion to voluntarily dismiss its action against CPSI without prejudice on October 25, 2006. See Exhibit K, Notice of Motion and Motion for Voluntary Dismissal Without Prejudice Pursuant to Fed. R. Civ. P. 41(a)(2) (Elite Physician Services, LLC vs. Citicorp Payment Services, Inc., S. Dist. of N.Y., Case No. 1:06-cv-02447-BSJ).

Knowing that Elite was considering moving to voluntarily dismiss its action against shell-entity CPSI, CCSI (USA) filed its motion to dismiss or transfer in this Court as a preemptive strike in the attempt to force Elite to seek relief for its claims in a forum inconvenient not only for Elite but even for CCSI (USA). CCSI (USA)'s corporate shell game and "derivative" forum shopping comprise part of a manifest defense strategy of using vastly superior resources to wear down Elite by maximizing the burdens and expense of litigating Elite's claims.

### III. Law and Argument

A.    The First-to-File Rule is a Rule of Equity and Discretion

Where a district court is faced with a similar action pending in another federal district, the court's decision concerning how to proceed is a matter of discretion grounded in equity. See Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co., 342 U.S. 180, 183–84 (1952) ("The factors relevant to wise administration here are equitable in nature. Necessarily, an ample degree of discretion, appropriate for disciplined and experienced judges, must be left to the lower courts.");

---

[4] To date, CPSI has produced no documents.

Smith v. SEC, 129 F.3d 356, 361 (6th Cir. 1997); Roth v. Bank of the Commonwealth, 583 F.2d

527, 537–38 (6th Cir. 1978).   Accordingly, a discretionary and equitable doctrine called the

"first-filed" or "first-to-file" rule has been considered where similar actions are pending in two

federal districts.   See Thomas & Betts Corp. v. Hayes, 222 F.Supp.2d 994, 995–96 (W.D. Tenn.

2002).   This rule, which is based on principles of comity and efficiency, has been aptly described

as a "general case management principle that is not codified by statute or procedural rule."

Medspring Group, Inc. v. Atl. Healthcare Group, Inc., No. 1:05CV115, 2006 WL 581018, at *3

(D. Utah Mar. 7, 2006).

Three factors are considered in determining whether the first-to-file rule is implicated: (1)

the chronology of the relevant actions; (2) the similarity of the parties involved; and (3) the

similarity of the issues at stake.   Hayes, 222 F.Supp.2d at 996.   Once it has been determined that

the first-to-file rule has been implicated, the district court turns its attention to general equitable

considerations.   Although there is a preference for allowing the first-filed action to proceed

where the second-filed action is sufficiently identical, see Plating Res., Inc. v. UTI Corp., 47

F.Supp.2d 899, 903 (N.D. Ohio 1999), courts must take into consideration numerous equitable

factors which might justify setting this preference aside.

> The most basic aspect of the first-to-file rule is that it is
> discretionary: "an ample degree of discretion, appropriate for
> disciplined and experienced judges, must be left to the lower
> courts." . . . [D]istrict court judges can, in the exercise of their
> discretion, dispense with the first-filed principle for reasons of
> equity.

Alltrade, Inc. v. Uniweld Prods., Inc., 946 F.2d 622, 628 (9th Cir. 1991) (quoting Kerotest, 342

U.S. at 183–84); see also Boatmen's First Nat'l Bank of Kansas City v. Kansas Pub. Employees

Ret. Sys., 57 F.3d 638, 641 (8th Cir. 1995) (stating that the first-to-file rule is "'not intended to

be rigid, mechanical or inflexible, but is to be applied in a manner best serving the interests of

justice'" and that "'the district court must consider the factual circumstances in each case'" (quoting Northwest Airlines, Inc. v. Am. Airlines, Inc., 989 F.2d 1002, 1005 (8th Cir. 1993))). In short, "[d]istrict courts have the discretion to dispense with the first-to-file rule where equity so demands." Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assocs., Inc., No. 00-3183, 16 Fed. Appx. 433, 437 (6th Cir. July 31, 2001).

Equitable considerations are based on all the relevant facts and circumstances, and they include such factors as anticipatory filing, bad faith, inequitable conduct, forum shopping, special or extraordinary circumstances, and the balance of convenience. See Serco Servs. Co. v. Kelley Co., 51 F.3d 1037, 1039-40 (Fed. Cir. 1995) (anticipatory filing, balance of convenience); Alltrade, 946 F.2d at 628 (bad faith, anticipatory filing, forum shopping); Asset Allocation & Mgmt. Co. v. W. Employers Ins. Co., 892 F.2d 566, 572–73 (7th Cir. 1990) (balance of convenience); First City Nat'l Bank & Trust Co. v. Simmons, 878 F.2d 76, 79 (2d Cir. 1989) (special circumstances, balance of convenience); Ellicott Mach. Corp. v. Modern Welding Co., 502 F.2d 178, 180 (4th Cir. 1974) (balance of convenience); Zide, 16 Fed. Appx. at 437 (extraordinary circumstances, inequitable conduct, bad faith, anticipatory filing, forum shopping); The Learning Network, Inc. v. Discovery Communications, Inc., No. 01-1202, 11 Fed. Appx. 297, 302 (4th Cir. June 7, 2001) (balance of convenience).

Based on the foregoing, a district court may exercise its discretion to stay the second-filed action, to transfer or dismiss the second-filed action, to enjoin the parties from proceeding in the first-filed action, or to allow both actions to proceed. See Smith, 129 F.3d at 361; Cedars-Sinai Med. Ctr. v. Shalala, 125 F.3d 765, 769 (9th Cir. 1997). A district court's decision is reviewed on appeal under an abuse-of-discretion standard. See Alltrade, 946 F.2d at 625.

B.     The First-to-File Rule Does Not Necessarily Apply

In the first place, with respect to the question whether the first-to-file rule is even implicated, Elite does not dispute that the issues in its two actions against CPSI and CCSI (USA) respectively are substantially similar and arise out of a common factual background. In this regard, the requirement concerning the identity of issues at stake is satisfied. See Inherent.com, 420 F.Supp2d at 1097; Hayes, 222 F.Supp.2d at 996. Similarly, concerning the chronology of the respective actions, Elite filed its action against CPSI in Tennessee state court on November 10, 2005[5] (now pending in the Southern District of New York) and subsequently filed its action against CCSI (USA) in this Court approximately five months later on April 7, 2006. (Note that Elite never *filed* an action in the Southern District of New York.) In its brief, CCSI (USA) has gone to great lengths to convince the Court of these obvious points.

As to the identity of parties, see Hayes, 222 F.Supp.2d at 996, courts have not required parties or issues in the relevant actions to be absolutely identical, but rather substantially similar, see Inherent.com v. Martindale-Hubbell, 420 F.Supp2d 1093, 1097 (N.D. Cal. 2006). Elite, of course, is the sole plaintiff in each action. However, there is no overlap among the defendants in the two actions, CPSI being the defendant in one case and CCSI (USA) the defendant in another. Even though CPSI and CCSI (USA) are separate and distinct entities, in its motion to dismiss or transfer CCSI (USA) contends that the first-to-file rule should apply because they are affiliate corporations. To the contrary, Elite contends that because there is no actual overlap among the named defendants in the two actions, the parties are not sufficiently identical to trigger the first-to-file rule.

---

[5] For purposes of chronology, where a case has been removed from state to federal court, the filing date of the state court action is used. See Affinity Memory & Micro, Inc. v. K & Q. Enters., Inc., 20 F.Supp.2d 948, 954 n.10 (E.D. Va. 1998).

C.      <u>Assuming the First-to-File Rule Applies, Equity Does Not Support Dismissal or Transfer</u>

Nonetheless, and more significantly, even if this Court were to determine that the first-to-file rule applies, the equities of the situation in no way support dismissal or transfer of Elite's action against CCSI (USA). As explained above, the first-to-file rule is fundamentally discretionary and grounded in equity. <u>See</u> <u>Kerotest</u>, 342 U.S. at 183–84; <u>Smith</u>, 129 F.3d at 361; <u>Roth</u>, 583 F.2d at 537–38; <u>Zide</u>, 16 Fed. Appx. at 437. The equitable considerations raised by CCSI (USA)'s motion weigh strongly against dismissal or transfer. Further, because dismissal of Elite's previously filed action against CPSI would effectually render CCSI (USA)'s current motion moot, at a minimum the proper course is for this Court to stay decision of CCSI (USA)'s motion pending resolution of Elite's motion to voluntarily dismiss its action against CPSI.

When Elite brought its initial action against CPSI on November 10, 2005, it considered CPSI to be the party defendant in interest with respect to Elite's claims for relief. This action was filed in Tennessee state court, was removed to the Eastern District of Tennessee and on the basis of a contractual forum-selection clause was subsequently transferred to the Southern District of New York.

However, as Elite's factual investigation progressed during the course of these proceedings, Elite became more acutely aware of the heavy involvement of CCSI (USA) in the transactions underlying Elite's claims for relief. For example, in CPSI's initial disclosures served on or about March 1, 2006, CPSI listed twelve employees or former employees of CCSI (USA), but did not name a single individual employed by CPSI. <u>See</u> Exhibit E, CPSI's Initial Disclosures, at pp. 2–4. Further, several of the individuals disclosed by CPSI are employed by CCSI (USA) in Gray, Tennessee, where it is now understood that CCSI (USA) operates a credit-application processing center that employs approximately 1,700 persons. This credit-application

processing center was intimately involved in handling Citi Health Card applications in conjunction with Elite. In light of these and other facts, Elite determined that CCSI (USA) should be named as a defendant.

Therefore, on April 7, 2006 Elite filed a complaint against CCSI (USA) in a separate action in the Eastern District of Tennessee. Because CCSI (USA) is a Delaware corporation with its principal place of business in Jacksonville, Florida and CCSI (USA) lacks any apparent connection to New York, Elite of out caution filed its complaint in the Eastern District of Tennessee where exercise of jurisdiction over CCSI (USA) and the venue of the action are clearly proper. See Complaint, Case File No. 1, at ¶¶ 2–3.

Because Elite is the plaintiff in both actions under consideration, this case is distinguishable from the run-of-the-mill case in which the first-to-file rule is implicated. In the typical cases where the first-to-file rule is implicated, a race to the courthouse is involved in which A sues B in one venue, and B shortly thereafter sues A in another venue. See, e.g., Daimler-Chrysler Corp. v. Gen. Motors Corp., 133 F.Supp.2d 1041, 1042 (N.D. Ohio 2001) (stating that the first-to-file rule in effect typically allows "the winner of a race to the courthouse to select the forum in which the contest will be decided"). However, "there can be no race to the courthouse when only one party is running." Discovery Communications, 11 Fed. Appx. at 301. This special circumstance must be taken into account as this Court weighs the equities.

After Elite's action against CPSI was transferred to the Southern District of New York, Elite agreed with counsel for both CPSI and CCSI (USA) to jointly move that Elite's action against CCSI (USA) be transferred from the Eastern District of Tennessee to the Southern District of New York for assignment to the Honorable Barbara S. Jones. Elite's agreement to join such a motion was based solely on the interests of economy; Elite, whose business was

destroyed as a result of the tortious conduct of which it complains, wanted only to avoid the expense of litigating over transfer of the action. On July 6, 2006, an agreed order transferring the case was submitted to this Court. See Proposed Agreed Order, Case File No. 3.

However, in an order dated July 12, 2006, this Court denied the joint motion to transfer. See Order, Case File No. 4. Specifically, this Court stated that

> [t]ransfer of venue under § 1404(a) requires the Court to undertake a substantive two-part analysis; mere stipulation as to transfer is insufficient. First, the movant must identity an alternate forum in which venue is proper. Next, the movant must show that the convenience of the parties and witnesses, and the interest of justice, warrant transfer.
>
> The parties have not provided the Court with sufficient information to perform the analysis required by § 1404(a).

Id. at p.1. The Court invited the parties to "resubmit a motion for change of venue which addresses the substantive requirements of § 1404(a)." Id. at p.2. Given the utter lack of connection with New York of the case against CCSI (USA) and the inconvenience posed by that venue to the parties and witnesses, the interests of justice could not warrant transfer, and a substantive resubmittal is thus rendered unfeasible.

As explained in greater detail below, numerous facts underlying the action against CCSI (USA) indicate an almost total lack of connection with New York and intimate, substantive connections with Tennessee. As already noted, CCSI (USA) is a Delaware corporation with its principal place of business in Jacksonville, Florida. See Complaint, Case File No. 1, at ¶¶ 2–3. Further, CCSI (USA) was not a party to the Master Services Agreement which included the forum-selection clause to which CPSI was a party and on which the Court for the Eastern District of Tennessee based its decision to transfer the action against CPSI to the Southern District of New York. See Exhibit I, Dressler Affirm., at ¶ 5; Exhibit G, Memorandum Opinion, at pp. 7–9. The Southern District of New York is not a venue which bears any material connection to Elite's

action against CCSI (USA) and is not a venue in which an action against CCSI (USA) could have been brought; any attempt to justify to the Eastern District court why transfer is appropriate under 28 U.S.C. § 1404(a) would be futile.

Meanwhile, as Elite's factual investigation continued to progress, Elite was led to surmise that CPSI is merely a hollow entity foisted upon Elite as part of a shell game by subsidiaries of Citigroup, Inc., one of the world's largest conglomerates. Information gathered from and about CPSI confirms Elite's understanding that the negotiations preceding execution of the Master Services Agreement in April 2003 were conducted with individuals employed by CCSI (USA) or Citicorp Credit Services, Inc. (a third entity separate from both CCSI (USA) and CPSI). During preliminary negotiations, it was represented to Elite that Elite was dealing with agents of "Citi Commerce Solutions" or "Citi Cards." See Exhibit I, Dressler Affirm., at ¶¶ 2–3. For example, preliminary drafts of contracts with Elite dating from mid-March 2003 provided that the parties to the agreement were Elite and "Citicorp Commerce Solutions, Inc." or "Citicorp Credit Services, Inc. (USA), d.b.a. Citi Commerce Solutions." See id., at ¶ 3. However, when the final form of the contract was provided to Elite for execution, the entity with whom Elite was contracting had been changed to CPSI. Id.

Significantly, Elite had never even heard of CPSI as an entity or business name until that time, shortly before the Master Services Agreement was executed. See id. Even Julie Pukas, who executed the Master Services Agreement as "president" of CPSI, is listed in CPSI's initial disclosures as an employee of yet another Citigroup affiliate, Citicorp Credit Services, Inc. See Exhibit E, CPSI's Initial Disclosures, at p. 2. Dr. Keith Dressler, a principal of Elite, affirms not only that he has never met Ms. Pukas, but also that to his knowledge he has never dealt with representatives of CPSI who were not also employees of or primarily affiliated with the business

entities CCSI (USA) or Citicorp Credit Services, Inc. or the trade names Citi Commerce Solutions or Citi Cards. See Exhibit I, Dressler Affirm., at ¶ 4.

In light of Elite's concern that CPSI is a mere shell entity used by Citigroup, Inc. affiliate CCSI (USA) to shield itself from a suit for the recovery of damages, Elite began to consider voluntarily dismissing its action against CPSI. Around September 7, 2006, a teleconference was held in which counsel for Elite informed Mr. Josh Powers, counsel for CCSI (USA) and CPSI, that Elite believes CPSI is likely a mere shell entity and that Elite was considering voluntarily dismissing its action against CPSI without prejudice. See Exhibit J, Parsley Affirm., at ¶ 2.

On September 13, 2006, a follow-up teleconference was held in which counsel for Elite informed Mr. Bruce Schneider, counsel for CCSI (USA) and CPSI, that Elite was considering voluntarily dismissing its action against CPSI without prejudice. Mr. Schneider intimated that CPSI would likely be disinclined to stipulate to such dismissal, and he would not answer the question whether CPSI is merely a shell entity without current operations and substantial assets. Mr. Schneider further stated that unless Elite finds some way to transfer its action against CCSI (USA) to the Southern District of New York, CPSI would not produce documents relative to CCSI (USA). For similar reasons, CPSI has yet to provide substantive answers to Elite's initial interrogatories. See Exhibit J, Parsley Affirm., at ¶ 3.

Knowing that Elite was considering moving to voluntarily dismiss its action against shell-entity CPSI, CCSI (USA) filed its motion to dismiss or transfer in this Court without prior notice as a preemptive strike in the attempt to force Elite to seek relief for its claims in an inconvenient forum.[6] This kind of procedural maneuvering is a form of anticipatory filing which qualifies in effect as "derivative" forum shopping. See Zide, 16 Fed. Appx. at 437 (anticipatory filing and

---

[6] Notably, aware that it has no material connection to New York, CCSI (USA) attempts to waive any objection to personal jurisdiction or venue in the Southern District of New York. See Brief of CCSI (USA), Case File No. 6, at p. 17 n.12.

forum shopping as equitable factors); <u>Daimler-Chrysler Corp.</u>, 133 F.Supp.2d at 1043 n.1 (referring to defendant's anticipatory motion to dismiss under the first-to-file rule as "a kind of derivative forum shopping").  As plaintiff and master of its claims, Elite has the right to seek relief from the defendant of its choice.  See <u>Lincoln Prop. Co. v. Roche</u>, 546 U.S. 81, 126 S.Ct. 606, 614 (2005) (stating that "'[i]n general, the plaintiff is the master of the complaint and has the option of naming only those parties the plaintiff chooses to sue, subject only to the rules of joinder [of] necessary parties'" (quoting 16 James William Moore, <u>Moore's Federal Practice</u> § 107.14[2][c] (3d ed. 2005)).  By virtue of its motion to voluntarily dismiss its action against shell entity CPSI, Elite has indicated its preference for seeking relief from the real party defendant in interest with respect to its claims for relief, CCSI (USA).[7]

The manifest litigation strategy of CPSI and CCSI (USA), both subsidiaries of the major international conglomerate Citigroup, Inc., has been to maximize the burden and expense of litigating.  What other reason could there be for CCSI (USA)—a Delaware corporation headquartered in Florida which maintains considerable business presence relevant to Elite's claims in eastern Tennessee but none in New York—to seek transfer to the Southern District of New York as explained above?  Unlike typical forum-shopping in which a party maneuvers to obtain a convenient forum, CCSI (USA) is engaged in a litigation strategy designed to maximize inconvenience for all and to strip from its opponent Elite any choice of forum.  For reasons of equity, such forum-stripping should not be encouraged, and in the event this Court does not stay consideration of CCSI (USA)'s motion pending resolution of Elite's motion to dismiss its action against CPSI, this Court should accordingly deny CCSI (USA)'s motion to dismiss or transfer.

---

[7] It has been explained that, within the context of the first-to-file rule, "[t]he considerations of sound judicial administration are obviously different when the issues are identical but the parties are different and the parties to the second action are the major contestants." <u>Pacesetter Sys., Inc. v. Medtronic, Inc.</u>, 678 F.2d 93, 96 (9th Cir. 1982). CPSI and CCSI (USA) are different parties and CCSI (USA) is the major contestant, being an operating entity and not a mere shell. <u>See also</u> <u>Asset Allocation</u>, 892 F.2d at 573 (contrasting a "sideshow" with the "real dispute").

D.    The Equitable Consideration of Convenience Also Weighs Against Transfer

In determining whether and how to apply the first-to-file rule, many federal circuits include the "balance of convenience" among the district court's equitable considerations. See, e.g., Serco, 51 F.3d at 1039-40 (Fed. Cir.); Alltrade, 946 F.2d at 628 (9th Cir.); Asset Allocation, 892 F.2d at 572–73 (7th Cir.); Simmons, 878 F.2d 76, 79 (2d Cir. 1989); Ellicott, 502 F.2d at 180 (4th Cir.); Discovery Communications, 11 Fed. Appx. at 302 (4th Cir.); see also Portfolio Technologies, Inc. v. Intellx, Inc., No. 1:05-CV-159, 2005 WL 1189604, at *4 (W.D. Mich. May 19, 2005) (stating that "[a]nother consideration which might justify departure from the [first-to-file] rule is the convenience of the parties."). "In appropriate cases it would be relevant for the court in the second-filed action to give consideration to the convenience of the parties and witnesses." Pacesetter Sys., Inc. v. Medtronic, Inc., 678 F.2d 93, 96 (9th Cir. 1982). The convenience of the parties and witness should be taken into account in order to determine which action should proceed and whether the second-filed action should be transferred.

With regard to the option of transfer, courts consider the same kind of factors weighed under a transfer of venue analysis pursuant to 28 U.S.C. § 1404(a). See Pacesetter, 678 F.2d at 96; 800-Flowers, Inc. v. Intercont'l Florist, Inc., 860 F.Supp 128, 133 (S.D. N.Y. 1994) ("The interests analysis under the first to file rule includes consideration of the same factors considered under a 28 U.S.C. § 1404(a) transfer motion."); 17 Moore's Federal Practice § 111.13[1][o][ii][A]–[B] (3d ed. 2006) (stating that a "court may transfer the second action under Section 1404(a) so that it may be consolidated with the first-filed action"); see also Hayes, 222 F.Supp.2d at 996–997 (W.D. Tenn.) (taking § 1404(a) factors into account in considering transfer under first-to-file rule). To decide transfer under the first-to-file rule based on unrestrained discretion in disregard of § 1404(a) would contradict the congressional policies

manifest in § 1404(a) and the requirements mandated thereby, and any such decision would likely constitute a per se abuse of discretion.[8]

Under 28 U.S.C. § 1404(a) a federal court may transfer an action "[f]or the convenience of parties and witnesses" and "in the interest of justice . . . to any other district or division where it might have been brought." In considering a motion to transfer, the court must determine:

> (1) whether the action could have been brought in the proposed transferee district, (2) whether a transfer would promote the interests of justice, and (3) whether a transfer would serve the parties' and witnesses' convenience.

IFL Group, Inc. vs. World Wide Flight Servs., Inc., 306 F.Supp.2d 709, 712 (E.D. Mich. 2004).

First and foremost, it would be inappropriate to transfer the instant action against CCSI (USA) to the Southern District of New York because that is not a district where this action "might have been brought." See 28 U.S.C. § 1404(a); IFL Group, 306 F.Supp.2d at 712. Elite is a Tennessee corporation with its principal place of business in Chattanooga, Tennessee; CCSI (USA) is a Delaware corporation with its principal place of business in Jacksonville, Florida. See Complaint, Case File No. 1, at ¶¶ 1–2. Further, the transactions underlying the relationship between Elite and CCSI (USA) were centered in Tennessee and almost exclusively confined to Illinois and Tennessee alone, where CCSI (USA) maintains many employees, and no meetings were held in New York. See Exhibit H, Dressler Decl., at ¶¶ 4–5, 10–11, 21. The utter lack of connection between the instant action and its parties with the Southern District of New York would have prevented the filing of this action in the Southern District of New York; this fact

---

[8] In two opinions from the Eastern District of Tennessee, transfer was granted under the first-to-file rule expressly irrespective of the dictates of § 1404(a). See Fuller v. Abercrombie & Fitch Stores, Inc., 370 F.Supp.2d 686, 691 (E.D. Tenn. 2005); Plantronics, Inc. v. Clarity, LLC, No. 1:02-CV-126, 2002 WL 32059746, at *1 (E.D. Tenn. July 17, 2002). Elite respectfully disagrees with this aspect of these cases and urges this Court not to follow this precedent.

itself is enough to make transfer to that district unwarranted. CCSI (USA) understandably ignores these facts in its brief because they weigh so heavily against transfer.

Second, and notwithstanding, even a cursory analysis of the "balance of convenience" demonstrates that the Eastern District of Tennessee is the more convenient forum for *both* Elite *and* CCSI (USA). Factors considered in a transfer analysis are derived from the language and policy of the statute, see Moses vs. Bus. Card Express, Inc., 929 F.2d 1131, 1136–37 (6th Cir. 1991), and have been enumerated as follows:

> (1) the convenience of witnesses; (2) the location of relevant documents and relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

Warner v. Fuller Rehab. & Consulting Servs., Inc., No. 1:05-CV-105, 2005 WL 1490071, at *3 (E.D. Tenn. June 23, 2005) (citing Amphion, Inc. v. Buckeye Elec. Co., 285 F.Supp.2d 943, 947 (E.D. Mich. 2003)). These factors as analyzed below weigh totally against the transfer of this action to the Southern District of New York.

(1) *The convenience of witnesses.* The overwhelming majority of key party and non-party witnesses relative to the action against CCSI (USA), including numerous employees of CCSI (USA), are located in Tennessee. CCSI (USA) operates a credit-application processing center in Gray, Tennessee within the Eastern District which employs about 1,700 persons. Few if any witnesses are located in New York. Further, many of the key non-party witnesses are former employees of Elite (no longer a functioning business entity) for whom travel to new York would be prohibitively expensive. See Exhibit H, Dressler Decl., at ¶¶ 5, 13–17, 20; see also Exhibit E, CPSI's Initial Disclosures, at pp. 2–4; Complaint, Case File No. 1, at ¶ 13.

(2) *The location of relevant documents*.  All of Elite's documents are located in eastern Tennessee.  See Exhibit H, Dressler Decl., at ¶ 11.  Further, CCSI (USA) operates a major employment center in Gray, Tennessee within the Eastern District, at which evidence is expected to be housed.  Id. at ¶ 12.

(3) *The convenience of parties*.  Elite is a Tennessee corporation with its principal place of business in Chattanooga, Tennessee, and CCSI (USA) is a Delaware corporation with its principal place of business in Jacksonville, Florida.  See Complaint, Case File No. 1, at ¶¶ 1–2.

(4) *The locus of operative facts*.  The transactions underlying the relationship between Elite and CCSI (USA) were centered in and almost exclusively confined to Illinois and Tennessee, in both of which states CCSI (USA) maintains many employees, and no meetings were held in New York.  See Exhibit H, Dressler Decl., at ¶¶ 4–5, 10, 21.  Further, key corporate representatives of CCSI (USA) traveled frequently from Illinois to Chattanooga to conduct business with Elite.  See id. at ¶ 10.

(5) *The availability of process to compel the attendance of unwilling witnesses*.  Process would be available to subpoena numerous witnesses in the Eastern District of Tennessee, while such process would unavailable in New York.

(6) *The relative means of the parties*.  Because Elite has been destroyed as a viable business entity, no income from Elite is available to finance this litigation, and transfer to New York would cause a severe financial burden for Elite's principals.  Id. at ¶ 17.  By contrast, CCSI (USA)—an affiliate of international conglomerate Citigroup, Inc.—is a functioning business entity which employs 1,700 persons at a single facility in eastern Tennessee alone.

(7) *The forum's familiarity with the governing law*.  Elite has brought claims against CCSI (USA) for misrepresentation, fraudulent inducement, civil conspiracy, and under the

Tennessee Consumer Protection Act. In particular, this Court has intimate familiarity with the Tennessee Consumer Protection Act which a New York court would lack.

(8) *The weight accorded the plaintiff's choice of forum.* A plaintiff's choice of forum is afforded substantial deference, particularly when the plaintiff is located within that district, and the plaintiff's choice should rarely be disturbed. See Ark. Right to Life State Political Action Comm. v. Butler, 972 F.Supp. 1187, 1194 (W.D. Ark. 1997). Elite is located within the Eastern District of Tennessee, where it chose to bring its action against CCSI (USA). Further, CCSI (USA) was not a party to the Master Services Agreement which included the forum-selection clause to which CPSI was a party and on the basis of which Elite's action against CPSI was transferred to the Southern District of New York. See Exhibit I, Dressler Affirm., at ¶ 5.

(9) *Trial efficiency and the interests of justice, based on the totality of the circumstances.* As explained above, Elite has moved to voluntarily dismiss its action against shell-entity CPSI and chooses to pursue its claims against the real party defendant in interest, CCSI (USA). Elite does not seek to conduct similar litigation simultaneously in two different fora. By seeking to have the instant action transferred to the Southern District of New York, with which CCSI (USA) has no connection, it is transparent that CCSI (USA) is willing to maximize the cost and inconvenience for both parties involved in this action in order to increase Elite's burden of litigating.

Just as transfer is unwarranted when it merely shifts inconvenience from one party to another, see Charles Alan Wright et al., 15 Wright, Miller & Cooper, Federal Practice & Procedure: Jurisdiction (2d ed.) § 3848, at pp. 385–86, transfer is similarly unwarranted where it would maximize inconvenience for all parties. Should the Court determine to decide CCSI

(USA)'s motion rather than stay it, the interests of justice and efficiency dictate that CCSI (USA)'s motion to transfer be denied.

E.    Dismissal of this Action Would be Inappropriate and Premature

As with transfer, dismissal of this action as requested by CCSI (USA) would also be inappropriate and premature, and Elite asks this Court to deny CCSI (USA)'s alternative motion to dismiss.  Outright dismissal could potentially prejudice Elite's claims against CCSI (USA) with respect to limitations of actions.   And because the grant of Elite's motion to voluntarily dismiss its action against CPSI would render CCSI (USA)'s current motion moot, it would in any event be premature to decide whether to transfer or dismiss the instant action while Elite's motion to dismiss its action against CPSI is pending.

F.    Elite's Action is Not Barred by the Doctrine of Claim Splitting

The doctrine of claim-splitting is a child of the doctrine of res judicata.  See Heyliger v. State Univ. & Cmty. Coll. Sys. of Tenn., 126 F.3d 849, 854 (6th Cir. 1997).  Pursuant to the rules of merger and bar, a final judgment extinguishes all rights of the plaintiff to remedies against the same defendant with respect to all or any part of the set of facts from which the action arose.  Rest. (2d) of Judgments § 24 (1982).  Res judicata bars "'all claims that were actually litigated or could have been litigated in the first suit between the same parties.'"  Hutcherson v. Lauderdale County, Tenn., 326 F.3d 747, 758 (6th Cir. 2003) (quoting Am. Nat'l Bank & trust Co. of Chattanooga v. Clark, 586 S.W.2d 825, 826 (Tenn. 1979)).  Significantly, "[s]plitting a cause of action does not operate prospectively.  It operates as an estoppel after judgment." Phillips v. United States, 102 F.Supp 943, 948 (E.D. Tenn. 1952).  In arguing that a separate prospective doctrine of claim splitting applies, CCSI (USA) relies (incorrectly) on Hutcherson for the proposition that a mere identity of interest is required; yet CCSI (USA) ignores the fact

that Hutcherson was applying the elements for *res judicata* where a final judgment had been obtained in a prior action. See Hutcherson, 326 F.3d at 758–60.[9]  Any application of this doctrine now would be premature because no judgment has been obtained in a relevant action. This doctrine should also not apply because the defendants in the relevant actions differ. Moreover, in any event, dismissal under the doctrine of claim splitting would be premature because the grant of Elite's pending motion to voluntarily dismiss its action against CPSI would render consideration of this issue moot.

G.    The Court Should Stay Consideration of CCSI (USA)'s Motion to Dismiss or Transfer Pending Resolution of Elite's Motion to Voluntarily Dismiss its Action Against CPSI

Because the grant of Elite's motion to voluntarily dismiss its action against CPSI would render CCSI (USA)'s current motion moot, it would be premature for the Court to decide whether to transfer or dismiss the instant action while Elite's motion to dismiss is pending.  For this reason, Elite respectfully moves the Court to exercise its inherent power to stay consideration of CCSI (USA)'s motion pending resolution of Elite's motion to voluntarily dismiss its action against CPSI. See Anthony v. BTR Auto. Sealing Systems, Inc., 339 F.3d 506, 516–17 (6th Cir. 2003) (district courts have inherent power to control their dockets); Wolf Designs, Inc. v. Donald McEvoy LTD, 341 F.Supp.2d 639, 642 (N.D. Tex. 2004) (a district court has inherent authority to stay proceedings in deference to a related action).[10]  Stay is particularly preferable to dismissal where the first-filed action itself is subject to dismissal, as is the situation here. Cf. Cent. States, Southeast and Southwest Areas Pension Fund v. Paramount Liquor Co.,

---

[9] CCSI (USA) cites Oxbow Energy, Inc. v. Koch Indus., Inc., 686 F.Supp. 278 (D. Kan. 1988) and cases relying on it for the proposition that the doctrine against claim splitting somehow operates prospectively even in the absence of a final judgment.  This doctrine is foreign to Tennessee and the Sixth Circuit.  Further, even Oxbow limits its doctrine by stating that claim splitting precludes a plaintiff from maintaining "two identical claims in the *same* court against the *same* defendants," id. at 281 (emphasis added), a situation inapplicable here.

[10] An alternative reason for this Court to stay decision of CCSI (USA)'s motion is that many courts require the decision whether and how to apply the first-to-file rule to be made by the court of the first-filed action.  See, e.g., Save Power Ltd. v. Syntek Fin. Corp., 121 F.3d 947, 950 (5th Cir. 1997).

203 F.3d 442, 444 (7th Cir. 2000) (stating that under the first-to-file rule, stay rather than dismissal is preferred unless it is absolutely clear that dismissal cannot adversely affect any litigant's interests); Alltrade, 946 F.2d at 628 (preferring stay to dismissal); Portfolio Technologies, Inc. v. Intellx, Inc., No. 1:05-CV-159, 2005 WL 1189604, at *3 (W.D. Mich. May 19, 2005); 17 Moore's Federal Practice 3d § 111.13[1][o][ii][A] (preferring stay of second-filed action where first-filed action was subject to dismissal). Elite notes that it does not move the Court to stay this entire action, but rather merely to exercise its discretion to stay determination of CCSI (USA)'s motion until Elite's motion to dismiss in the Southern District of New York has been resolved.

## IV. Conclusion

Because the grant of Elite's motion to voluntarily dismiss its action against CPSI would render CCSI (USA)'s current motion moot, Elite respectfully moves the Court pursuant to Fed. R. Civ. Proc. 7 and its inherent authority to enter an order staying consideration of CCSI (USA)'s motion to dismiss or transfer until Elite's motion to voluntarily dismiss its action in the Southern District of New York has been decided. In the alternative, based on the foregoing Elite respectfully requests the Court to deny CCSI (USA)'s motion to transfer or dismiss.

Respectfully submitted,

MILLER & MARTIN, PLLC

By:    **s/Donald J. Aho**
       Donald J. Aho (BPR # 11975)
       Robert F. Parsley (BPR # 23819)
1000 Volunteer Building
832 Georgia Avenue
Chattanooga, TN 37402

*Attorneys for Elite Physician Services, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading was filed electronically on October 27, 2006. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

**s/Robert F. Parsley**
(BPR No. 023819)
Miller & Martin PLLC
1000 Volunteer Building
832 Georgia Avenue
Chattanooga, Tennessee 37402
(423) 756-6600 – Telephone
(423) 785-8480 – Facsimile
