UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| ELITE PHYSICIAN SERVICES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:06-CV-86 |
| | ) | |
| v. | ) | *Mattice/Carter* |
| | ) | |
| CITICORP CREDIT SERVICES, INC. (USA), | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY IN SUPPORT OF
ITS MOTION TO DISMISS OR TRANSFER**

Defendant, Citicorp Credit Services, Inc. (USA) ("CCSI"), submits this Reply to Elite Physician Services, Inc.'s ("Elite") Memorandum in Response to Defendant's Motion to Dismiss or Transfer (the "Response").[1]

## I.    PRELIMINARY STATEMENT

In its Response, Elite asks this Court to improperly intrude upon the jurisdiction of its sister court in the Southern District of New York by examining the equities of transfer.  Because the first to file rule applies to this case, this Court (as the second filed court) should dismiss or transfer the case, and the Southern District of New York (as the first filed court) should examine any equities.

As demonstrated below in detail, many cases cited by Elite actually stand for the principle that once the first to file rule applies, the first filed court (here the S.D.N.Y) should examine any equities of transfer, not the second filed court (here the E.D. Tenn.).  The alternatives available to this Court, as second filed court, are transfer or dismissal of the case.

---

[1] This Reply also includes and serves as CCSI's response to Elite's Motion to Stay (Court File No. 9).

- 1 -

Thus, Elite's arguments regarding the equities, including its extensive discussion of the §1404(a) factors, are simply irrelevant. The first-to-file rule is a common law doctrine, independent of §1404.

Elite's Response is consistent with its efforts to circumvent Chief District Judge Curtis L. Collier's rulings and its own contractual obligations, in an unending attempt to have its claims heard by a Tennessee court. At the basis of Elite's claims against CCSI are allegations that stem from a Master Services Agreement (the "Agreement") between Elite and Citicorp Payment Services, Inc. ("CPSI"). In the Agreement, Elite agreed to be bound by a mandatory forum selection clause designating the Borough of Manhattan in New York as the <u>exclusive forum to resolve all disputes arising from or relating to the Agreement</u>. However, in breach of its obligations under the Agreement, Elite initially filed its lawsuit against CPSI in a Tennessee state court over a year ago ("Elite I").

CCSI's affiliate, CPSI, was forced to first remove the case to this Court, and then prepare an extensive and costly Motion to Transfer to the previously agreed upon exclusive forum in the Southern District of New York. Judge Collier granted CPSI's motion and transferred Elite I to New York.

Undeterred, Elite waited <u>a mere three weeks</u> after Judge Collier ordered the transfer of Elite I to New York, to commence a second lawsuit, this time against CPSI's affiliate, CCSI ("Elite II"). After CCSI became aware of Elite II, Elite agreed to transfer Elite II to the contractually agreed upon exclusive forum in New York "in the interest of economy." (Response, p. 4.) However, once this Court denied the agreed order, as submitted, Elite apparently decided to forego the interests of economy and contested CCSI's Motion to Dismiss or Transfer. Now, despite the presence of a prior pending, duplicative lawsuit in New York, and

with total disregard of its agreement to litigate all claims arising from or relating to the Agreement in New York, Elite continues its gamesmanship. Elite's actions should not be tolerated. The first-to-file rule applies, and this Court should dismiss or transfer this case to the Southern District of New York.

## II.    THE FIRST-TO-FILE RULE APPLIES

Application of the first-to-file rule hinges on three factors: [1] the chronology of the pleadings filed in both cases, [2] whether the parties in the two actions are similar or "substantially overlap," and [3] whether the claims asserted in both actions are substantially similar. Fuller v. Abercrombie & Fitch Stores, Inc., 370 F. Supp. 2d 686, 688 (E.D. Tenn. 2005).

### A.    Elite Admits 1st and 3rd Elements of First-to-File Rule Are Met

Elite never seriously contends that any of these three factors are not met. In fact, Elite admits in its Response that the first and third factors of the first-to-file rule are met; see p. 11 of the Response, where Elite admits that Elite I was filed prior to Elite II, and that the claims asserted in both cases are substantially similar.

### B.    2nd Element of First-to-File Rule Is Met

Elite only poses a token argument regarding the remaining factor – the similarity of parties. First, Elite ignores the precedent cited in CCSI's Motion that the first-to-file rule applies to affiliated companies. Second, Elite conveniently overlooks its own allegations in its own Complaint, where Elite states in its Response "there is no overlap among the defendants in the two actions . . . ". (Response, p. 11); see also Versus Technology, Inc. v. Hillenbrand Industries, Inc., 2004 WL 3457629, *8 (W.D. Mich. 2004) (noting that "the [first-to-file rule] does not require identical parties in both cases" and applying the rule to affiliate corporations).

Contrary to its unsupported statements made in its Response, Elite begins it's Factual Background section in the Elite II Complaint by asserting that "This case involves a course of

deceptive and unfair commercial **conduct by CCSI (USA) and CPSI (collectively "Citicorp")** in connection with the offer to provide and the provision of services to Elite in the context of the patient financing services program discussed below."  (Elite II Complaint, ¶ 4) (emphasis added). Elite considered the actions of both CPSI and CCSI to overlap to such a degree that it collectively defined both entities as a single actor, "Citicorp", in its Complaint.  Furthermore, in its Complaint, Elite represented that several individuals were either [1] employed by both CCSI and CPSI, or [2] acted on behalf of both CCSI and CPSI:

- **The following persons relevant to this action are employees of CCSI (USA) who also acted at times as agents of Citicorp Payment Services, Inc. ("CPSI"):** Craig Vallorano, Darin Boddicker, Patrick Shanders, Debra Sexton, and Lori Cavicchioni.  (Complaint, ¶ 2.) (emphasis added)

- **Ken Olsen and Alex Bariso also acted as agents on behalf of both CCSI (USA) and CPSI** although, on information and belief, they were not directly employed by either of these entities.  (Complaint, ¶ 2.) (emphasis added)

- **CCSI (USA) and CPSI agents Ken Olsen ("Mr. Olsen") and Alex Bariso ("Mr. Bariso")** made contact with Elite for this purpose in early 2002. Specifically, these representatives proposed that [CCSI (USA) and CPSI] and Elite cooperate to develop and to promote the sale and distribution of a health-care patient financing program and product eventually known as the "Citi Health Card."  (Complaint, ¶ 6.) (emphasis added)

Despite Elite's allegations to the contrary in its own pleadings, Elite nevertheless makes the conclusory remark in its Response that "there is no actual overlap among the named defendants in the two actions . . . ."  (Response, p. 11.)  Elite offers no support for this remark because there is none.  There can be no dispute that the parties in the two actions, CCSI and CPSI, are similar or "substantially overlap," for the purposes of the first-to-file rule.  Elite cannot rebut CCSI's demonstration that the three factors of the first-to-file rule are met and, as such, the rule applies to this case.

## II.    BECAUSE THE FIRST-TO-FILE RULE APPLIES, THIS COURT, AS THE SECOND FILED COURT, SHOULD NOT CONSIDER THE EQUITIES OF TRANSFER

Courts have repeatedly recognized, within and outside of the Sixth Circuit, that the role of the second filed court should be restricted to a determination of whether the three factors of the first-to-file rule are met, **and once those factors are found to exist then it should be improper for the second filed court to consider the equities of the case**. See, e.g., Aluchem, Inc. v. Sherwin Alumina L.P., 2006 WL 1281887 (S.D. Ohio); Ford Motor Co. v. L & H Technologies, Inc., 2006 WL 163525 (E.D. Mich.); see also Fuller v. Abercrombie & Fitch Stores, Inc., 370 F. Supp. 2d 686, 690-91 (E.D. Tenn. 2005) (finding that second filed case should be transferred once a determination was made that the three factors of the first-to-file rule are met).[2]  **"The majority of courts hold . . . that it is the first-filed court that should decide whether an exception to the first-to-file rule applies."**  Aluchem, Inc., 2006 WL 1281887 at *1 (emphasis added).  Once the factors of the first-to-file rule are found to be satisfied, any determination of the equities would improperly intrude on the jurisdiction of the first filed court.  Ford Motor Co., 2006 WL 163525 at *3 (finding that parties should have first filed court rule on whether equities justified negating the first-to-file rule); see also Cadle Co. v. Whataburger of Alice, Inc., 174 F.3d 599, 605-06 (5th Cir. 1999).  In Cadle Co., the court agreed with this

---

[2]  See also Learning Network, Inc. v. Discovery Communications, Inc., 11 Fed. Appx. 297, 301 (4th Cir. 2001) (upholding first filed court's determination of equities and ruling that case should remain in first filed court); Cessna Aircraft Co. v. Brown, 348 F.2d 689, 692 (10th Cir. 1965) ("The rule is that the first federal district court which obtains jurisdiction of parties and issues should have priority and the second court should decline consideration of the action until the proceedings before the first court are terminated."); Allen v. Rohm and Haas Co. Retirement Plan, 2006 WL 1980174, *1 (W.D. Ky.) (noting that second filed court should transfer case to first filed court for determination of equities); Versus Technology, Inc. v. Hillenbrand Industries, Inc., 2004 WL 3457629, *8 (W.D. Mich. 2004) ("the Court determines that the most appropriate course of action is to transfer this case to the MDNC to determine how the two cases should proceed."); Daimler Chrysler Corp. v. General Motors Corp., 133 F. Supp. 2d 1041, 1044 (N.D. Ohio 2001) ("I have found no case in which a court that has considered the issue has concluded that the second-filing court should – as I have been called on to do – arrogate that decision to itself."); Ed Tobergte Assoc., Inc. v. Zide Sport Shop of Ohio, Inc., 83 F. Supp. 2d 1197, 1198 (D. Kan. 1999) ("[t]he first-to-file rule provides that the court where jurisdiction first attaches should make the determination of the appropriate venue to decide the case, and the second court will decline to act until proceedings in the first court terminate."); British Telecommunications plc v. McDonnell Douglas Corp., 1993 WL 149860, *4 (N.D. Cal. 1993) (finding that first filed court is the appropriate forum to decide if exception to the first-filed-rule applies); Aloha Leasing, a Div. of Bennett Funding Groups, Inc. v. Craig Germain Co., 644 F. Supp. 561, 566 (N.D.N.Y. 1986) ("the district where the action is filed first should generally determine whether the first action should be permitted to proceed or should be dismissed or stayed in favor of the later-filed action.").

position and found:

> "Once the likelihood of a substantial overlap between the two suits ha[s] been demonstrated, it [is] no longer up to the [second filed court] to resolve the question of whether both should be allowed to proceed."  The district court correctly refused to act as a "super appellate court" by entertaining either [the plaintiff's] jurisdiction or the defendants' standing arguments, and properly limited its inquiry to the potential overlap between the two cases.  By so limiting its analysis, the district court indeed avoided trenching on the authority of its sister court, one of the very abuses the first-to-file rule is designed to prevent.

174 F.3d at 605-06 (quoting <u>Mann Mfg., Inc. v. Hortex, Inc.</u>, 439 F.2d 403 (5th Cir. 1971)) (int. cit. omit.).

Were second filed courts to address the more substantive issues of the case in an effort to determine whether an exception to the first to file rule applies, those courts would essentially be ruling on facts and issues that are currently pending before the first filed courts and stripping the first filed courts of their authority.  <u>Dallas Aerospace, Inc. v. Sierra Pacific Airlines</u>, 2001 WL 880368, *2 (N.D. Tex. 2001) ("were this Court to decline to defer to the court where this action was first filed, this Court would essentially be acting as a 'super appellate court,' encroaching upon the authority of the Ninth Circuit Court of Appeals and the United States District Court for the District of Arizona.").  The limiting of a second filed court's authority to a determination of whether the first filed rule applies (i.e., whether the three factors discussed above have been met) "'establishes a bright line rule, which is as easy to apply as it is to understand.'"  <u>Ford Motor Co.</u>, 2006 WL 163525 at *3 (<u>quoting</u> <u>Daimler Chrysler Corp. v. General Motors Corp.</u>, 133 F. Supp. 2d 1041, 1044 (N.D. Ohio 2001)).  In addition, "comity dictates that the second judge to get a case should defer to the court of first-filing."  <u>Id.</u>

A.      **<u>First-to-File Rule Cases Cited By Elite Are Misconstrued or Misinterpreted</u>**

Many of the cases cited (and misconstrued) by Elite in its Response actually stand for the proposition that once the first-to-file rule applies, the second filed court should not examine the

equities of transfer, if any.  For example, in <u>Daimler Chrysler Corp. v. General Motors Corp.</u>, the second filed court determined that **once the three factors of the first-to-file rule are met, all other issues to be considered fall under the jurisdiction of the first filed court**.  133 F. Supp. 2d 1041, 1044 (N.D. Ohio 2001).  In refusing to consider the issue of whether the equities of the case negated the first-to-file rule, the court stated that "I have found no case in which a court that has considered the issue has concluded that the second-filing court should – as I have been called on to do – arrogate that decision to itself."  <u>Id.</u>; <u>see also</u> <u>Ford Motor Co.</u>, 2006 WL 163525 at *2 ("the most appropriate approach is for the court where a complaint is filed first to determine which case should go forward.").  In <u>Daimler-Chrysler Corp.</u>, the court opined that:

> It is also more appropriate, as a matter of judicial comity, for the court of first filing to determine whether to retain or relinquish jurisdiction, rather than leave it to the court of later filing to make that decision.  As a matter of comity among equals, the second judge to get a case should accede to the decision of the court of first-filing, rather than vice-versa.

<u>Id.</u> at 1044.  This rationale was supported by the court's impression that one of the parties sought to have the second filed court determine the issue, instead of the first filed court, as a form of "derivative forum shopping" (ostensibly because that party believed the second filed court would rule more favorably on the motion than the first filed court) – and noted that this type of action was inappropriate and the jurisdiction of the first filed court could not be circumvented so easily.  <u>Id.</u>

Further examples of misconstrued cases are Elite's citation to precedent that it argues permits the second filed court to consider the equities of the case.  Elite cites to four cases to support this position – **none of which involve a second filed court ruling on equities**. (Response, pp. 10-11.)  First, Elite quotes the following excerpt from <u>Alltrade, Inc. v. Uniweld Prods., Inc.</u>:

> The most basic aspect of the first-to-file rule is that it is discretionary; an ample degree of discretion, appropriate for disciplined and experienced judges, must be left to the lower courts. . . . [D]istrict court judges can, in the exercise of their discretion, dispense with the first-filed principle for reasons of equity.

(Response, p. 9) (int. cit. omit.)  <u>Not surprising</u>, Elite does not mention the language appearing just sentences later in that same opinion, which states:

> **As for the respective convenience of the two courts, normally [this argument] should be addressed to the court in the first-filed action.**  Apprehension that the first court would fail to appropriately consider the convenience of the parties and the witnesses should not be a matter for our consideration.

946 F.2d at 628 (noting that the plaintiff, who was attempting to convince the second-filed court to examine the convenience of the two courts, "has summoned the wrong precedents and addressed itself to the wrong court.").  Despite Elite's characterization of <u>Alltrade</u>, the court's decision in that case counsels in favor of permitting the <u>first filed</u> court to address equity and convenience concerns.

Immediately after citing to <u>Alltrade</u>, Elite quotes from <u>Boatmen's First Nat. Bank of Kansas City v. Kansas Public Employees Retirement System</u>: "'the district court must consider the factual circumstances in each case.'" 57 F.3d 638, 641 (8th Cir. 1995) (quoting <u>Northwest Airlines, Inc. v. Am. Airlines, Inc.</u>, 989 F.2d 1002, 1005 (8th Cir. 1993)); (Response, pp. 9-10).

**What is omitted from Elite's discussion of <u>Boatmen's</u> is that it was the first filed court that was examining "the factual circumstances in each case."**  <u>Boatmen's</u>, 57 F.3d at 639-40. Similarly, not only does the opinion in <u>Northwest Airlines</u>, also cited by Elite, deal with a consideration of equities by the first filed court, *it demonstrates why a ruling on the equities by the second filed court is to be avoided.*  989 F.2d at 1003-04.  In <u>Northwest Airlines</u>, Northwest filed its claim against American in a Minnesota district court, and American subsequently filed a duplicative suit in a Texas district court.  <u>Id.</u>  The second filed court in Texas refused to transfer the case to Minnesota because it found that the equities negated the first-to-file rule.  <u>Id.</u>  In

response, the first filed court in Minnesota was forced to enjoin American from pursuing its claims in the second filed case.  Id.  That neither Boatmen's nor Northwest Airlines (both in the Fifth Circuit) supports Elite's argument that the second filed court can consider the equities is obvious based upon Cadle Co. v. Whataburger of Alice, Inc., where it was noted that:

> [U]nder Fifth Circuit precedent that balancing act is reserved only for the first-filed court. "Once the likelihood of a substantial overlap between the two suits ha[s] been demonstrated, it [is] was no longer up to the [second filed court] to resolve the question of whether both should be allowed to proceed."

174 F.3d 599, 606-06 (6th Cir. 1999) (quoting Mann Mfg. Inc. v. Hortex, Inc., 439 F.2d 403, 407 (5th Cir. 1971)).

Finally, the fourth case cited by Elite in support of its contention that the second filed court should examine the equities of the case is Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Associates, Inc., 16 Fed. Appx. 433 (6th Cir. 2001).  As is the situation with each of the cases discussed above, Zide also stands for the proposition that **the first filed court may examine the equities of a case**, and contains absolutely no authority regarding the discretion of a second filed court to do the same.  Id. at 438 (noting that the first filed court appropriately examined the equities of the case and determined that the first-to-file rule should be negated do to bad faith).  Simply put, much of the authority cited by Elite does not support its position, and is further evidence of Elite's disregard for the preservation of judicial economies.  This Court has already ruled that the appropriate forum for Elite to litigate its claims is in the Southern District of New York.  This Court, as the second filed court, should not examine or rule on the equities of transfer – that should be left to the first filed court, which here is the S.D.N.Y.

### B.    Elite's Allegation of "Derivative Forum Shopping" is Misplaced

Elite's allegation that CCSI is engaged in derivative forum shopping is also misplaced.  The case relied upon by Elite, Daimler-Chrysler Corp., is the opinion from the second filed

court.  This second filed court noted that GM, which was the plaintiff in the first filed case, had filed a motion to dismiss in the second filed case, <u>instead of attempting to litigate that issue in the first filed court</u>.  Below is a diagram of the two actions:

| Party | First Filed Court – (N.D. IN) | Second Filed Court (N.D.  Ohio) |
| --- | --- | --- |
| **Plaintiff** | General Motors & AM General Corp. | Daimler-Chrysler |
| **Defendant** | Daimler-Chrysler | General Motors &  AM General Corp. |

<u>Daimler-Chrysler Corp.</u>, 133 F. Supp. 2d at 1044.  It appeared to the court in <u>Daimler-Chrysler Corp.</u> that the defendant, GM, was engaged in derivative forum shopping <u>by seeking to have the second filed court determine the equities involved in the motion to dismiss</u>.  <u>Id.</u>  This was prohibited because, "[h]aving selected their forum of preference for their suit, the defendants should not be allowed to choose some other forum in which to have the legitimacy of their action assayed."  <u>Id.</u>  The <u>Daimler-Chrysler</u> court ruled that the first-to-file rule applied, and then directed that any arguments regarding equities be directed to the first filed court.  **This is exactly the relief CCSI is seeking**.

On the other hand, Elite, just like GM in <u>Daimler-Chrysler Corp.</u>, is demanding that this Court create an exception to the first-to-file rule based on equitable grounds.  Elite is attempting to convince this Court to exceed its authority and rule on issues that are squarely within the province of the District Court for the Southern District of New York.  This Court has previously determined that Elite chose the forum of New York when it signed the forum selection clause. **As such, if Elite wants a court to examine the equities, the proper court to address any equitable concerns is the Southern District of New York, as the first filed court, and the exclusive forum agreed upon by Elite**.  The extraordinary lengths to which Elite has gone over the past year to try to persuade any Tennessee court to hear its claims have been well

documented. Elite should not be permitted to benefit from its gamesmanship. Again, this Court should hold that because the three factors of the first-to-file rule are met, any further inquiry into the equities of this case is inappropriate by this Court.

## III.    STAYING THIS CASE IS NOT APPROPRIATE

While it is true that a second filed court has the ability to transfer, dismiss, or stay a case in which the first-to-file rule has been found applicable, Elite is requesting that this case be stayed for reasons unsupported by the first-to-file rule.

When a court determines that the first-to-file rule is applicable to a particular case, inherent in that determination is the existence of a duplicative suit already pending in another jurisdiction. As a result, a great number of second filed courts that have decided to stay the second filed case have done so for two primary reasons. **First**, a stay has been granted when dismissal or transfer of the case would jeopardize the rights of one of the parties to the second filed case. **Second**, a stay is appropriate to permit the first filed court to examine the equities of the case to rule on whether an exception to the first-to-file rule applies. Here, neither of these situations is present. Instead, what is present is a valid, duplicative cause of action pending in the district court for the Southern District of New York. Because there is no justification under the first-to-file rule to stay this case, it should be transferred to New York or dismissed altogether. Further, and outside the context of the first-to-file rule, this Court should refuse to use its inherent power to stay this case because to do so would reward Elite's improper forum and judge shopping.

### A.    Elite Has Failed to Establish That This Case Should Be Stayed Pursuant to the First-to-File Rule

As noted above, two primary scenarios exist under the first-to-file rule where a second filed court will issue a stay: to preserve the rights of the parties or to allow the first filed court to

consider the equities.  Because there is absolutely no harm that would befall Elite if this case were transferred or dismissed, and because Elite has failed to bring the equities of this case before the first filed court in New York, a stay pursuant to the first-to-file rule is not appropriate. Again, and as discussed more fully below, this is an approach that is supported by each of the three cases cited by Elite in its Response where Elite attempts to argue that a stay should be granted by this Court.  (Response, pp. 24-25.)

### 1.    Second Filed Courts Can Issue a Stay to Protect the Rights of the Parties

Many of the second filed courts that have issued a stay pursuant to the first-to-file rule have done so to allow the first filed court to make a decision as to whether an exception to the first-to-file rule applies by examining equitable considerations.  Elite cites three cases in support of its argument that this Court should grant a stay.  (Response, pp. 24-25) (citing Central States, Southeast and Southwest Areas Pension Fund v. Paramount Liquor Co., 203 F.3d 442, 444 (7th Cir. 2000); Alltrade, 946 F.2d at 628; Portfolio Technologies, Inc. v. Intellx, Inc., 2005 WL 1189604, *3 (W.D. Mich.)).  **In actuality, what each of these three cases stand for is the proposition that a stay is appropriate when necessary to protect the rights of the parties**.

For example, in Central States, the dispute centered on the appeal of an arbitrator's ruling.  203 F.2d at 443.  Paramount Liquor Co. filed its complaint in the Eastern District of Missouri, and later that same day Central States filed a complaint in the Northern District of Illinois.  At the district court level, the second filed court dismissed the action based upon the first-to-file rule.  Id.  However, the appellate court disagreed that dismissal was appropriate due to the fact that dismissal of the second filed suit subjected Central States to potential prejudice due to the fact that any appeal of an arbitrator's decision must be filed within 30 days of that decision.  Id. at 444.  Upon dismissal of the second filed case, Paramount Liquor had the option

of waiting until the 30 day period had expired, and then dismissing its first filed case in Missouri – effectively preventing Central States from litigating its claims. Id. The court noted that a stay is more appropriate than dismissal because "[Central States'] position is that the Illinois action should have been kept alive to ensure that [Central States] would not forfeit its opportunity to obtain substantive review of the arbitrator's award." Because a stay was necessary to protect the rights of one of the parties, that remedy was more appropriate than dismissal. Id. However, it should be noted that the court in Central States went on to state that "**[o]utright dismissal is most likely to be appropriate when . . . the same party has filed all of the suits.**" Id. (emphasis added) (Elite filed both Elite I and Elite II).

Similarly, Alltrade also involved a second filed court that found a stay was necessary to protect the rights of the parties before it. 946 F.2d at 628-29. In that case, there was a pending dispute in the first filed court of Florida as to the extent of Florida's jurisdiction to review an appeal from the Trademark Trial and Appeal Board. Id. at 623-24. The court noted that Alltrade, Inc., which was the defendant in the first filed case and the plaintiff in the second filed case, would perhaps run into statute of limitations problems if the second filed case were to be dismissed and, subsequently, the first filed case was ultimately dismissed for lack of jurisdiction. Id. at 629. To ensure that Alltrade, Inc. would be capable of asserting its claims, the second filed court ruled that the case before it should be stayed pending the Florida court's determination of jurisdiction over the first-filed case. Id. Thus, it was the expectation of potential prejudice to one of the parties that warranted the granting of a stay. Id.

Finally, Elite's reliance on Portfolio Technologies, Inc. is similarly misplaced, as that decision also stands for the appropriateness of a stay in situations where the rights of a party could be prejudiced by dismissal. 2005 WL 1189604, *3. In noting that the Portfolio

Technologies, Inc. ("Portfolio") brought both the first and second filed actions,[3] the second filed

court in Portfolio soundly rejected any ability by that party to litigate its action in a second court

after first commencing a duplicate action elsewhere:

> What is clear is that Portfolio, which chose the New Jersey forum for the first-filed case, is in no position to complain of prejudice or tactical advantage from merely being obliged to conclude what it began in that forum before involving another federal court in a dispute involving the same patent and product, if not the same parties.

Id. at *5.  The second filed court recognized, however, that Portfolio "may not be able to control

precisely the speed with which [the first filed case] will proceed."  Id.  Because of that, a stay

was entered until the resolution of the first filed case, with the caveat that if it is shown that "the

proceedings in [the first filed case] are delayed beyond Portfolio's control, this court will

consider a motion to modify the stay."   Id.   The court in Portfolio was concerned that the

plaintiff's inexcusable delay in proceeding with its litigation in the first filed court could lead to

problems when the plaintiff attempted to resume that lawsuit.  As such, the second filed court

granted a stay to ensure that the plaintiff's rights were protected.

In the present case, however, there will be no prejudice to Elite upon the dismissal or

transfer of this second filed case to the Southern District of New York.  CCSI has previously

indicated that for the purposes of this action it would waive any objection to the extent available

to personal jurisdiction and venue in the Southern District of New York, so upon dismissal, Elite

could easily amend its complaint in Elite I and add CCSI as a party-defendant.[4]  Moreover, a

---

[3] In actuality, two prior cases, both filed by Portfolio, were currently pending in the first filed forum, and the court in Portfolio was addressing the third filed case.  2005 WL 1189604, *3.  However, because both prior actions were pending in the same first filed jurisdiction, and because the authority of a subsequent court remains the same whether it is the second or third filed court, the court in Portfolio will be referred to as "the second filed court" for simplicity.

[4] Upon dismissal and/or transfer of Elite II to the Southern District of New York, CCSI stipulates that for the purposes of statute of limitations for the claims asserted against CCSI in the Elite II Complaint, the date of April 7, 2006, the date of the filing of the Elite II Complaint, will be the date of the commencement of the lawsuit.

transfer of this case to New York would certainly result in no prejudice, would serve the interests of judicial economy by stopping two federal courts from expending resources on duplicitous litigations, and would alleviate the increased litigation expenses that Elite has heaped upon CPSI and CCSI by forcing the defense of the same claims in two different lawsuits in New York and Tennessee.

### 2. Second Filed Courts Can Issue a Stay to Permit the First Filed Court to Consider the Equities of the Case

The second primary reason that a stay is appropriate under the first-to-file rule is in circumstances where the first filed court examines equitable considerations to determine if an exception to the first-to-file rule applies. As noted by Elite in its Response, "[e]quitable considerations are based on all the relevant facts and circumstances, and they include such factors as anticipatory filing, bad faith, inequitable conduct, forum shopping, special or extraordinary circumstances, and the balance of convenience." (Response, p. 10.); see also Portfolio Technologies, Inc. v. Intellx, Inc., 2005 WL 1189604, *4 (W.D. Mich.) (noting "exceptions to the first-to-file rule are rare" but could be found in cases of bad faith, forum shopping, anticipatory races to the courthouse, and convenience of the parties); Daimler Chrysler Corp. v. General Motors Corp., 133 F. Supp. 2d 1041, 1044 (N.D. Ohio 2001) (issuing a stay so the first filed court could address the equities).

**However, Elite has not requested that the New York court examine any equitable considerations. Nor is it expected that Elite will bring that issue before the New York court, as it is unlikely Elite will argue that its own complaint filed against CPSI in Elite I was an anticipatory filing, made in bad faith or due to inequitable conduct, or was the product of forum shopping.** It is also unlikely, though given Elite's posturing over the past year not entirely impossible, that the New York court will be asked to consider the balance of convenience because

this Court has already issued a ruling on that issue.  What Elite has done is to start the process of dismissing its case in the first filed forum.  The fact that such a motion is pending does not change the appropriateness of applying the first-to-file rule, nor does it diminish the necessity of preserving judicial economy by having the same court rule on all issues these two duplicative actions.

**B.**     **Use of This Court's Inherent Power to Stay Would Condone the Inequitable Acts of Elite**

While a district court does have an inherent power to stay cases on its docket, this is a power that should be used sparingly, because "[a]lthough a district court has the power to stay proceedings, 'the court must tread carefully in granting a stay of proceedings, since a party has a right to a determination of its rights and liabilities without undue delay.'" Ferrell v. Wyeth-Ayerst Laboratories, Inc., 2005 WL 2709623, *1 (S.D. Ohio 2005) (quoting Ohio Envtl. Council v. U.S. Dist. Ct., 565 F.2d 393, 396 (6th Cir.1977)).  In deciding whether use of its inherent power to stay is appropriate, courts typically examine three factors: [1] the need for a stay, [2] the balance of potential hardship to the parties and the public, [3] and the promotion of judicial economy.  Ferrell, 2005 WL 2709623 at *1.  None of these three factors can be met in this case, and each actually weighs against the granting of a stay.

**First**, there is no need for a stay to be entered in this case, as there is a pending duplicative case before a sister court (which this Court has already determined to be the appropriate forum for Elite's claims).  The United States District Court for the Southern District of New York is fully capable of handling this case, so the need for a stay is nonexistent.  **Second**, there is a very real potential for hardship to the parties.  Specifically, if this Court issues a stay and the New York action is subsequently dismissed, then the potential could exist for Elite to amend its Complaint here to add CPSI as an additional defendant.  Such a course of action would

not only rob CCSI and CPSI of the benefit of this Court's earlier rulings, but would effectively allow Elite to circumvent Judge Collier's previous order.  **Finally**, judicial economy would be better served by preventing Elite from continuing on its current wasteful path of filing duplicate lawsuits in multiple jurisdictions, which amounts to nothing more than blatant forum shopping, and having one court hear all cases.  In order to prevent the gamesmanship employed by Elite, and similar future abuses, this Court should refuse to reward Elite by staying this case.

IV.    **AN EXAMINATION OF THE EQUITIES DOES NOT SUPPORT NEGATING THE FIRST-TO-FILE RULE.**

As established above, an examination of the equities to determine if an exception to the first-to-file rule exists is properly within the jurisdiction of the first-filed court in the Southern District of New York.  **Thus, an analysis of the equities is irrelevant to this Court's ruling on CCSI's Motion to Transfer or Stay**.  However, it should be noted that the equities heavily favor CCSI in this case.  Elite goes to great lengths to paint itself as the disadvantaged, trampled upon party in this case when, in actuality, every increase in litigation expense as well as waste of judicial resources stems from Elite's unending attempts to have its cause of action heard by a Tennessee court.

A.    **Questionable Tactics Employed By Elite**

While represented by counsel, Elite voluntarily entered into the Master Services Agreement with CPSI on April 9, 2003, for the purpose of providing funding for medical procedures that were not otherwise covered by insurance.  (Elite I Amended Complaint, attached hereto as Exhibit A, ¶¶ 9-20.)  That Agreement contained a forum selection clause mandating that the Borough of Manhattan, New York was the exclusive forum to litigate any disputes arising from or relating to the Agreement.  Instead of adhering to its contractual obligations, Elite opted to file its cause of action against CPSI in Tennessee state court.  As a result of this

unnecessary and unauthorized action, CPSI was required to spend several months at substantial expense to remove the case to federal court and then have the case transferred to the agreed upon jurisdiction of New York.

However, dissatisfied with the results of Judge Collier's ruling, Elite chose not to move to amend its Complaint to add CCSI as a party in the New York litigation; rather, Elite almost immediately filed a second duplicative lawsuit in Tennessee against CCSI, an affiliate of CPSI. Elite filed a separate cause of action in Tennessee **even though its Complaint against CCSI included allegations of wrongdoing against both CCSI and CPSI**[5].

Further, in an apparent attempt to avoid a ruling similar to the one issued by Judge Collier in Elite I, Elite omitted any mention of the prior, related case on the civil cover sheet submitted in this action. Eastern District of Tennessee Local Rule 3.1 states that "If any related case has previously been filed, counsel shall call it to the court's attention in the 'Remarks' portion of the civil cover sheet." Not only did Elite shirk its obligation, but it made no mention in its Response as to its excuse for omitting this information.

Now, despite this blatant posturing, Elite accuses CCSI of engaging in derivative forum shopping, attempting to "maximize the burden and expense of litigating," and of attempting to "strip from its opponent Elite any choice of forum." (Response, pp. 16, 17.) With regard to the allegation that CCSI is trying some form of derivative forum shopping, this was shown to be without merit in Section II.B.2, *supra*. Moreover, it is difficult to understand how CCSI's request that Elite's claims be heard before the contractually agreed upon forum – and the forum

---

[5] Elite has now identified a third related Citi-entity, Citicorp Credit Services, Inc., which it alleges in its Response had employees who participated in negotiations in April, 2003 with Elite. (Response, p. 6). Citicorp Credit Services, Inc. maintains its principal offices in New York. It would appear that the only reason Elite has refrained from suing Citicorp Credit Services, Inc. **at this time** is to artificially sculpt the landscape for this Court to view. In other words, instead of litigating its claims, Elite continues to engage in all out gamesmanship.

designated by this Court as the appropriate court to resolve Elite's claims – can be any type of forum shopping.

Nor does Elite's allegation that CCSI is trying to "maximize the burden and expense of litigation" make much sense. Elite questions why CCSI would prefer to litigate this case in New York, but fails to grasp the fact that the litigation expenses for both CCSI and CPSI have been greatly increased by Elite's refusal to litigate its claims in the proper forum. Both CCSI and CPSI merely seek to put an end to the never ending attempts by Elite to litigate in a forum other than the one that was contractually agreed upon. Instead of attempting to "strip" Elite of its choice of forum, CCSI and CPSI are simply asking that the dispute be litigated in the exclusive forum agreed upon by Elite. Courts have noted that when a party signs a contract that includes a forum selection clause, that party can be deemed to have made its choice of forum. See, e.g., Detroit Coke Corp. v. NKK Chem. USA, Inc., 794 F. Supp. 214, 219 (E.D.Mich.1992) (noting that "[the plaintiff] made its 'choice' of forum when it signed the Agreement which contained the forum selection clause.").

Finally, Elite's gamesmanship is not limited to its actions in the Eastern District of Tennessee. Elite's Motion for Voluntary Dismissal **Without Prejudice** filed in the Southern District of New York in Elite I is just another example. Elite does not seek dismissal with prejudice in New York; rather Elite seeks a dismissal without prejudice, so that it can preserve it's right to refile its claims against CPSI, presumably in Tennessee (and presumably as part of this case), if this case were to continue here. Elite's basis for the dismissal of the New York action is its unwarranted claim that CPSI is a "shell entity". This grandiose, and wholly unsupported, assertion is purportedly based upon some undefined "investigation" conducted by Elite and made solely for the purpose of forum shopping – otherwise Elite would have sought a

dismissal WITH prejudice in New York.  On the contrary, the readily available public records from the internet, cited in collective Exhibit C, demonstrate that CPSI is a fully active Delaware corporation doing business with such global giants as Microsoft and First Data.  In 2003 CPSI and Microsoft extended their collaboration to offer certain retailers credit card processing services.  In 2005 CPSI and First Data Merchant Services entered into an alliance to offer enhanced electronic commerce and payment services to merchants.  In 2006 the Office of the Comptroller of Currency, ("OCC"), approved the application of Citibank, National Association ("CBNA") to contribute three of its subsidiaries to Citibank (South Dakota), N.A. ("CBSD").  In this transaction approved by the OCC, CBSD acquired both CCSI and CPSI as operating subsidiaries.  This is not the picture of a shell company; this is the picture of an active company fully engaged in business activities.

Elite's request to dismiss the New York litigation without prejudice demonstrates the true purpose of that motion – Elite wants to terminate the New York litigation and then, deep into the litigation in Tennessee, add CPSI as a party, once it "discovers" that CPSI is in fact an active company doing business.  The Court should not reward Elite's overt gamesmanship, and this Court should grant CCSI's Motion to Transfer or Dismiss.

### B.    CCSI Is Entitled to Enforce the Forum Selection Clause against Elite

The Master Services Agreement contains the following forum selection clause:

This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York applicable to contracts executed in and to be performed in that State.  All actions and proceedings arising out of or relating to this Agreement shall be heard and determined exclusively in any New York state or federal court sitting in the Borough of Manhattan.  The parties hereto (a) submit to the exclusive jurisdiction of any state or federal court sitting in the Borough of Manhattan for the purpose of any action or proceeding arising out of or relating to this Agreement brought by any party hereto, and (b) irrevocably waive, and agree not to assert by way of motion, defense, or otherwise, in any such action or proceeding, any claim that it is not subject personally to the jurisdiction of the

above-named courts, that its property is exempt or immune from attachment or execution, <u>that the action or proceeding is brought in an inconvenient forum</u>, <u>that the venue of the action or proceeding is improper</u>, or that this Agreement or the transactions contemplated by this Agreement may not be enforced in or by any of the above-named courts.

(Agreement, § 10.09, attached hereto as <u>Exhibit D</u>) (emphasis added). In its Response, Elite infers that because CCSI was not a party to the Agreement, CCSI cannot enforce the forum selection clause against Elite. (<u>See</u> Response, p. 14.) Such inference is misleading. In <u>American Patriot Insurance Agency, Inc. v. Mutual Risk Management, Ltd.</u>, 364 F.3d 884 (7th Cir. 2004), the plaintiff sued a non-signatory for fraud arising out of reinsurance contracts between plaintiff and defendant's affiliates. Defendant, a non-signatory, moved to dismiss for improper venue based on the application of a forum selection clause contained in the reinsurance contracts. The Seventh Circuit upheld the district court's dismissal and ruled that the non-signatory defendant could enforce the forum selection clause against the plaintiff:

> These are really the same argument, and amount to saying that a plaintiff can defeat a forum-selection clause by its choice of provisions to sue on, of legal theories to press, and of defendants to name in the suit. If this were true, such clauses would be empty. It is not true. . . . Nor is a forum-selection clause to be defeated by suing an affiliate or affiliates of the party to the contract in which the clause appears, or employees of the affiliates.

<u>Id</u>. at 888-89. The inference in Elite's Response is the same losing argument made by the plaintiff in <u>American Patriot</u>. Elite cannot avoid the application of the forum selection clause by simply suing CCSI, a non-signatory affiliate of CPSI, the signatory to the Agreement.

A similar result was reached in <u>Vartac Telecom, Inc. v. BCE Inc.</u>, where the court held that the non-signatory defendants were entitled to enforce the forum selection clause against the plaintiff under the doctrine of equitable estoppel. 2003 WL 22364302 (N.D. Texas 2003). The court began by noting the similarities between forum selection clauses and arbitration clauses – which was relevant to its decision because of precedent stating that a non-signatory can enforce

an arbitration provision against a signatory.  Id. at *2 ("arbitration clauses are a subset of forum selection clauses and . . . 'there is very little difference between the two.'") (quoting Haynsworth v. The Corporation, 121 F.3d 956, 963 (5th Cir.1997)).  The Vartac court ultimately found that case law regarding the enforceability of arbitration clauses applies with equal force to forum selection clauses.  Id.  Thus, the test for a non-signatory enforcing a forum selection or arbitration clause against a signatory was set forth as follows:

> Under the doctrine of equitable estoppel, a nonsignatory may compel arbitration in two circumstances: (1) when a signatory to a written agreement must rely on the terms of the written agreement in asserting its claims against the nonsignatory, or (2) when a signatory to the contract raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract.

Id.  The court found that both prongs of the test were met and ruled that the defendants, even though they were non-signatories to the contract containing the forum selection clause, were entitled to enforce that forum selection clause against the plaintiff.  Id.

In the present case, Elite has "raised allegations of substantially interdependent and concerted misconduct" on the part of CCSI and CPSI.  In its Complaint, Elite brings a cause of action for civil conspiracy and alleges that CCSI and CPSI conspired together to defraud Elite.  (See ¶¶ 35 - 39, Count IV – Civil Conspiracy, Elite II Complaint.)  Based upon precedent from Sixth Circuit courts, "**when a party alleges that a nonsignatory engaged in a conspiracy with a signatory, the nonsignatory may compel arbitration**."  Kruse v. AFLAC Intern., Inc., 2006 WL 2692734, *5 (E.D. Ky.) (emphasis added).  There is no material analytical difference in a non-signatory party enforcing either an arbitration provision or a forum selection clause against a signatory.  The analysis is the same.  Thus, the fact that Elite has raised allegations of civil conspiracy against CCSI and CPSI entitles CCSI to enforce the forum selection clause against Elite – a court in the Borough of Manhattan, New York.

Furthermore, Elite agreed to irrevocably waive, and not to assert by way of motion, defense, or otherwise, [1] that the action or proceeding is brought in an inconvenient forum, or [2] that the venue of the action or proceeding is improper.  (See Agreement, § 10.09.)  Elite is estopped from now arguing that New York is an inconvenient or improper forum.

Elite expressly agreed that the Borough of Manhattan in New York was the exclusive forum to resolve all disputes arising from or relating to the Agreement[6].  There is no doubt that the Agreement is at the very heart of this lawsuit, so Elite has reneged on its agreement by filing this action in the Eastern District of Tennessee.  Such behavior should not prevail.

## V.    THE DOCTRINE AGAINST CLAIM SPLITTING DOES BAR ELITE'S CLAIMS

In its Response, Elite is simply wrong when it states to this Court that the prohibition against claim splitting as applied to concurrent cases is "foreign to Tennessee and the Sixth Circuit."  (Response, p. 24, n. 9.)  In reality, and as pointed out in CCSI's Motion, federal courts within the Sixth Circuit have indeed noted a prohibition against allowing a plaintiff to split its causes of action into separate, simultaneous lawsuits.  Niemi v. NHK Spring Co., Ltd., 2006 WL 1156555, *5 (E.D. Mich.) (cited in CCSI's Memorandum of Law in Support of Motion to Dismiss or Transfer, p. 21-22); see also Dana Corp. v. Fireman's Fund Ins. Co., 169 F. Supp. 2d 744, 747 (N.D. Ohio 1999) (noting that plaintiff who was bringing multiple simultaneous actions in different forums was engaged in claim splitting).

For example, the court in Niemi noted that, in an earlier related case, the plaintiff instigated suit against two defendants in Michigan federal court.  2006 WL 1156555 at *1.  The earlier court found that jurisdiction over one of the defendants was lacking and therefore

---

[6] See p. 12 of CCSI's Memorandum of Law in Support of this Motion (Court File No. 6), where CCSI demonstrates, beyond any doubt, that Elite's allegations in this matter arise out of or relate to the Master Services Agreement: "For example, in the Elite II Complaint, both CCSI and CPSI:  . . . '[E]ngaged in an unfair and deceptive course of conduct which frustrated the purpose of the Agreement . . . .' (Complaint, ¶ 11.); and '[C]onspired together to take away Elite's business without just compensation.' (Complaint, ¶ 11.)." (emphasis added).

transferred the case to the Northern District of Ohio.  Id.  While that lawsuit was pending in Ohio federal court, the same plaintiff filed a lawsuit giving rise to Niemi against "substantially identical parties and asserting substantially similar allegations."  Id.  The court ultimately transferred the case to federal court in Ohio, where the earlier related case was pending.  Id. at *6.  As a basis for the transfer, the court noted that "this action certainly could – and should – have been brought [in the earlier related case] . . . . Indeed, the Sixth Circuit generally disfavors claim-splitting, which has become the end effect of Plaintiff's behavior."  Id.  The fact that the related case was still pending and in a different court did not prevent the court from characterizing the plaintiff's actions as disfavored "claim splitting."  Id.  Similarly, the court in Dana Corp. was forced to issue an injunction to prevent the same litigant from filing multiple, simultaneous lawsuits in different jurisdictions.  169 F. Supp. 2d at 747.  These "efforts at claim-splitting (which [the opposing party] not inaccurately describes as 'litigation terrorism')" are what led to the injunction against future filings on the basis that "wasteful, expensive and duplicative litigation is irreparable harm."  Id.  The court went on to note that this injunction was upheld by the Sixth Circuit.  Id.

On the basis of Niemi and Dana Corp. alone, it is hard to state that prospective claim splitting is a doctrine foreign to the Sixth Circuit.  In fact, the same principles behind the prohibition against wasteful, duplicative cases seen in the first-to-file rule also apply to the doctrine preventing claim splitting.  The claims asserted by Elite in this case are ones that could, and should, have been brought in the currently pending New York action.  Moreover, by following Elite's interpretation of claim splitting as applied only to final judgments, this Court would be condoning a "race-to-the-finish" theory, where simultaneous related cases in different jurisdictions would be permissible, and whichever case is completed first would then serve to

negate the other case under *res judicata*.  Such a result is not to be endorsed, and Elite's attempts to split its claims between federal courts in New York and Tennessee should not be permitted.

**VI.    <u>CONCLUSION</u>**

Elite has impermissibly and unnecessarily increased the expense of litigation and wasted this Court's resources by filing a lawsuit that should have been brought in the Southern District of New York.  The first-to-file rule prohibits this case from proceeding in the Eastern District of Tennessee – when a duplicative action is pending in another federal court, the second filed court should refuse to exercise jurisdiction and instead transfer, dismiss, or stay the case before it. This Court should dismiss or transfer this case, as a stay would only serve to condone the forum and judge shopping taken by Elite to this point.  Further support for this Court's refusal to hear this case is found in the doctrine against claim splitting – a doctrine which seeks to avoid the very type of burdens that Elite has foisted upon CCSI and this Court in the form of increased expenditures of resources simply to make Elite follow its contractual obligations.  As such, this Court should transfer this matter to the Untied States District Court for the Southern District of New York, or dismiss the case altogether, pursuant to the first-to-file rule and/or the doctrine prohibiting claim splitting.

Respectfully Submitted,

BAKER, DONELSON, BEARMAN,
  CALDWELL & BERKOWITZ, P.C.


By: _ s/ Joshua A. Powers _____
      Joshua A. Powers (BPR # 15639)
      John M. Phillips (BPR #21639)
1800 Republic Centre
633 Chestnut Street
Chattanooga, TN  37450-1800

*Attorneys for Defendant, Citicorp Credit*
*Services, Inc. (USA)*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on <u>November 10, 2006</u>, a copy of the foregoing Motion to Dismiss or Transfer was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  All other parties will be served by regular U.S. Mail and Certified Mail, Return Receipt Requested.  Parties may access this filing through the Court's electronic filing system.

<div style="margin-left: 40%;">

Donald J. Aho, Esq.
Robert F. Parsley, Esq.
Miller & Martin PLLC
1000 Volunteer Building
832 Georgia Avenue
Chattanooga, TN  37402


  s/ Joshua A. Powers

</div>