UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| ELITE PHYSICIAN SERVICES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:06-CV-86 |
| | ) | |
| v. | ) | *Mattice/Carter* |
| | ) | |
| CITICORP CREDIT SERVICES, INC. (USA), | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY IN SUPPORT OF
ITS MOTION TO DISMISS OR TRANSFER**

# Defendant's Exhibit A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| ELITE PHYSICIAN SERVICES, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 1:05-CV-344 |
| vs. ) | |
| ) | |
| ) | Chief Judge Collier/ |
| CITICORP PAYMENT SERVICES, INC., ) | Magistrate Judge Carter |
| ) | |
| Defendant. ) | |

### FIRST AMENDED COMPLAINT

The Plaintiff, Elite Physician Services, LLC ("Elite"), states as follows as its first amended complaint against the Defendant Citicorp Payment Services, Inc. ("Citicorp"):

### PARTIES

1.  Elite is a Tennessee limited liability corporation with its principal place of business in Chattanooga, Tennessee. Elite is also a "legitimate business enterprise" and a "person" as defined and described in the Tennessee Consumer Protection Act ("T.C.P.A."), T.C.A. §§ 47-18-102 and 103(9).

2.  Citicorp is a Delaware corporation with its principal place of business located in Deerfield, Illinois. As further described below, Citicorp is a corporation engaged in the sale and distribution of products and services of the nature provided to Elite in connection with its commercial relationship with Elite.

### JURISDICTION AND VENUE

3.  This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332. Venue is properly laid in this judicial district under 28 U.S.C. § 1391 and T.C.A. §§ 47-18-109(a)(2) and 113.

## FACTUAL BACKGROUND

4. This case involves a course of deceptive and unfair commercial conduct by Citicorp in connection with its offer to provide and its provision of services to Elite in the context of the patient financing services program discussed below. Before and after contracting with Elite, Citicorp engaged in a series of unfair and deceptive acts affecting trade and commerce with the undisclosed purpose and effect of taking Elite's business enterprise for its own benefit without just compensation. This deceptive and unfair commercial conduct includes, but is not limited to, false representations to Elite which were made by Citicorp representatives to induce Elite to enter into and to maintain a business relationship with Citicorp. The deceptive and unfair acts affecting trade or commerce of which Elite complains involved the sale and distribution of services, products, and other property to Elite in violation of the T.C.P.A., T.C.A. § 47-18-101, et seq. Many of the acts complained of occurred in Tennessee. Citicorp's wrongful commercial conduct caused injury to Elite in Tennessee.

5. Prior to and during 2003, Elite built a successful business in the health-care-services patient financing industry. As a health-care-services patient financing company, Elite offered credit services to health-care providers which enabled consumers to finance certain health-care procedures that were not covered by insurance. For example, Elite's programs allowed consumers to finance certain hearing-related and cosmetic surgery procedures as well as other health-care procedures. In developing this business, Elite forged numerous valuable relationships with health-care organizations and health-care providers who benefited from the financing program and promoted it to patients. By 2003, Elite had built its enterprise to the point where it had over $20 million in annual sales.

6. In 2002, Elite was approached by Citicorp with a business opportunity relating to the sale and distribution of patient financing services and products. Citicorp asked Elite to enter into a long-term, exclusive relationship in which Elite would continue to sell and distribute products and services in the patient financing industry in conjunction with Citicorp. Specifically, Citicorp proposed that Citicorp and Elite cooperate to develop and to promote the sale and distribution of a health-care patient financing program and product known as the "Citi Health Card." As part of its regular business activities, Citicorp enters into agreements and commercial relationships with companies like Elite for the purpose of engaging them to promote Citicorp's products and services. As proposed by Citicorp, the Citi Health Card program would combine the globally recognized "Citi" name and Citicorp's mammoth financing resources with Elite's experience in new account acquisition and support in health-care financing to allow them to dominate the health-care patient financing industry.

7. In discussions with Elite's representatives, Citicorp's agents repeatedly represented that, to execute the proposed plan, Citicorp was capable of providing and would provide to Elite the highest quality advertising, marketing, and transaction-processing support and services available in the industry. Citicorp representatives described in detail how Citicorp's vast resources and newly developed telephone information processing capabilities would enable Citicorp and Elite to overwhelm the competition in the developing health-care patient financing industry. Citicorp represented that through combining Elite's business model and contacts with Citicorp's "world class" capabilities, the companies would increase sales to over $1.4 billion within five years. Elite fully and justifiably relied on these representations. For example, based on its reliance on Citicorp's representations, Elite bypassed other business opportunities which would have allowed Elite to expand its business through relationships with other parties. The

health-care patient financing services market was a nascent and growing market when Elite and Citicorp began their relationship, and the market has continued to grow dramatically.

8. As part of their discussions, representatives of Citicorp and Elite engaged in negotiations that contemplated a services agreement under which they were to provide services to one another in order to promote the Citi Health Card program. As part of these discussions, Citicorp submitted a draft agreement it had prepared which contained a provision purporting to allow Citicorp to terminate the agreement "at any time and for any reason not otherwise included" in the agreement. When Elite's representatives, Dr. Keith Dressler and Mr. Mike Salisbury, discussed this provision with Citicorp's representatives, they were assured that Citicorp would terminate Elite under the "any reason" provision only if Citicorp decided to leave the patient financing industry. Unbeknownst to Elite's principals, Citicorp's representations concerning the circumstances under which the "any reason" provision would be used were misleading, false, and unfair. Elite relied upon these representations and was induced into entering the relationship with Citicorp by these and other false representations to Elite which Citicorp made concerning its provision of advertising, marketing and transaction-processing support services to Elite.

9. Relying on the foregoing representations by Citicorp, Elite entered with Citicorp into a Master Services Agreement (the "Agreement") dated April 9, 2003, under which Elite and Citicorp agreed to develop and promote the Citi Health Card program. The program was intended to enable a large volume of consumers to easily and quickly finance various health-care procedures not typically covered by insurance, including but not limited to dental, orthodontic, vision, and hearing-related procedures. Under the Agreement, both Elite and Citicorp agreed to assume certain rights and obligations and to provide certain services to one another. In

particular, Citicorp agreed to provide Elite with the services and products necessary to implement the Citi Health Card program, including, but not limited to, marketing support and access to Citicorp's vast strategic resources.

10. Elite at all times performed its obligations under the Agreement in good faith.

11. Despite Elite's performance of its obligations under the Agreement, agents of Citicorp engaged in an unfair and deceptive course of conduct which frustrated the purpose of the Agreement by failing to provide the services Citicorp agreed to provide to Elite. In so doing, Citicorp thwarted Elite's performance while taking the opportunity to learn the industry and to use Elite's business model to introduce the Citi Health Card.

12. After entering into the Agreement, Citicorp continued to falsely represent and promise to Elite that it would provide Elite with particular high-quality advertising, marketing, and transaction-processing products and services. Despite these promises and representations, Citicorp deceptively and unfairly provided products and services to Elite which were of a substantially inferior quality or failed to provide any products or services at all. In particular, at all times relevant, Citicorp falsely promised to Elite's top management, Dr. Keith Dressler, Mr. Michael Salisbury and Mr. Stephen Tees, that as part of the marketing support services provided to Elite Citicorp would implement a world-class, difference-making, automated telephone processing system ("Phone Terminal") that would be used by Elite to train and support health-care provider personnel. These services to be provided by Citicorp were at all times a relevant part of the strategic resources and marketing support services to be provided to Elite by Citicorp. Elite justifiably relied on these promises in its effort to promote and distribute the Citi Health Card. Instead, Citicorp implemented an inadequately tested, unreliable, unstable, and difficult-to-use telephone processing system that failed to perform as promised.

13. Another element of the marketing support services which Citicorp unfairly and deceptively promised to provide to Elite to enable it to market the Citi Health Card was "highly trained" Citicorp customer service personnel located in Gray, Tennessee. Contrary to Citicorp's representations, such support service was inadequately provided. Failures of the Phone Terminal caused many calls to be transferred to customer service representatives of Citicorp who were either unaware of the Citi Health Card program or inadequately trained to provide a reasonable level of service. Such poor service caused dissatisfaction among health-care providers and caused a great many of them to discontinue their participation in the program. Despite the system's failure, Citicorp unfairly neglected or refused to take the steps necessary to correct the problems it had created and falsely represented that the system was working properly.

14. Additionally, as part of its market support services Citicorp provided Elite with a brochure for distribution to patients/consumers by health-care providers but failed to include on the brochure the toll-free telephone number for credit applications even though telephone applications made directly by consumers was a planned method for sales. The failure to include the telephone number rendered the brochure virtually useless to potential telephone applicants.

15. Another marketing support service that Citicorp falsely promised and represented that it would provide to Elite to enable it to promote patient financing services was an electronic point of sale terminal designed to allow health-care providers to efficiently process sales. Although Citicorp orally represented and agreed in negotiations before execution of the Agreement that it would provide this marketing support service by August 1, 2004, Citicorp failed to do so. In fact, Citicorp withheld and never provided Elite with this important marketing support service prior to its wrongful termination of Elite.

16. In addition, after entering into the Agreement and as part of the marketing support services Citicorp was to render to Elite, Citicorp falsely promised to provide Elite with marketing support materials such as processing manuals for Citicorp's Phone Terminal. Elite was to use these manuals to train health-care providers in using Citicorp's Phone Terminal. However, Citicorp unfairly failed to provide manuals that addressed certain critical procedures.

17. Elite asserts that Citicorp was capable of providing Elite with the high-quality services and products which Citicorp represented it would provide to Elite and which were essential to the success of the program, yet Citicorp unfairly and deceptively failed to do so.

18. Elite repeatedly requested Citicorp to provide it with the services and products which conformed to Citicorp's representations, promises, and obligations. Citicorp acknowledged many deficiencies in its performance; yet instead of timely correcting identified deficiencies, Citicorp redirected Elite to focus its efforts on "new initiatives" and falsely and unfairly promised it would provide other services which would carry out the purposes of the Agreement. Elite relied on these representations which fraudulently concealed Citicorp's unfair and deceptive course of conduct. Notwithstanding its representations, Citicorp never adequately corrected the deficiencies in its performance or provided other promised services.

19. By thus unfairly and deceptively failing to provide the services it said it would provide and frustrating the purpose of the Agreement while Elite continued to perform, Citicorp not only caused catastrophic financial injury to Elite but also caused Elite's reputation within the health-care-services patient financing industry to be irreparably damaged.

20. Citicorp maintained its unfair and deceptive conduct long enough to enable Citicorp to take unfair advantage of Elite's good faith performance. On or about May 10, 2005, and contrary to its representations, Citicorp abruptly and unfairly informed Elite that it was

terminating its relationship with Elite. The mechanism by which Citicorp terminated its relationship with Elite was the termination for "any reason" provision referred to above which purportedly allowed Citicorp to terminate the Agreement "at any time and for any reason not otherwise included" in the Agreement. However, as set forth above, Citicorp falsely represented to and agreed with Elite both before and after execution of the Agreement that this open-ended termination provision was to be used only in the event that Citicorp chose to discontinue its participation in the patient financing industry. As part of its unfair and deceptive conduct, Citicorp has invoked this termination provision even though it has not discontinued its participation in the industry. Since terminating its relationship with Elite, Citicorp has continued to market the Citi Health Card.

21. It was only upon this termination of the relationship that Elite became aware of Citicorp's deceptive and unfair strategy to take Elite's business without just compensation. Due to Citicorp's concealment of its intent to act in a manner contrary to the representations which Elite had justifiably relied upon to enter into and maintain its relationship with Citicorp, Elite could not and did not discover Citicorp's unlawful acts and practices until it was terminated by Citicorp.

22. Citicorp unfairly and deceptively used its relationship with Elite to introduce the Citi Health Card into the patient financing industry and to gain unjust benefit of Elite's industry presence and expertise in health-care patient financing sales and support. Citicorp was aware that by terminating Elite without justification it would destroy Elite as a business entity and take the business it had taken Elite years to build without compensating Elite. By acting in the unlawful manner in which it did, Citicorp did, in fact, destroy Elite as a business entity and misappropriate the business Elite had built without just compensation to Elite.

## VIOLATION OF TENNESSEE CONSUMER PROTECTION ACT

23. Elite repeats the allegations contained in Paragraphs 1 through 22 above.

24. Elite is a Tennessee person and legitimate business enterprise as defined and described in the T.C.P.A. See T.C.A. §§ 47-18-102(2) and 103(9).

25. Citicorp has engaged in unfair and deceptive acts and practices affecting the conduct of trade and commerce in violation of the T.C.P.A., including but not limited to, violations of T.C.A. §§ 47-18-102 and 47-18-104(b)(27). Furthermore, Citicorp has represented to Elite that goods or services have characteristics, uses, or benefits which they did not have in violation of T.C.A. § 47-18-104(b)(5) and has represented that goods or services are of a particular standard, quality, or grade when they were of another in violation of T.C.A. § 47-18-104(b)(7).

26. Elite has suffered ascertainable losses as a proximate result of Citicorp's unfair and deceptive acts and practices in and affecting commerce and trade, including, but not limited to, the value of Elite's business. See T.C.A. §§ 47-18-103(9), 103(11), and 47-18-109(a)(1). Elite is therefore entitled to recover actual damages from Citicorp as compensation for those losses as well as treble damages and Elite's reasonable attorneys' fees and costs. See T.C.A. §§ 47-18-109(a)(1), 47-18-109(a)(3)-(4), and 47-18-109(e)(1).

27. Under Rule 38 of the Federal Rules of Civil Procedure, Elite demands a trial by jury of its claims stated herein and in any amendment to this First Amended Complaint.

28. Elite reserves the right to further amend its Complaint to assert additional claims against Citicorp and any other person or entity that has unlawfully caused it damage.

WHEREFORE, Elite respectfully requests that this Court enter a judgment against Citicorp awarding Elite: (1) compensatory damages in an amount to be proved at trial; (2) treble

damages pursuant to T.C.A. § 47-18-109; (3) Elite's reasonable attorneys' fees and costs pursuant to T.C.A. § 47-18-109; (4) prejudgment and post-judgment interest; and (5) such other and further relief as the Court deems necessary and proper, see T.C.A. § 47-18-109(a)(3).

        Respectfully submitted,

        MILLER & MARTIN PLLC

By:   **s/Donald J. Aho**
      (BPR No. 011975)
      1000 Volunteer Building
      832 Georgia Avenue
      Chattanooga, Tennessee 37402
      (423) 756-6600 – Telephone
      (423) 785-8480 – Facsimile

      *Counsel for Elite Physician Services, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading was filed electronically on the 30th day of December, 2005. Notice of this filing will be send by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

<u>**s/Donald J. Aho**</u>
(BPR No. 011975)
1000 Volunteer Building
832 Georgia Avenue
Chattanooga, Tennessee  37402
(423) 756-6600 – Telephone
(423) 785-8480 – Facsimile