UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| ELITE PHYSICIAN SERVICES, LLC, | ) |
| | ) |
| Plaintiff, | ) No. 1:06-CV-86 |
| | ) |
| v. | ) *Mattice/Carter* |
| | ) |
| CITICORP CREDIT SERVICES, INC. (USA), | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S REPLY IN SUPPORT OF
ITS MOTION TO DISMISS OR TRANSFER**

# Defendant's Exhibit B

Philip R. Schatz (PS 6158)
Wrobel & Schatz LLP
1040 Avenue of the Americas, Suite 1101
New York, NY 10018-3703
(212) 421-8100

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

| | |
|---|---|
| ELITE PHYSICIAN SERVICES, LLC, | 1:06-cv-02447-BSJ<br>ECF Case |
| Plaintiff, | |
| -against- | **MEMORANDUM OF LAW<br>IN SUPPORT OF MOTION<br>FOR VOLUNTARY** |
| CITICORP PAYMENT SERVICES, INC., | **DISMISSAL WITHOUT<br>PREJUDICE PURSUANT** |
| Defendant. | **TO FED. R. CIV. P. 41(a)(2)** |

------------------------------------------------------------------x

Pursuant to Fed. R. Civ. P. 41, the Plaintiff, Elite Physician Services, LLC ("Elite"), respectfully requests that it be granted leave to voluntarily dismiss this action without prejudice. In support of this motion, Elite states as follows.

### I. Factual Background

Elite filed its complaint in this action in Tennessee state court on November 10, 2005. See Exhibit A (Summons and Complaint).[1] On December 9, 2005, defendant Citicorp Payment Services, Inc. ("CPSI") removed the action to the United States District Court for the Eastern District of Tennessee. See Exhibit B (Notice of Removal (E.D. Tenn. Case File No. 1)). Elite filed an amended complaint in the Eastern District on December 30, 2005. See Exhibit C (First Amended Complaint (E.D. Tenn. Case File No. 6)). On January 17, 2006, CPSI moved to transfer the action to the Southern District of New York. See Exhibit D (Motion to Transfer

---

[1] Except where indicated otherwise, cited exhibits are attached to the accompanying Affirmation of Philip R. Schatz dated October 24, 2006 ("Schatz Aff.")

Venue (E.D. Tenn. Case File No. 8)). On or about March 1, 2006, the parties exchanged initial disclosures, and on or about March 10, 2006 Elite served requests for production on CPSI. On March 17, 2006 the Eastern District Court ordered that this action be transferred to this Court. See Exhibit E (Order (E.D. Tenn. Case File No. 25); see also S.D.N.Y. Case File No. 1). Objections to Elite's requests for production were served by CPSI on or about June 5, 2006. On or about August 9, 2006, Elite served initial interrogatories on CPSI, and CPSI served its objections on September 8, 2006. See Exhibit L (Objections of CPSI to Plaintiff's First Set of Interrogatories to Defendant).

Elite entered into a Master Services Agreement with CPSI on or about April 9, 2003, under which Elite and CPSI were to work together to develop and promote the Citi Health Card program. The program was designed to provide patient financing for certain health-care procedures. See Exhibit C (First Amended Complaint) at ¶¶ 6–9. In its First Amended Complaint, Elite brought a single claim under the Tennessee Consumer Protection Act against CPSI, stating that CPSI engaged in unfair and deceptive acts and practices by which CPSI misappropriated business developed by Elite and which resulted in the destruction of Elite as a functioning business entity. See id. at ¶¶ 4, 22–26.

However, CPSI's initial disclosures and Elite's continuing investigation revealed the heavy involvement of a second entity, Citicorp Credit Services, Inc. (USA) ("CCSI (USA)"), in the transactions at issue. With respect to identifying individuals likely to have discoverable information, CPSI's initial disclosures listed twelve employees or former employees of CCSI (USA), but did not name a single individual affiliated with CPSI. See Exhibit G (CPSI's Initial Disclosures dated March 1, 2006) at pp. 2–4. Further, the address for several of these named CCSI (USA) employees is Gray, Tennessee, where it is now understood that CCSI (USA)

operated a processing center for the Citi Health Card accounts in connection with Elite. Compare Exhibit C (First Amended Complaint) at ¶ 13 with Exhibit G (CPSI's Initial Disclosures) at pp. 2–4. Notably, CCSI (USA) employs approximately 1,700 persons at a call-processing center in Gray, Tennessee, within the Eastern District of Tennessee. See Exhibit K (Declaration of Keith B. Dressler in opposition to CPSI's Motion to Transfer ("Dressler Dec.")) at ¶¶ 4–5.

Information received from CPSI confirms Elite's understanding that the negotiations leading up to the execution of the Master Services Agreement in April 2003 were conducted with individuals employed by CCSI (USA) or Citicorp Credit Services, Inc. (a third entity separate from both CCSI (USA) and CPSI). During that time, it was represented to Elite in correspondence, on business cards and in discussions that Elite was dealing with agents of entities doing business as "Citi Commerce Solutions" or "Citi Cards." See accompanying Affirmation of Keith B. Dressler dated October 20, 2006 ("Dressler Aff.") at ¶¶ 2–3. Preliminary drafts of contracts with Elite dated March 10, 2003 and March 17, 2003 provided that the agreement was between Elite and "Citicorp Commerce Solutions, Inc." or "Citicorp Credit Services, Inc. (USA), d.b.a. Citi Commerce Solutions." Dressler Aff. at ¶ 3. However, when the final form of the contract was provided to Elite, the entity with which Elite was contracting had been changed to CPSI. Significantly, Elite had never even heard of CPSI as an entity or business name until then, shortly before the Master Services Agreement was executed. See id. Even Julie Pukas, who executed the Master Services Agreement as "president" of CPSI, is listed in the initial disclosures as an employee of another entity, Citicorp Credit Services, Inc. See Exhibit G (CPSI's Initial Disclosures) at 2. And Dr. Keith Dressler, a principal of Elite, affirms not only that he has never met Ms. Pukas but also that, in his experience and to his knowledge and belief, he has never dealt with representatives of CPSI who were not also primarily affiliated with the

business entities CCSI (USA) or Citicorp Credits Services, Inc. or the trade names Citi Commerce Solutions or Citi Cards. See Dressler Aff. ¶ 4.

In both its original Complaint and First Amended Complaint, Elite considered CPSI to be the party defendant in interest with respect to its claims for relief. However, as Elite's continuing investigation revealed the facts recited above, Elite was led to surmise that CPSI is merely a hollow entity foisted upon Elite as part of a shell game by subsidiaries of Citigroup, Inc., one of the world's largest conglomerates. On or about March 10, 2006, Elite served CPSI with requests for production of documents which, among other things, sought information concerning CPSI's shareholders, assets and organizational hierarchy.[2]

In light of the foregoing, Elite determined that CCSI (USA) should be named as a defendant. By summons and complaint dated April 7, 2006, Elite initiated a separate action in the Eastern District of Tennessee captioned Elite Physician Services, LLC v. Citicorp Credit Services, Inc. (USA), No. 1:06-CV-86 against CCSI (USA) (the "CCSI (USA) Case"). See Exhibit H (Complaint Against CCSI (USA)). Because CCSI (USA) is a Delaware corporation with its principal place of business in Jacksonville, Florida and CCSI (USA) lacks any apparent connection to New York, out of an abundance of caution Elite filed its complaint in the Eastern District of Tennessee where jurisdiction and venue over CCSI (USA) are certain. Exh. H ¶¶ 2–3.

Subsequently, Elite agreed with counsel for CPSI and CCSI (USA) jointly to move that the action against CCSI (USA) be transferred from the Eastern District of Tennessee to the Southern District of New York, and that the case be assigned to the Honorable Barbara S. Jones.

---

[2] To date, CPSI has not produced these documents and has refused to answer the question whether CPSI is a mere shell. See accompanying Affirmation of Robert F. Parsley dated October 24, 2006 ("Parsley Aff.") at ¶ 3. CPSI has also provided no answers to Elite's initial interrogatories. See id.; Exhibit L (Objections of CPSI to Plaintiff's First Set of Interrogatories to Defendant).

Elite agreed to the proposed transfer solely in the interests of economy, and not because Elite agreed the transfer was proper; on the contrary, Elite had fought the transfer of the CPSI Case and continued to believe that the transfer order was in error. The parties submitted a proposed agreed order to the judge presiding over the CCSI (USA) Case, the Honorable Harry S. Mattice, Jr., United States District Judge for the Eastern District of Tennessee. See Exhibit I (Proposed Agreed Order).

However, in an order dated July 12, 2006, Judge Mattice rejected the proposed order of transfer. See Exhibit J (Order dated July 12, 2006 (Mattice, J.) Judge Mattice held:

> [t]ransfer of venue under § 1404(a) requires the Court to undertake a substantive two-part analysis; mere stipulation as to transfer is insufficient. First, the movant must identity an alternate forum in which venue is proper. Next, the movant must show that the convenience of the parties and witnesses, and the interest of justice, warrant transfer.
>
> The parties have not provided the Court with sufficient information to perform the analysis required by § 1404(a).

Id. at p.1. Judge Mattice invited the parties to "resubmit a motion for change of venue which addresses the substantive requirements of § 1404(a)." Id. at p.2.

The utter lack of connection with New York of the case against CCSI (USA) and the fact that the convenience of the parties and witnesses and the interests of justice do not warrant transfer renders such resubmittal unfeasible. As explained in connection with Elite's response to CPSI's motion to transfer venue, several facts underlying the action against CCSI (USA) indicate a lack of connection with New York and a substantive connection with Tennessee:

1) few if any key party or non-party witnesses relative to the actions against CPSI or CCSI (USA) are located in New York, while numerous key party and non-party witnesses, including employees of CCSI (USA), are located in eastern Tennessee, see Exh. K

(Dressler Dec.) ¶¶ 13–16; see also Exh. G (CPSI's Initial Disclosures) at 2–4; Exh. H (CCSI (USA) Complaint) ¶ 13;

2) the transactions underlying the relationship between Elite and CCSI (USA) were centered in and almost exclusively confined to Tennessee and Illinois, and no meetings were ever held in New York, see Exh. K (Dressler Dec.) ¶¶ 4–5, 10–11, 21;

3) CCSI (USA) was not a party to the Master Services Agreement which included the forum-selection clause to which CPSI was a party and on which the Court for the Eastern District of Tennessee based its decision to transfer the action against CPSI to the Southern District of New York, see Dressler Aff. ¶ 5; Exh. F (Memorandum) at pp. 7–9.

And as stated above, CCSI (USA) is a Delaware corporation with its principal place of business in Jacksonville, Florida. See Exh. H (Complaint Against CCSI (USA)) at ¶ 2. In light of the foregoing, the Southern District of New York is not a venue which bears any material connection to Elite's action against CCSI (USA) and is not a venue in which an action against CCSI (USA) could have been brought; thus, any attempt to justify to the Eastern District of Tennessee why transfer is appropriate under 28 U.S.C. § 1404(a) would be futile.

CPSI's counsel has refused to answer Elite's question whether CPSI is a mere shell entity. Further, CPSI has yet to provide Elite with documents responsive to Elite's requests for production or substantive responses to Elite's initial interrogatories served on or about August 9, 2006. See Parsley Aff. ¶ 3; Exhibit L (CPSI Objections). No depositions have been taken in the case against CPSI, and no dispositive motions are pending.

## II. Law and Argument

Elite requests the Court to exercise its discretion pursuant to Fed. R. Civ. P. 41(a)(2) to allow Elite to voluntarily dismiss this action without prejudice. Fed. R. Civ. P. 41(a)(2) provides that

> [e]xcept as provided in paragraph (1) of this subdivision of this rule, an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper. . . . Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice.

Where, as here, an answer has been filed by the defendant, voluntary dismissal without prejudice is no longer an absolute right but rather depends upon the court's sound discretion. See Catanzano v. Wing, 277 F.3d 99, 109 (2d Cir. 2001); The Gap, Inc. v. Stone Int'l Trading, Inc., 169 F.R.D. 584, 588 (S.D.N.Y. 1997).

The "essential question" for this exercise in discretion is whether granting voluntary dismissal without prejudice would unduly prejudice the defendant. SEC v. Lorin, 869 F.Supp. 1117, 1119 (S.D.N.Y. 1994); see also BD ex rel. Jean Doe v. DeBuono, 193 F.R.D. 117, 123 (S.D.N.Y. 2000) ("[T]he focus of the analysis on a motion for voluntary dismissal is the prejudice to the defendant."). As a general rule, "the presumption in this circuit is that a court should grant a dismissal pursuant to Rule 41(a)(2) absent a showing that defendants will suffer substantial prejudice as a result." The Gap, Inc., 169 F.R.D. at 588; see also D'Alto v. Dahon Cal., Inc., 100 F.3d 281, 283 (2d Cir. 1996); DeBuono, 193 F.R.D. at 123; Harlem Teams for Self-Help, Inc. v. Abyssinian Baptist Church of the City of New York, 189 F.R.D. 284, 286 (S.D.N.Y. 1999). This rule has been described as a "liberal precedent," Greguski v. Long Island R.R. Co., 163 F.R.D. 221, 224 (S.D.N.Y. 1995), and it is routinely held that the mere prospect of a second suit or some tactical disadvantage does not constitute legal prejudice sufficient to

warrant denying a motion to voluntarily dismiss. See D'Alto, 100 F.3d at 283 (citing Jones v. SEC, 298 U.S. 1, 19 (1936)); Jaskot v. Brown, 167 F.R.D. 372, 373 (S.D.N.Y. 1996).

Several factors guide the court in determining whether the defendant would be substantially prejudiced by the granting of a motion to dismiss: (1) the plaintiff's diligence in bringing the motion; (2) any undue vexatiousness on the plaintiff's part; (3) the extent to which the suit has progressed, including the defendant's effort and expense in preparation for trial; (4) the duplicative expense of relitigation; and (5) the adequacy of plaintiff's explanation for the need to dismiss. See Catanzano, 277 F.3d at 109–10; Zagano v. Fordham Univ., 900 F.2d 12, 14 (2d Cir. 1990); DeBuono, 193 F.R.D. at 123. On appeal, a court's determination is reviewed under an abuse of discretion standard. D'Alto, 100 F.3d at 283.

Elite's motion for leave to voluntarily dismiss this action without prejudice should be granted because dismissal would not result in prejudice to CPSI. First, this action remains in its early stages. It has been pending for less than 12 months and it is far from the trial stage. Cf. The Gap, Inc., 169 F.R.D. at 588 (granting motion to voluntarily dismiss even where action had been pending for three to four years but where action was far from being on the eve of trial). Further, no depositions have been noticed or taken and no documents have been produced. Cf. id. (granting voluntary dismissal where each party had deposed only a single witness). The very limited extent to which this action has progressed indicates that CPSI would not be prejudiced by dismissal without prejudice and favors granting Elite's motion. See Catanzano, 277 F.3d at 110 (the extent to which the suit has progressed as a factor). Voluntary dismissal would even benefit CPSI by relieving it from having to defend an action while Elite more properly focuses its claims against CCSI (USA).

Second, the prospect of renewed litigation in the future would not cause CPSI to suffer prejudice. See id. (factor concerning the duplicative expense of relitigation). Given Elite's understanding that CPSI is a hollow, shell entity, Elite does not see the need to litigate with CPSI in the future. Yet if there were to be future litigation, all written disclosures could be reused. And as stated above, it is well settled that the mere prospect of a second suit or some tactical disadvantage does not constitute legal prejudice. See D'Alto, 100 F.3d at 283.

Third, Elite has brought this motion within a reasonable time (approximately three months) after the agreed order transferring the CCSI (USA) action to the Southern District of New York was denied. See Catanzano, 277 F.3d at 110 (factor concerning the plaintiff's diligence in bringing the motion).

Fourth, Elite's reason for requesting voluntary dismissal without prejudice is more than adequate. See id. (the adequacy of plaintiff's explanation for the need to dismiss is a factor to consider). As revealed by Elite's continuing investigation, CPSI appears to be a mere shell entity which was substituted at the last moment by representatives of CCSI (USA) to be the contracting party. It would be a waste of this Court's and the party's resources to litigate its claims against a defendant that, as Elite's investigation appears to show, has no employees or physical presence and may not be able to satisfy any judgment obtained by Elite. On the other hand, it is now known that CCSI (USA) is an operating business entity that not only employs numerous persons in Illinois but also runs a call-processing center in Gray, Tennessee that employs approximately 1,700 persons. Cf. Exh. K (Dressler Dec.) ¶¶ 4–5. As plaintiff and the master of its claims, Elite seeks to focus its energies on seeking relief from the real defendant in interest, CCSI (USA). Consequently, there is no reason for Elite or any other party to incur the added burden and expense of conducting litigation against CPSI.

Fifth, no action taken by Elite can be deemed to be vexatious. <u>See id.</u> (factor of undue vexatiousness by the plaintiff). Elite has fully cooperated with CPSI in the conduct of this litigation in an effort to avoid undue expense.

Finally, Elite notes that CPSI and CCSI (USA) are represented by the same counsel both in New York and in Tennessee, and with respect to continuing litigation no change in counsel would appear to be necessary as a consequence of dismissing Elite's action against CPSI.

## IV. Conclusion

The "essential question" and "focus" is whether granting voluntary dismissal without prejudice would unduly prejudice the defendant. Lorin, 869 F.Supp. at 1119; DeBuono, 193 F.R.D. at 123. And as a general rule, "the presumption in this circuit is that a court should grant a dismissal pursuant to Rule 41(a)(2) absent a showing that defendants will suffer substantial prejudice as a result." The Gap, Inc., 169 F.R.D. at 588; see also D'Alto, 100 F.3d at 283. As demonstrated by the foregoing multi-factor analysis, any prejudice to CPSI resulting from granting Elite's motion to voluntarily dismiss without prejudice would be very minimal or even nonexistent. Consequently, Elite respectfully submits that the Court grant its motion to voluntarily dismiss this action without prejudice.

Dated: New York, New York
October 25, 2006

Respectfully submitted,

**WROBEL & SCHATZ LLP**

By: _____
Philip R. Schatz (PS 6158)
1040 Avenue of the Americas, 11th Floor
New York, NY 10018-3703
Tel: (212) 421-8100
*Local counsel for Elite Physician Services, LLC*

**MILLER & MARTIN PLLC**
Donald J. Aho (BPR # 011975)
Robert F. Parsley (BPR #023819)
Suite 1000 Volunteer Building
832 Georgia Avenue
Chattanooga, Tennessee 37402
(423) 756-6600 (tel)
(423) 785-8480 (fax)

*Counsel for Elite Physician Services, LLC*